IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| MELISSA THRASHER-LYON, on behalf of herself and a class of others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| ILLINOIS FARMERS INSURANCE COMPANY and CCS COMMERCIAL LLC d/b/a/ CREDIT COLLECTION SERVICES COMMERCIAL, | ) ) ) ) ) ) |
| Defendants. | ) |

## CLASS ACTION COMPLAINT

NOW COMES Plaintiff, MELISSA THRASHER-LYON ("Plaintiff" or "Thrasher"), on behalf of herself and a Class of others similarly situated, and for her complaint against Defendants ILLINOIS FARMERS INSURANCE COMPANY, ("Farmers") and CCS COMMERCIAL, LLC d/b/a CREDIT COLLECTION SERVICES COMMERCIAL ("CCS") (collectively, "Defendants"), and states as follows:

### Introduction

1. This is an action pursuant to state and federal law, including the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*., the Illinois Automatic Telephone Dialers Act ("Illinois Telephone Act"), 815 ILCS 305/30, and the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois Consumer Fraud Act"), 815 ILCS 505, *et seq.* Plaintiff seeks to recover statutorily set damages as well as treble and punitive damages from Defendants due to their pattern and practice of using illegal, harassing and deceptive mailings and telephone calls to collect monies from the class members.

**Jurisdiction and Venue**

2. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, and 1367 as this case involves claims under the TCPA, as well as related state law claims, and the Defendants are of diverse citizenship with members of the class, and the amount in controversy exceeds $5,000,000. Venue is proper pursuant to 28 U.S.C. § 1391 as the Defendants may be found here and a substantial part of the conduct giving rise to the claims occurred here.

**Parties and Other Entities**

3. Named Plaintiff, Melissa Thrasher-Lyon, is a citizen of Illinois, residing in Chicago, Illinois. She is 22 years old, and is employed as a barista at a Chicago coffee shop. Named Plaintiff personally experienced the deceptive and harassing practices alleged herein, after being involved in an accident with a motorist insured by Defendant Farmers while riding her bicycle.

4. Defendant Illinois Farmers Insurance Company is a California corporation with its principal place of business in Illinois, located at 2245 Sequoia Drive, Aurora, Illinois. It is authorized to issue insurance policies in the State of Illinois.

5. Defendant CCS COMMERCIAL, LLC, which does business as CREDIT COLLECTION SERVICES COMMERCIAL is a collection company that uses the mails and interstate telephony to collect disputed claims and debts on behalf of other companies, including, *inter alia*, Defendant Farmers. CCS COMMERCIAL, LLC is a Delaware corporation, with offices located at 2 Wells Avenue, Newton, Massachusetts, 02459, that does business in Illinois. Its agent for service of process in Illinois is CT Corporation System, locate as 208 South LaSalle Street, Suite 814, Chicago, IL 60604.

**Facts Relating to the Named Plaintiff**

6. On April 8, 2011, Named Plaintiff Thrasher was involved in an accident with a motorist while riding her bicycle. The accident occurred at the corner of the streets of Racine and Belmont, in Chicago. The motorist suffered no injuries; there were minor damages to his vehicle. Thrasher suffered only minor physical injuries.

7. The motorist involved in the accident was insured by Farmers. Farmers has asserted that it has subrogation rights against Thrasher.

**Misleading Letters and Written Notices**

8. Over the subsequent weeks, Farmers sent Thrasher a series of misleading letters making representations about the amount of damages from the accident and claiming that she presently owed Farmers the full amount of damages, and threatening to sue her if she did not pay that amount.

   a. On April 21, 2011, Farmers sent Plaintiff a letter stating that she "was responsible for the damages in the amount of $3,240.19." The letter characterized that figure as "[t]he amount you owe" and the "Amount Owed." The letter also threatened to take "further action" against her if she did not promptly pay the full amount claimed.

   b. On May 2, 2011, Farmers sent Plaintiff a letter, again characterizing the $3,240.19 as the "Amount Owed." The letter again threatened to take "further action" against her if she did not promptly pay the full amount claimed, and further stated that failure to make payment would result in the claim being forwarded to a collection agency or attorney.

   c. On May 11, 2011, Farmers sent Plaintiff a letter, again characterizing the $3,240.19 as "[t]he amount you owe" and the "Amount Owed." The letter also threatened to take "further action" against her if she did not promptly pay the full amount claimed.

9. The letters created the misleading impression that Plaintiff had a certain legal obligation to pay the entire amount claimed by Farmers immediately and that it was not subject to dispute, when, in fact, the amount claimed was subject to dispute and was based on Farmers' own investigation and its self-serving conclusion about the amount of damages and that Plaintiff was responsible for the entirety of the alleged damages. The $3,240 was nothing more than an offer to settle a claim, which Farmers misleadingly characterized as the amount Plaintiff owed.

10. Plaintiff next received written documents from CCS, each of which was stylized in large lettering across the page as a "WARNING NOTICE" and directing her to make payment at their website "www.warningnotice.com." The notices stated that CCS had been assigned to

collect the $3,240.19 that Plaintiff allegedly owed to Farmers, and that she should "Pay Immediately."

   a. On May 16, 2011, the CCS Defendants sent Plaintiff a "warning notice" asserting that Farmers had subrogation rights for the full $3,240.19. The notice stated that the matter had been referred to them "for recovery," and threatened that failure to pay that amount "could result in a law suit [sic] being filed against you and/or license suspension." The notice also included a box stating, "PAY IMMEDIATELY, $3,240.19."

   b. On June 6, 2011, CCS sent Plaintiff another "warning notice" containing the same statements set forth in Paragraph 10.a.

11. In addition, the May 16, 2011 warning notice asserted that Farmers had paid the $3,240.19. That statement was false and misleading. In fact, the insured motorist's policy included a $2,500 deductible. Farmers only paid $740.19.

12. The misleading warning letters from the CCS Defendants furthered Thrasher's mistaken belief that the $3,240.19 was an amount that she owed immediately, that was not subject to dispute and that she did not have the right to challenge.

13. On June 27, 2011, Plaintiff received a new notice that demonstrated the misleading nature of the earlier notices. The June 27, 2011 notice was stylized as a "SETTLEMENT NOTICE," and stated that if Plaintiff paid a "reduced amount," CCS would treat the claim for $3,240.19 as "settled-in-full." The new website referenced on the notice was "www.settlementnotice.com."

14. Each of the above letters and warning notices was a willful and knowing violation of the Illinois Consumer Fraud Act's prohibition on, *inter alia*, unfair or deceptive acts or practices in the conduct of trade or commerce. Pursuant to 815 ILCS 505/10a and Illinois common law, Plaintiff is entitled to recover actual and punitive damages, together with her costs and fees herein.

### Harassing Telephone Calls

15. Named Plaintiff THRASHER also received a series of harassing telephone calls from the CCS Defendants as part of their effort to collect the amount claimed.

16. The calls from the CCS Defendants were placed from an automatic telephone dialing system. All of the calls came from the same telephone number. When Plaintiff was not available to answer the calls, each time a voicemail message was left on her phone using a machine or prerecorded voice. When Plaintiff was able to answer her cellular phone, there was silence; no person was waiting on the other end.

17. The calls were placed to Plaintiff's cellular telephone number. Plaintiff never consented for CCS to call her at that telephone number.

18. Each of the above calls was a willful and knowing violation of the TCPA's restriction on using any automatic telephone dialing system and/or an artificial or prerecorded voice to call cellular telephones. Pursuant to 47 U.S.C. § 227(c)(5), Plaintiff is entitled to the greater of the amount of his actual damages or $500 per call together, trebled, together with the costs and attorneys fees for this action.

19. Each of the above messages also violated the Illinois Automatic Telephone Dialers Act. Pursuant to 815 ILCS 305/30, Plaintiff is entitled to recover treble damages, together with her costs and fees herein.

## Class Allegations

20. Plaintiff seeks to represent herself and a class of others similarly situated. Plaintiff proposes that the case be organized into the following four classes.

## Class I

21. Class I consists of:

All persons who have received a telephone call deployed by the CCS Defendants to his/her cellular telephone number using an automatic telephone dialing system and/or using an artificial or prerecorded voice, and without prior express consent or an established business relationship, since July 1, 2007.

22. The individuals in Class I are so numerous that joinder of all members is impractical. Named Plaintiff THRASHER estimates that Class I numbers in at least the tens of thousands because, *inter alia*,

  a. According to its own website, CCS and its affiliates form one of the largest collection firms in the industry, providing services to high-profile clients across the country. They provide services across a number of industries, including

financial/insurance, telecom/cable, healthcare, energy and utilities, retail, student loans and child support. CCS boasts its use of "automated contact programs" and a "proprietary voice messaging platform which can generate millions of contacts daily."

b. Defendant Famers, one of CCS's clients and on behalf of which CCS used an automatic telephone dialing system and/or an artificial or prerecorded voice, is part of the third largest insurance company in the United States, servicing over 10 million households. Its client base extends to 41 states across the country. It has more than 25,000 employees and earns more than $2 billion annually. The number of individuals referred to the CCS Defendants by Defendant Farmers alone is therefore likely to be very large.

c. More than 285 million Americans, making up approximately 91% of the population, are mobile phone subscribers, according to wireless industry surveys.

d. The nature of automatic telephone dialing systems and artificial or prerecorded voice messaging equipment is that they are used to contact large numbers of people.

23. There are questions of law and fact common to the claims of Class I. Among these common questions are:

a. Whether the CCS Defendants have a policy or practice of using automatic telephone dialing systems and/or artificial or prerecorded voice messaging equipment to call cellular telephone numbers;

b. Whether the CCS Defendants have proper procedures in place to prevent the use of automatic telephone dialing systems and/or artificial or prerecorded voice messaging equipment to call cellular telephone numbers;

c. Whether CCS thereby violates the TCPA;

d. Whether the CCS Defendants acted willfully or knowingly in violating the TCPA.

24. The Named Plaintiff's claims are typical of the claims of Class I.

25. The Named Plaintiff will fairly and adequately represent the interests of Class I. She has retained skilled counsel with experience in federal and class action litigation to represent the Class.

26. The questions of law and fact common to Class I predominate over any individual issues.

**Class II**

27. Class II consists of:

All Illinois residents who have received a voice mail or a prerecorded message from the CCS Defendants placed using an autodialer, and without consent or a prior or existing business relationship, since July 1, 2006.

28. The individuals in Class II are so numerous that joinder of all members is impractical. Named Plaintiff THRASHER estimates that Class II numbers in at least the tens of thousands because, *inter alia*,

   a. According to its own website, CCS and its affiliates form one of the largest collection firms in the industry, providing services to high-profile clients across the country. They provide services across a number of industries, including financial/insurance, telecom/cable, healthcare, energy and utilities, retail, student loans and child support. CCS boasts its use of "automated contact programs" and a "proprietary voice messaging platform which can generate millions of contacts daily."

   b. Defendant Famers, one of CCS's clients and on behalf of which CCS used an automatic telephone dialing system and/or an artificial or prerecorded voice, is part of the third largest insurance company in the United States, servicing over 10 million households. Its client base extends to 41 states across the country. It has more than 25,000 employees and earns more than $2 billion annually. The number of individuals referred to the CCS Defendants by Defendant Farmers alone is therefore likely to be very large.

c. More than 285 million Americans, making up approximately 91% of the population, are mobile phone subscribers, according to wireless industry surveys.

d. The nature of autodialers and autodialer systems playing prerecorded messages is that they are used to contact large numbers of people.

29. There are questions of law and fact common to the claims of Class II. Among these common questions are:

a. Whether the CCS Defendants have a policy or practice of using prerecorded messages placed by an autodialer when making telephone calls to obtain payments;

b. Whether the CCS Defendants have proper procedures in place to prevent the use of prerecorded messages and autodialers when making telephone calls to obtain payments;

c. Whether CCS thereby violates the Illinois Automatic Telephone Dialers Act.

d. Whether the CCS Defendants acted willfully and wantonly.

30. The Named Plaintiff's claims are typical of the claims of Class II.

31. The Named Plaintiff will fairly and adequately represent the interests of Class II. She has retained skilled counsel with experience in federal and class action litigation to represent the Class.

32. The questions of law and fact common to Class II predominate over any individual issues.

### Class III

33. Class III consists of:

All Illinois residents who have received written notices or other documents from CCS since July 1, 2008 that contained 1) false statements claiming that the CCS client asserting subrogation rights had paid the full amount on the notice when in fact a portion of the amount was a deductible not paid by the CCS client, and/or 2) statements directing individuals to "pay immediately" the full amount claimed for subrogation, styling the document as a "warning notice," threatening lawsuits or license suspension, and/or stating that the amount sought to be collected is "[t]he amount you owe" or the "Amount Owed."

8

34. The individuals in Class III are so numerous that joinder of all members is impractical. Named Plaintiff THRASHER estimates that Class III numbers in at least the thousands because, *inter alia*,

   a. According to its own website, CCS and its affiliates form one of the largest collection firms in the industry, providing services to high-profile clients across the country. They provide services across a number of industries, including financial/insurance, telecom/cable, healthcare, energy and utilities, retail, student loans and child support.

   b. Defendant Farmers, one of CCS's clients asserting subrogation rights forming the basis of the CCS written notices, is part of the third largest insurance company in the United States, servicing over 10 million households. Its client base extends to 41 states across the country. It has more than 25,000 employees and earns more than $2 billion annually.

   c. Based on data from Illinois agencies, there are more than 10 million registered motor vehicles in Illinois, and approximately 300,000 car crashes each year. Defendant Farmers is one of the top 5 auto insurers in Illinois, with more than $250 million in written premiums.

   d. The warning notices sent by the CCS Defendants appear to be documents CCS used as a standard practice in attempting to recover monies from individuals.

   e. The nature of standard letters and notices is that they can be generated automatically, prepared repeatedly, and used to communicate with large numbers of people at low cost.

   f. Upon information and belief, CCS sent multiple notices to each class member from whom they were seeking to recover monies.

35. There are questions of law and fact common to the claims of Class III. Among these common questions are:

   a. Whether CCS has a policy and practice of sending notices to individuals characterizing amounts claimed as amounts owed;

b. Whether CCS has a policy and practice of sending notices to individuals stating that their client asserting subrogation rights had paid a certain amount when that amount included a deductible that CCS's client did not pay.

c. Whether Farmers' or the CCS Defendants' policy and practice is deceptive;

d. Whether CCS's policy and practice is engaged in with the intent of inducing reliance on false and misleading statements by the recipients of such notices;

e. Whether CCS's policy and practice caused direct and proximate harm to Named Plaintiff and the members of Class III;

f. Whether Farmers' policy and practice thereby violates the Illinois Consumer Fraud Act; and

g. Whether CCS's policy and practice occurred in the course of conduct of trade or commerce.

36. The Named Plaintiff's claims are typical of the claims of Class III.

37. The Named Plaintiff will fairly and adequately represent the interests of Class III. She has retained skilled counsel with experience in federal and class action litigation to represent the Class.

38. The questions of law and fact common to Class III predominate over any individual issues.

### Class IV

39. Class IV consists of:

All Illinois residents who have received written notices or other documents from Farmers since July 1, 2008 that contained statements characterizing the amount of damages claimed as an "amount owed" or "[t]he amount you owe."

40. The individuals in Class IV are so numerous that joinder of all members is impractical. Named Plaintiff THRASHER estimates that Class IV numbers in at least the thousands because, *inter alia*,

a. Defendant Farmers is part of the third largest insurance company in the United States, servicing over 10 million households. Its client base extends to 41 states across the country. It has more than 25,000 employees and earns more than $2 billion annually.

b. Based on data from Illinois agencies, there are more than 10 million registered motor vehicles in Illinois, and approximately 300,000 car crashes each year. Defendant Farmers is one of the top 5 auto insurers in Illinois, with more than $250 million in written premiums.

c. The letters sent by Farmers appear to be standard letters sent by Farmers each time one of its insured clients is involved in an accident. Because the use of these letters appears to be a standard practice, the number of individuals who received such letters is probably very large.

d. The nature of standard letters and notices is that they can be generated automatically, prepared repeatedly, and used to communicate with large numbers of people at low cost.

e. Upon information and belief, Farmers sent multiple letters to each class member from whom they were seeking to recover monies.

41. There are questions of law and fact common to the claims of Class IV. Among these common questions are:

h. Whether Farmers has a policy and practice of sending letters to individuals characterizing amounts claimed as amounts owed;

i. Whether Farmers' policy and practice is deceptive;

j. Whether Farmers' policy and practice is engaged in with the intent of inducing reliance on false and misleading statements by the recipients of such letters;

k. Whether Farmers' policy and practice caused direct and proximate harm to Named Plaintiff and the members of Class IV;

l. Whether Farmers' policy and practice thereby violates the Illinois Consumer Fraud Act; and

m. Whether Farmers' policy and practice occurred in the course of conduct of trade or commerce.

42. The Named Plaintiff's claims are typical of the claims of Class IV.

43. The Named Plaintiff will fairly and adequately represent the interests of Class IV. She has retained skilled counsel with experience in federal and class action litigation to represent the Class.

44. The questions of law and fact common to Class IV predominate over any individual issues.

## COUNT I – Federal Telephone Consumer Protection Act
### Against CCS

45. Plaintiff incorporates each and every paragraph of this complaint as if fully set forth herein.

46. By all of the above, the CCS Defendants engaged in willful and knowing violations of the TCPA's restriction on using any automatic telephone dialing system or an artificial or prerecorded voice to call cellular telephones.

47. Plaintiff and the members of Class I were damaged as a direct and proximate result.

48. Pursuant to 47 U.S.C. § 227(b)(3) and (c)(5) they are entitled to the greater of the amount of their actual damages or $500 per call together, trebled, together with the costs and fees herein.

## COUNT II – Illinois Automatic Telephone Dialers Act
### Against CCS

49. Plaintiff incorporates each and every paragraph of this Complaint as if fully set forth herein.

50. By all of the above, the CCS Defendants violated the Illinois Automatic Telephone Dialers Act. Plaintiff and the members of Class II were damaged as a direct and proximate result. Pursuant to 815 ILCS 305/30, Plaintiff and the members of Class II are entitled to recover treble damages together with the costs and fees herein.

## COUNT III – Illinois Consumer Fraud Act
### Against CCS

51. Plaintiff incorporates each and every paragraph of this Complaint as if fully set forth herein.

52. By all of the above, Defendant CCS engaged in willful and knowing violations of the Illinois Consumer Fraud Act.

53. The actions discussed above occurred in the course of conduct involving trade or commerce.

54. Defendant CCS engaged in the deceptive acts and practices set forth above with the intent that Plaintiff and the members of Class III would rely on such deceptions.

55. Plaintiff and the members of Class III were damaged as a direct and proximate result.

56. Pursuant to 815 ILCS 505/10a, Plaintiff and the members of Class III are entitled to recover actual and punitive damages, together with the costs and fees herein.

### COUNT IV – Illinois Consumer Fraud Act
### Against Farmers

57. Plaintiff incorporates each and every paragraph of this Complaint as if fully set forth herein.

58. By all of the above, Defendant Famers engaged in willful and knowing violations of the Illinois Consumer Fraud Act.

59. The actions discussed above occurred in the course of conduct involving trade or commerce.

60. Defendant Farmers engaged in the deceptive acts and practices set forth above with the intent that Plaintiff and the members of Class IV would rely on such deceptions.

61. Plaintiff and the members of Class IV were damaged as a direct and proximate result.

62. Pursuant to 815 ILCS 505/10a, Plaintiff and the members of Class IV are entitled to recover actual and punitive damages, together with the costs and fees herein.

WHEREFORE, Plaintiff, MELISSA THRASHER-LYON, demands judgment against Defendants ILLINOIS FARMERS INSURANCE COMPANY and CCS COMMERCIAL, LLC d/b/a CREDIT COLLECTION SERVICES COMMERCIAL, awarding statutorily prescribed, treble, actual and punitive damages, as well as the costs of this action and reasonable attorneys' fees. Plaintiff

further demands that the Court certify each of the four classes and establish a common fund of the statutorily prescribed, treble and punitive damages recovered, enjoin the continued violations and allow any and all other future relief to which they may appear entitled.

**Jury Demand**

Plaintiff demands trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED,


   /s/ Michael Kanovitz
Attorneys for Plaintiff and the Class

Arthur Loevy
Michael Kanovitz
Jon Loevy
Anand Swaminathan
LOEVY & LOEVY
312 N. May St., Suite 100
Chicago, IL 60607

(312) 243-5900
(312) 243-5902 fax