IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MELISSA THRASHER-LYON, on behalf of herself and a class similarly situated, | ) ) ) |
| Plaintiff, | ) Case No.: 11-C-4473 ) |
| vs. | ) ) Judge Ruben Castillo |
| ILLINOIS FARMERS INSURANCE COMPANY and CCS COMMERCIAL LLC d/b/a CREDIT COLLECTION SERVICES COMMERCIAL, | ) Magistrate Judge Michael T. Mason ) ) ) ) |
| Defendants. | ) ) |

**DEFENDANT CCS COMMERCIAL LLC'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendant CCS COMMERCIAL LLC ("CCS"), by its attorneys David M. Schultz, Clifford E. Yuknis, and Matthew T. Glavin of Hinshaw & Culbertson LLP, respectfully submits this memorandum in support of its motion to dismiss for failure to state a claim upon which relief can be granted.

**INTRODUCTION**

Plaintiff Melissa Thrasher-Lyon purports to bring this action as a class action seeking to recover for CCS's alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), the Illinois Automatic Telephone Dialers Act, 815 ILCS 305/1 *et seq.* ("Illinois Telephone Act"), and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505 *et. seq.* ("ICFA").

The Complaint alleges that on April 8, 2011 Thrasher-Lyon was involved in an accident with a motor vehicle in Chicago while riding her bicycle (¶ 6). She suffered injuries and there was damage to the motor vehicle. (*Id.*) The motorist who was involved in the accident was insured by Defendant Illinois Farmers Insurance Co. Thereafter, Illinois Farmers sent several letters to Thrasher-Lyon, seeking to collect $3,240.19 under its subrogation rights (¶¶ 7-9). These letters are

attached hereto as Group Exhibit 1.[1] Thrasher-Lyon then began receiving letters from Defendant CCS for the same amounts. (¶¶ 10-14). Copies of templates of the CCS letters sent to Thrasher-Lyons are attached hereto as Exhibit 2. Thrasher-Lyon asserts that all of these letters were allegedly misleading since Illinois Farmers' and CCS' letters asked for $3,240.19, when in fact Illinois Farmers allegedly only paid $740.19 because its insured had a $2,500 deductible (¶ 11). She does not plead that she paid any amounts or took any other actions in response to the letters. Thrasher-Lyon does not allege whether the insured paid the $2,500 for the repairs directly to the repair shop or to Farmers. Thrasher-Lyon also asserts she received "harassing" calls on her cellular telephone from CCS (¶ 17). Thrasher-Lyon purportedly never gave her consent to CCS to call her on her cellular telephone (¶ 17).

Count I, alleging violations by CCS of the TCPA, fails to state a claim because Thrasher-Lyon consented to receiving calls on her cellular telephone number when she gave that number to the police and the number was recorded on an accident report. Count II fails to state a claim under the Illinois Telephone Act since Thrasher-Lyon pleads no allegations plausibly showing that CCS violated that Act in any of the ways specified in the statute. Nor does Thrasher-Lyon allege factual allegations regarding any actual damages, which the Illinois Act requires.

Count III fails to state a claim under the CFA. The alleged deceptive conduct did not take place in trade or commerce, as required by the CFA. Thrasher-Lyon was not a consumer under the CFA, having purchased no merchandise or goods. Nor does Thrasher-Lyon plead there was a consumer-nexus, failing to allege that CCS's conduct involves trade practices directed to the market generally or otherwise implicates consumer protection concerns. Thrasher-Lyon also fails to adequately plead actual damages proximately caused by a violation, an element of a CFA cause of

---

[1] Documents that a defendant attaches to a motion to dismiss are considered part of the pleading if they are referred to in the plaintiff's complaint and are central to her claim, and the Court need not convert the motion to a motion for summary judgment. *188 L.L.C. v. Trinity Indus., Inc.,* 300 F.3d 730, 735 (7th Cir. 2002) (internal citation omitted); *Rosenblum v. Travelbybus.com, Ltd.,* 299 F.3d 657, 661 (7th Cir. 2002).

130154806v1 0925245 53544

action and therefore lacks Article III standing as well as a CFA claim. Finally, CCS's letters asking for $3,240.19 were proper under Illinois law.

## ARGUMENT

The Supreme Court has articulated a two-step approach in deciding whether a pleading is sufficient:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal,* 556 U.S. ___, 129 S.Ct. 1937, 1950 (2009). *See Atkins v. City of Chicago,* 631 F.3d 823, 831-32 (7th Cir. 2011) (affirming dismissal of complaint). This approach is particularly apt, since Thrasher-Lyon does little more than assert unsupported legal conclusions.

### I. THE COURT SHOULD DISMISS COUNT I (TCPA) BECAUSE IT FAILS TO STATE A CLAIM.

Thrasher-Lyon fails to state a TCPA claim on several grounds. First, she gave prior express consent to be called on her cellular telephone. Under the TCPA, a call made with the prior express consent of the called party is lawful. 47 U.S.C. § 227(b)(1)(A). The statute does not specify how that prior express consent must be given.

Here, an Illinois Motorist Report was completed. Thrasher-Lyon provided the police with her cellular telephone number, which was duly recorded on the report. A copy of this report is attached hereto as Exhibit No. 3.[2] Thrasher-Lyon's provision of her cellular telephone number to the police for a public report constitutes express consent to call her on that number.

---

[2] This Court may properly take notice of such a public record without this motion to dismiss having to be treated as a motion for summary judgment. Fed.R.Evid. 201; *520 S. Michigan Ave. Assoc., Ltd. v. Shannon,* 549 F.3d 1119, 1137 n.14; *Pugh v. Tribune Co.,* 521 F.3d 686, 691 n.2 (7th Cir. 2008); *see Telltabs v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 568 n.13 (2007).

130154806v1 0925245 53544

In *Greene v. DirectTV*, No. 10 C 117, 2010 WL 4628734 (N.D. Ill. Nov. 8, 2010), the debtor provided her cellular telephone number to a credit bureau, not the creditor. The court held that she gave express consent to the creditor, since the debtor knew that potential creditors would use it as a contact number for fraud alert purposes. *Id.* at *3. Similarly, Thrasher-Lyon gave her cellular telephone number to the police, knowing that the insurance company for the insured car driver, or others, would obtain that number to communicate with her.

The Court in *Greene* cited the Federal Communications Commission's ("FCC") views on consent:

> If a call is otherwise subject to the prohibitions of §64.1200 [an implementing FCC regulation], persons who knowingly release their telephone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary.

*In re Rules and Regulations Implementing The Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8769, 1992 WL 690928, at *12 (Oct. 16, 1992.) The Illinois Motorist Report (Ex. 3 hereto) contains no instructions by Thrasher-Lyon contrary to an invitation or permission to be called at the cellular number she provided to the police.

FCC rulings also guided the court in the recent case *Frausto v. IC Sys., Inc.,* Case No. 10 CV 1363 (N.D.Ill. August 22, 2011). A copy of this case is attached hereto as Exhibit 4. The plaintiff Frausto sued a debt collector IC System, Inc. for violating the TCPA. During the process of opening his account at PayPal, a popular electronic payment service, Frausto supplied PayPal with his name and telephone number. Frausto also consented to PayPal's user agreement, which contained provisions stating that by providing PayPal with a telephone number (including a wireless/cellular telephone), he consented to receive autodialed and prerecorded message calls from PayPal at that number. *Id.* at 2. The agreement also advised Frausto to review the PayPal Privacy Policy, which indicated that PayPal may use the customer's personal information to resolve disputes and collect fees.

4

Frausto used his PayPal account as part of a sale he made on the online auction site eBay, selling a handbag to a third party, who in turn claimed it was damaged. He offered a refund, but the buyer refused and took the dispute to PayPal. PayPal decided in favor of the buyer, gave the buyer a refund, and debited Frausto. The result was a negative balance in Frausto's account. *Id.* PayPal contracted with IC System for its debt collection function. In its efforts to collect the debt owing to PayPal, IC System admitted placing at least three calls to the number that Frausto had provided to PayPal.

The court granted summary judgment to IC System. It cited a FCC ruling on prior express consent, which referred to the 1992 FCC order wherein the FCC determined that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *Id.* at 4. The court confirmed that for the purposes of the FCC's provisions on consent, third-party collectors step into the shoes of the creditor on whose behalf they are recovering the debt. *Id.*

The court found that the FCC's ruling made it clear the defendant IC System "is, for purposes of the TCPA, 'PayPal' when it calls Plaintiff," citing *In re: Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C.R. 559, at ¶9, 23 FCC Rcd. 559, 2008 WL 65485, at *3 (January 4, 2008). *Id.* at 4-5. *See CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724-25 (7th Cir. 2011) (citing the FCC, the Court observed in a TCPA fax case that a plaintiff giving a fax number to an industrial directory expressly authorized other directory subscribers to communicate with the plaintiff by fax).

Here, Thrasher-Lyon knowingly released her cellular telephone number to the police in connection with an Illinois Motorist Report. She gave her invitation or permission to be called at that number, and has no TCPA claim.

130154806v1 0925245 53544

## II. THE COURT SHOULD DISMISS COUNT II UNDER THE ILLINOIS TELEPHONE ACT.

### A. Thrasher-Lyon Does Not Plead A Claim.

The Illinois Telephone Act provides that it is a violation of that Act "to make or cause to be made telephone calls utilizing an autodialer that does not comply with Section 15." 815 ILCS 305/30. Section 15, 815 ILCS 305/15, enumerates four specific acts that can be the basis for a violation, none alleged by Thrasher-Lyon:

(a) No person shall operate an autodialer in this State to place a telephone call during the hours between 9 p.m. and 9 a.m.

(b) All autodialers operated within the State of Illinois shall disconnect within 30 seconds after termination of the call by the subscriber or the autodialer. Where disconnection in 30 seconds is technically not feasible, the autodialer shall utilize a live operator who shall:

    (1) state his name, the name, address and telephone number of the business or organization being represented and the purpose of the call; and

    (2) inquire at the beginning of the call whether the person called consents to hear the prerecorded message.

(3) An autodialer shall not be used to dial numbers determined by successively increasing or decreasing integers.

(4) An autodialer may not be operated in a manner that impedes the function of any caller ID when the telephone solicitor's service or equipment is capable of allowing the display of the solicitor's telephone number.

Thrasher-Lyon does not allege any factual allegations plausibly supporting that CCS violated the Illinois Telephone Act in any of the four enumerated ways. Merely pleading that telephone calls were made, and a legal conclusion that CCS violated the Act, are not enough to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937, 1949-50 (2009). Thrasher-Lyon's complaint at ¶¶ 16-18 fails to plead factual allegations plausibly supporting a violation of the Illinois statute. The complaint does not even set forth "a formulaic recitation of a cause of action," which itself does not suffice under modern factual pleading standards. *Twombly*, 550 U.S. at 535.

6

The Illinois Telephone Act also provides that it is a violation to the Act to play a prerecorded message placed by an autodialer without consent of the called party. 815 ILCS 305/30(b). However, as argued above, Thrasher-Lyon did give consent in connection with the Illinois Motorist Report.

### B. Thrasher-Lyon Suffered No Damages As Required By the Illinois Telephone Act.

The Illinois Telephone Act provides, in relevant part, that:

> Any customer injured by a violation of this Act may bring an action for the recovery of damages. Judgment may be entered for 3 times the amount at which the actual damages are assessed, plus costs and reasonable attorney fees.

815 ILCS 305/30(c). Thus, a plaintiff under this statute must be "injured by a violation" of the Act and incur "actual damages." Thrasher-Lyon does not plead any factual allegations that she suffered any injury or damages, merely alleging that she was "damaged." This is another failure to plead factual allegations supporting her Illinois Telephone Act claim.

## III. COUNT III FAILS TO PLEAD A CLAIM UNDER THE ILLINOIS CONSUMER FRAUD ACT.

A plaintiff must plead a CFA claim with specificity. *Greenberger v. Geico Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011); *Frye v. L'Oreal USA, Inc.*, 583 F. Supp. 2d 954, 957 (N.D. Ill. 2008). The complaint does not even plead a plausible claim or standing, let alone a CFA claim with specificity.

### A. Thrasher-Lyon Does Not Allege Facts Plausibly Supporting Any Acts In The Conduct Of Trade Or Commerce Or That She Is A Consumer.

The CFA prohibits "unfair or deceptive acts or practices . . . in the conduct of any trade or commerce." 815 ILCS 505/2. The CFA defines the terms "trade" and "commerce":

> The terms "trade" and "commerce" mean the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated. . ."

815 ILCS 505/1(f). Here there are no allegations showing any deceptive or unfair acts in trade or commerce. Illinois Farmers and CCS's letters do not show consumer advertising, offering for sale,

7

selling or distributing of any services or property. The letters are trying to recoup under Illinois Farmers' right to subrogation the damages Thrasher-Lyon caused.

Nor is Thrasher-Lyon a "consumer" under the Act:

> The term "consumer" means any person who purchases or contracts to purchase merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household.

815 ILCS 505/1(e). Thrasher-Lyon purchased nothing. Nor did she contract to purchase anything.

When a consumer is not involved in bringing a claim under the Act, the plaintiff must plead facts that the alleged conduct involves trade practices addressed to the market generally or otherwise implicate consumer protection concerns. This is the consumer-nexus test. *3Com Corp. v. Elec. Recovery Specialists, Inc.*, 104 F.Supp.2d 932, 939 (N. D. Ill.2000); *see Athen Prod. Corp. v. Harris Bank Roselle,* 89 F.3d 430, 436-37 (7th Cir. 1996). Here, Thrasher-Lyon pleads no facts showing that Illinois Farmers' or CCS's letters involved trade practices addressed to the market generally or otherwise implicated consumer concerns. *Gelco Corp. v. Major Chevrolet, Inc.,* No. 01 C 9719, 2002 WL 31427027, at *10-11 (N.D. Ill Oct. 30, 2002). To sufficiently establish consumer concerns, a plaintiff must plead (1) that its actions were akin to consumer's actions to establish a link between the plaintiff and consumers; (2) how the defendant's representations concerned consumers other than the plaintiff; (3) how the defendant's particular actions involved consumer protection concerns; and (4) how the requested relief would serve the interests of consumers. *Brody v. Finch Univ. of Health Sci./The Chicago Med. Sch.,* 298 Ill.App.3d 146, 160, 698 N.E.2d 257 (2d Dist. 1998); *Global Total Office Ltd. P'ship. v. Global Allies, L.L.C.,* No. 10 C 1896, 2011 WL 3205487, at *2 (N.D. Ill. June 28, 2011).

Thrasher-Lyon must plead her CFA claim with specificity, but does not set forth factual allegations plausibly supporting any consumer concerns. *Greenberger,* 631 F.3d at 399 (specificity in pleading a CFA claim is required). Illinois Farmers and CCS's letters were not selling or advertising

8

to sell any merchandise or services. Thrasher-Lyon purchased nothing and was not a consumer. Neither Illinois Farmers nor CCS ever dealt with Thrasher-Lyon as a consumer. The letters were specifically directed to Thrasher-Lyon to try and recover from her the insured's damages. The letters concerned no one except Thrasher-Lyon, Illinois Farmers and its insured in connection with a particular accident. The damages sought by Thrasher-Lyon would serve the interests of no one but herself. Illinois Farmers and CCS's letters, in trying to enforce Illinois Farmers' subrogation rights with regard to a particular accident, did not involve trade or commerce, a consumer or any marketplace or consumer concern.

### B. Thrasher-Lyon Pleads No Actual Damages and Lacks Standing.

A private claim for breach of the CFA requires that the plaintiff show actual damages. 810 ILCS 505/10a provides, in pertinent part:

> Any person who suffers actual damages as a result of a violation of [the] Act committed by any other person may bring an action against such person.

The "as a result" language in Section 10a(a) imposes an obligation upon a private plaintiff seeking actual damages under the CFA to demonstrate that the complained of fraud proximately caused those damages in order to recover for her injuries. *Barbara's Sales, Inc. v. Intel Corp.,* 227 Ill.2d 45, 72, 879 N.E.2d 910 (2007); *see Kim v. Carter's Inc.*, 598 F.3d 362, 365-66 (7th Cir. 2010); *Morris v. Harvey Cycles & Campers, Inc.*, 392 Ill.3d 399, 402, 911 N.E.2d 1049 (1st Dist. 2009). Citing the Illinois Supreme Court, the court in *Frye*, 583 F.Supp.2d at 957, explained:

> To state a claim under the ICFA, the complaint must allege: (1) a deceptive act or practice by defendant; (2) defendant's intent that plaintiff rely on the deception; (3) the occurrence of the deception in the course of conduct involving trade or commerce; (4) actual damage to plaintiff; 95) proximately caused by the deception. *Avery v. State Farm Mut. Auto. Ins. Co.,* 216 Ill.2d 100, 180, 296 Ill.Dec. 448, 835 N.E.2d 801 (2005). Because it asserts fraud, a claim under the ICFA must be pled with particularity. *Gallagher Corp. v. Mass.. Mut. Life Insurance Co.*, 940 F.Supp. 176, 180 (N.D. Ill. 1996).
>
> Defendant argues that plaintiff has not alleged, and cannot allege, that she has suffered any actual damages as a result of defendant's conduct, leaving recovery under the Act unavailable. *Avery*, 216 Ill.2d at 196-200, 296 Ill.Dec. 448, 835 N.E.2d

9

> 801. Because actual damages is an element of the claim, plaintiff must allege that she has been harmed in a concrete, ascertainable way. Therefore, defendant's alleged deception must have affected plaintiff in a way that made her tangibly worse off.

Thrasher-Lynn sets forth no factual allegations as to how she has been "harmed in a concrete, tangible way."

Thrasher-Lyon, suffering no injuries, lacks standing under Article III of the United States Constitution. To have standing, first, a plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent. Second, there must be a causal connection between the injury and the conduct complained of. Third, it must appear likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan, Jr. v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992); *Katherine v. City of Evanston, Illinois,* 636 F.3d 906, 914 (7th Cir. 2011).

Here, Thrasher-Lyon's allegations do not plausibly show any injury in fact or a causal connection between her injury and the alleged violation of the CFA. Thrasher-Lyon does not allege she paid any money or otherwise responded to the letters. Nor does it appear at all likely Thrasher-Lyon's "non-injury" will be redressed with a favorable decision by this Court. Thrasher-Lyon simply lacks any of the requisites for standing. *See In re Matter of Aqua Dots Prod. Liability Litigation*, __ F.3d __, No. 10-3847, 2011 WL 3629723, at * 1 (7th Cir. August 17, 2011) (the requisites for standing "are injury, causation, and redressability").

### C. The Illinois Farmers and CCS Letters Were Proper.

The gist of Thrasher-Lyon's Complaint is that the letters she received referred to subrogation rights for $3,240.19, when there was a $2,500 deductible. Thrasher-Lyon admits Illinois Farmers was asserting its rights as subrogor. (complaint ¶¶ 7, 10a). Under subrogation, Illinois Farmers was entitled to collect the entire amount of charges, not just the portion over and above the $2,500 deductible. The Illinois Insurance Code provides, in relevant part:

130154806v1 0925245 53544

§ 143b. Any insurance carrier whose payment to its insured is reduced by a deductible amount under a policy providing collision coverage is subrogated to its insured's entire collision loss claim including the deductible amount unless the deductible amount has been otherwise recovered by the insured, but if the deductible amount has been otherwise recovered by the insured it shall not be included in the subrogated loss claim and shall be excluded from the amount of loss pleaded. If the deductible amount is included in the subrogated loss claim the insurance carrier shall pay the full pro rata deductible share to its insured out of the net recovery on the subrogated claim.

Thus, Illinois Farmers and CCS were entitled to collect the full $3,240.19, although Illinois Farmers possibly would have to pay the pro rata deductible share to its insured out of the net recovery of the claim. But statutory compliance by Illinois Farmers does not affect Thrasher-Lyon, and certainly did not proximately cause her any actual damages.

## CONCLUSION

For the foregoing reasons, Defendant CCS Commercial LLC respectfully submits that the Court grant its motion to dismiss for failure to state a claim upon which relief can be granted.

HINSHAW & CULBERTSON LLP


By: /s/ *Clifford E. Yuknis*
    One of the Attorneys for Defendant CCS
    COMMERCIAL LLC.

David M. Schultz
Clifford E. Yuknis
Matthew Glavin
HINSHAW & CULBERTSON LLP
222 North LaSalle Street, Suite 300
Chicago, Illinois 60601
312/704-3000
dschultz@hinshawlaw.com
cyuknis@hinshawlaw.com
mglavin@hinshawlaw.com

130154806v1 0925245 53544