IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MELISSA THRASHER-LYON, on behalf of herself and a class similarly situated, ) ) ) Plaintiff, ) ) v. ) ) ILLINOIS FARMERS INSURANCE ) COMPANY, et al., ) Defendants. ) | Case No.: 11-C-4473<br><br>Judge Ruben Castillo<br>Magistrate Judge Michael T. Mason |

## REPLY IN SUPPORT OF DEFENDANT
## CCS COMMERCIAL LLC'S MOTION TO DISMISS

Defendant CCS COMMERCIAL LLC (CCS), by its undersigned attorneys, respectfully submits this reply in support of its motion to dismiss for failure to state a claim upon which relief may be granted.

## INTRODUCTION

Plaintiff Melissa Thrasher-Lyon's (Thrasher-Lyon) Response (Doc. #36) (Response) conclusively demonstrates that she has no claims, and this Court should dismiss the Class Action Complaint and this action with prejudice. She provided consent to have calls made to her cellular telephone, defeating her claim under the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA). Under the Illinois Automatic Telephone Dialers Act, 815 ILCS 305/1, *et seq.* (Illinois Telephone Act), she provided consent, and the statutory provision under which she is suing CCS is not applicable to CCS's alleged conduct. Nor has Thrasher-Lyon alleged any actual damages, a statutory requirement. Finally, Thrasher-Lyon has no claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505, *et seq.* (CFA). She does not allege that she is a consumer, or facts plausibly showing any consumer nexus, deception or damages.

Under Thrasher-Lyon's complaint and applicable law, there was no deception, no damages, and no statutory violations. She never responded to any of the letters or notices, paid nothing and incurred no harm. There is no case here.

In her response, Thrasher-Lyon admits, or does not dispute the following points set forth in CCS's initial Memorandum (Doc. #23) (CCS Initial Memo):

- Thrasher-Lyon does not plead that she paid any amounts or took any other action in response to the complained-of letters (CCS Initial Memo at 2, 10).

- Thrasher-Lyon provided the police with her cellular telephone number, which was duly recorded on the report (CCS Initial Memo at 3).

- Thrasher-Lyon gave her cellular telephone number to the police, knowing that the insurance company for the insured car driver, or others, would obtain that number to communicate with her. (CCS Initial Memo at 3; Response at 1-2, 6).

- The Illinois Motorist Report (CCS Initial Memo Ex. 3) contains no instructions by Thrasher-Lyon contrary to an invitation or permission to be called at the cellular number she provided to the police (CCS Initial Memo at 4).

- Thrasher-Lyon does not allege CCS violated the Illinois Telephone Act by engaging in any of the activities prohibited by Section 15, 815 ILCS 305/15 (CCS Initial Memo at 6).

- Section 30(b) of the Illinois Telephone Act, 815 ILCS 305/30(b), which CCS allegedly violated, requires a taped communication soliciting the sale of goods or services without live interaction (Supplement to CCS's Memorandum In Support of Motion to Dismiss (Doc. #33) at 1-2).

- The Illinois Telephone Act requires that a plaintiff suffer actual damages. 815 ILCS 305/30(c) (CCS's Initial Memo at 7; Response at 11).

- A private claim under the CFA requires that the plaintiff show actual damages proximately caused by the complained-of fraud. (CCS Initial Memo at 6, 9).

- Thrasher-Lyon purchased nothing from the defendants and was not a consumer (CCS Initial Memo at 9).

- Thrasher-Lyon sets forth no factual allegations as to how she has been harmed in a concrete, tangible way (CCS Initial Memo at 10).

- The Illinois Insurance Code at §143b provides that any insurance carrier whose payment to its insured is reduced by a deductible amount is subrogated to its

2

insured's entire collision loss claim including the deductible amount. 215 ILCS § 5/143b (CCS's Initial Memo at 10-11).

Thrasher-Lyon attaches to her Response various documents as exhibits. Her complaint does not refer to all of these documents. *See 188 L.L.C. v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (documents referred to in complaint do not convert a Rule 12(b)(6) motion to a motion for summary judgment). If the documents are considered a part of her pleading, they only confirm that Thrasher-Lyon fails to state a claim.

## ARGUMENT

### I.  COUNT I (TCPA) FAILS TO STATE A CLAIM (RESPONSE AT 5-9).

Thrasher-Lyon gave "prior express consent" under the TCPA, 47 U.S.C. § 227(b)(1)(A), by submitting her cellular telephone number to the police, which was recorded in the Illinois Motorist Report. Thrasher-Lyon cites the Federal Communication Commission's ("FCC") *In re: Rules and Regulations Implementing the Tel. Consumer Act of 1991,* 23 F.C.C.R. 559 at *564-65, ¶ 9, 2008 WL 65485, at **3 (F.C.C. January 4, 2008) ("FCC 2008 Order") (Response at 6). This Order states, among other matters, that the provision of a cellular telephone number to a creditor reasonably evidences prior consent (Response at 6). However, the FCC did not state that this provision to a creditor was the only way prior consent can be given. The FCC in the very same paragraph cites its prior Order:

> In the 1992 TCPA Order, the Commission determined that "persons who knowingly release their telephone numbers have in effect, given their invitation or permission to be called at the number which they have given, absent instructions to the contrary."

*Id., citing In re: Rules and Regulations Implementing the Tel. Consumer Protection Act* of 1991, 7 FCC Rcd. 8752, at *8769, ¶31, 1992 WL 690928, at **11 (F.C.C. Oct. 16, 1992) (FCC 1992 Order)(attached as Exhibit 1 hereto).

The court in *Greene v. DirectTV,* No. 10 C 117, 2010 WL 4628734 (N.D. Ill. Nov. 8, 2010) properly read and applied the above quoted FCC provision as support for its finding that the debtor

3

had given her prior express consent when she provided her cellular number to a credit bureau, not the defendant DirectTV, which called her on her cellular telephone. The court reasoned that the debtor knew that potential creditors would use it as a contact number for fraud alert purposes. *Id.* at \*\*3.

Thrasher-Lyon cites the next paragraph of the FCC 2008 TCPA Order (¶ 10) regarding provision of a number to a creditor during the transaction that resulted in the debt owed. 7 FCC Rcd. at \*564-65, 2008 WL 65485, at \*\*3 (Response at 7). However, this sentence explains a particular scenario of a creditor-debtor relationship, and is preceded by the broader sentence quoted above at page 3 of this reply. Thrasher-Lyon's reading is not in accordance with *Greene,* wherein the plaintiff gave consent in a non-"creditor/credit application context," to use Thrasher-Lyon's terminology (Response at 9 n. 3). The *Greene* court properly refused to do exactly what Thrasher-Lyon is asking this Court to do - disregard the FCC's interpretation in the FCC 1992 Order. 2010 WL 4628734, at \*3, *citing CE Design, Ltd. v. Prism Bus. Media, Inc.,* 606 F.3d 443, 449-50 (7th Cir. 2010) (district courts lack jurisdiction to review validity of FCC regulations); *see* 28 U.S.C. 2342(1) (assigning exclusive jurisdiction to determine validity of FCC Orders to Court of Appeals); *Griffith v. Consumer Portfolio Serv., Inc.,* No. 10 C 2697, 2011 WL 3609012, at \*3 (N.D.Ill. Aug. 16, 2011)(final FCC order binding on the district court).

Thrasher-Lyon cites distinguishable cases on "implied consent," including R*oell v. Withrow,* 538 U.S. 580, 586-87 (2000), which addressed a prisoner's § 1983 claim. The *Roell* court held that consent to proceedings before a magistrate judge can be inferred under 28 U.S.C. § 636(c)(1) (first sentence), which speaks only of "consent," without qualification as to form. This reference to consent contrasts with the second sentence of § 636(c)(1), which requires a referral to a part-time magistrate with the parties' consent pursuant to their "specific written request." *Id.* at 587. Here,

4

the TCPA only refers to a prior express consent without specifying how, or in what form, that consent may be given, unlike the second sentence of § 636(c)(1).

Thrasher-Lyon also cites *Edeh v. Midland Mgmt., Inc.,* 748 F.Supp.2d 1030, 1038 (D.Minn. 2010), wherein the plaintiff claimed a TCPA violation when the defendant made automated calls to plaintiff's cellular telephone without her consent. The defendant argued that it obtained the plaintiff's telephone number when it bought her debt and that it reasonably relied upon the seller of the debt to provide the appropriate contact information for the plaintiff. *Id.* Here, CCS does not make that argument. Rather, CCS argues that Thrasher-Lyon's provision of her cellular telephone number to the police was consent to be called thereon.

Thrasher-Lyon does not distinguish *Greene* for the reasons argued above. Nor does Thrasher-Lyon distinguish *CE Design Ltd. v. King Architectural Metals, Inc.,* 637 F.3d 721 (7th Cir. 2011) (Response at 9 and n. 9). The fact that the Seventh Circuit in *CE Design* discusses consent in the context of the adequacy of a would-be class representative, and explores the possibility of a new representative or separate classes, does not detract from its discussion of TCPA prior consent given not to creditors but to others. *Id.* at 724-28.

## II.    THE COURT SHOULD DISMISS COUNT II (ILLINOIS TELEPHONE ACT).

### A.    Thrasher-Lyon Provided Consent.  (Response at 9-10)

The statutory provision that CCS allegedly violated, 815 ILCS 305/30(b), contemplates that the called party may give "consent." Thrasher-Lyon cites inapplicable cases on implied consent. *Melena v. Anheuser-Busch, Inc.,* 219 Ill.2d 135, 150, 152, 157, 847 N.E.2d 99 (2006), the court rejected a heightened "knowing and voluntary waiver standard" and enforced an arbitration agreement. In *People v. Ceja,* 204 Ill.2d 332, 350-51, 789 N.E.2d 1228 (2003) the court found the trial court did not manifestly err in finding that a criminal defendant impliedly consented to electronic monitoring of his statements.

5

Thrasher-Lyon asserts that her cellular telephone number was "information that she was required to give to the police under the law" (Response at 1). If Thrasher-Lyon was legally obligated to give the police her cellular number, then she was not waiving any "right," unless she chose to give her cellular telephone number rather than another legally satisfactory telephone number. Then such submission of her cellular telephone number would have been Thrasher-Lyon's choice. Thrasher-Lyon's citation of cases addressing a "knowing and voluntary" waiver and a "knowing[ ]" agreement to challenged conduct does not assist her since she states that she was required to provide her cellular telephone number to the police. She had no "right" to waive according to her position. Moreover, a "knowing" waiver makes no sense in this context, since ignorance of the law under the TCPA and the FCC's and case law interpretation thereof is no excuse. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, ___ U.S. ___, 130 S.Ct. 1605, 1611-12 (2010).

### B. Count II Otherwise Fails to State an Illinois Telephone Act Claim (Response at 11-12)

#### 1. Section 815 ILCS 305/30(b) Under Which Thrasher-Lyon Is Suing Is Inapplicable Since She Gave her Consent and the Provision Applies to Taped Communications Soliciting the Sale of Goods or Services

Thrasher-Lyon admits that her only claim under the Illinois Telephone Act is under 815 ILCS 305/30(b) (Response at 11). However, that section is inapplicable since Thrasher-Lyon provided her consent, as argued above. Moreover, Thrasher-Lyon does not dispute that 815 ILCS 305/30(b) refers to a prerecorded message, and that 815 ILCS 305/5(a) (defining autodialers) refers to a recorded message. A recorded message is defined as any taped communication soliciting the sale of goods or services without live interaction. 815 ILCS 305/5(c).

Thrasher-Lyon fails to make a plausible claim that the alleged prerecorded messages involved a solicitation of the sale of services (Response at 11). CCS's alleged messages were not efforts to solicit sales of services. Drawing all reasonable inferences in Thrasher-Lyon's favor, her

6

complaint is implausible on its face that CCS's alleged prerecorded messages were a solicitation for the sale of services. CCS was trying to facilitate settlement and payments, not sell services.

### 2. No Actual Damages, and Non-Warranted Pursuit of Discovery

Thrasher-Lyon concedes that the Illinois Telephone Act requires actual damages (Response at 11). The Complaint does not allege that Thrasher-Lyon made any payment or suffered any harm. Thrasher-Lyon's allegation that she was "damaged" (Compl. ¶ 50; Response at 11) is a factually unsupported conclusion that is exactly the type of pleading – an unsupported "formulaic recitation of the elements of a cause of action" – that fails to state a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal,* 556 U.S. __, 129 S.Ct. 1937, 1949 (2009) *quoting Twombly (*a complaint is not sufficient if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") It is Thrasher-Lyon's burden to set forth a plausible claim; it is not CCS's burden to supply factual allegations eliminating every possible scenario. *Twombly,* 550 U.S. at 555 (*compare* Response at 11). Thrasher-Lyon fails to plead any damages, period.

Thrasher-Lyon refers to taking discovery (Response at 12). However, her complaint lacks enough substance to warrant putting CCS to the expense of discovery. *Twombly,* 550 U.S. at 558-59*; Atkins v. City of Chicago,* 631 F.3d 823, 832 (7th Cir. 2011). She alleges no plausible claim which merits the parties and this Court becoming involved in costly discovery. Thrasher-Lyon gave consent, sued under an inapplicable statutory provision, and suffered no damages.

### III. COUNT III FAILS TO STATE A CFA CLAIM.

#### A. Thrasher-Lyon's Case Law Does Not Support Her Argument (Response at 12-17).

Thrasher-Lyon was not a consumer, and fails to allege facts that the alleged conduct involved trade practices addressed to the market generally or otherwise implicated protection concerns (CCS initial memo at 8).

7

*People ex rel. Daley v. Datacom Sys. Corp.*, 146 Ill.2d 1, 585 N.E.2d 51 (1991) does not provide "binding law," nor is it "dispositive" of this case (Response at 13, 16-17). In *Daley,* the State of Illinois brought the suit, and the court held, among other matters, that the defendant was subject to the Illinois Collection Act. *Id.* at 28. As for the State's CFA claim, the "State's Attorney's ability to enforce the CFA was "the issue before us in the instant case." *Id.* at 32. The court stated that a person's status as a consumer relates to his or her standing to sue under the CFA, but was irrelevant to the case, since the State's Attorney brought the suit. *Id.* The State's Attorney does not have to be a consumer who suffered actual damage to bring a CFA suit. 815 ILCS 505/7a. Thus, *Datacom* arose from unique legal and factual issues – the Illinois Collection Act, the standing of the State's Attorney – that are not present here. *See, Norton v. City of Chicago*, 267 Ill.App.3d 507, 509-10, 642 N.E.2d 839 (1st Dist. 1994) (dismissing non-consumers' CFA claim, stating that the plaintiff in *Daley* was the State's Attorney "who 'is not limited regarding whose interests she or he seeks to protect.'").

Thrasher-Lyon cites a Washington state case, *Panag v. Farmers Ins. Co. of Washington,* 166 Wash. 2d 27, 204 P.3d 885 (Wash. 2009). However, *Panag* provides no guidance in this case as neither the facts, statute nor reasoning of the case is "on all fours with Illinois law." (Response at 15). The case arose from different facts and statute, and addressed different arguments. The case did not involve a notice appropriate under 215 ILCS § 143b requesting payment of the subrogated loss, including the deductible.

*Panag* does not support Thrasher-Lyon's case since its interpretation of the Washington Consumer Protection Act ("WCPA") is at odds with Illinois law on the CFA. In Illinois, to state a valid CFA claim, the plaintiff must be a consumer or show that the alleged wrongful conduct involved trade practices addressed to the market generally or otherwise implicated consumer concerns. *3Com Crop. v. Elec. Recovery Specialists, Inc.,* 104 F.Supp.2d 932, 939 (N.D.Ill. 2000). In contrast, *Panag* held that a private WCPA action may be brought by one who is not in a consumer or

8

other business relationship with the actor against whom the suit is brought. 166 Wash.2d at 43-44, 204 P.3d at 892. The court ruled that the WCPA does not apply only to disputes arising from a consumer or business transaction. Nor is the WCPA limited to plaintiffs who are consumers or someone in a business relationship. *Id.* at 38-41, 204 P.3d at 889-91. The *Panag* court found that no proof of a consumer transaction between the parties is necessary. *Id.* at 38, 40, 204 P.3d at 890. A WCPA claim need not "arise from a consensual consumer or business transaction and . . . be consumer oriented." *Id.* at 38, 204 P.3d at 890. The WCPA is not limited to disputes between parties to a consumer transaction. *Id.* at 41, 204 P.3d at 891.

*Panag's* approach and reasoning are completely at odds with Illinois' consumer protection law. Illinois has a well-developed and well-reasoned consumer-oriented interpretation of the CFA. To adopt *Panag's* reasoning would turn Illinois' well-established consumer-oriented case law on its head. The dissent in *Panag* (a 5-4 decision) did not think the majority opinion was a well-reasoned one, stating that the majority has rewritten the WCPA. *Id.* at 65-66, 72-73, 204 P.3d at 903-904, 907. Thus, *Panag* provides no guidance to the Court in this case, which deals with different statutory reasoning.

  **B.**   **Thrasher-Lyon Otherwise Fails to State a CFA Claim (Response at 13-14, 17-20).**

    **1.**   <u>**There Was No Deception**</u>

Contrary to Thrasher-Lyon's assertion (Response at 13), CCS argued that the letters indeed were non-deceptive: they were properly sent and authorized by Illinois statute: Illinois Ins. Code, 215 ILCS § 143b (providing that an insurer is subrogated to the entire loss claim, including the deductible amount) (CCS Initial Memo at 10-11).

Moreover, to the extent Thrasher-Lyon alleges that CCS misrepresented that she had a legal obligation to pay $3,240.10, her claim of deception fails. A misrepresentation of law does not constitute fraud. *Hoseman v. Weinshneider*, 322 F.3d 468, 476 n.2 (7th Cir. 2003) *citing City of Aurora v.*

9

*Green*, 125 Ill.App.3d 684, 688-89, 467 N.E.2d 610 (2d Dist. 1984). Further, Thrasher-Lyon never denies in her complaint that she was at fault in the accident.

Finally, Thrasher-Lyon, referring to exhibits to her Response, asserts that the $3,240.19 figure was a figure inflated for extra labor and parts, and repairs for unrelated damages (Response at 15 n. 5). Thrasher-Lyon never makes this allegations in her complaint. More importantly, she does not allege that she paid any amount whatsoever to the defendants. Nor does she assert any payment in her Response. Under the CFA, a plaintiff must have been deceived and suffered damages proximately caused by the deception. *Oshama v. Coca-Cola Co.*, 472 F.3d 506, 513-14 (7th Cir. 2006); *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 199, 835 N.E.2d 801 (2005). Thrasher-Lyon pleads no facts plausibly satisfying these elements of a CFA claim.

### 2. **Thrasher-Lyon Does Not Allege Facts Showing Any Consumer Nexus**

Thrasher-Lyon does not and cannot allege that she was a consumer, or facts showing a consumer nexus. The Illinois Appellate Court and the federal court have held that a non-consumer plaintiff can bring a CFA action only if he can meet the "consumer nexus" test by alleging that the challenged conduct involves trade practices directed to the market generally or otherwise relates to consumer protection issues. *Bank One Milwaukee v. Sanchez*, 336 Ill.App.3d 319, 323, 783 N.E.2d 217 (2d Dist. 2003); *Williams Elec. Games, Inc.,* 366 F.3d 569, 579 (7th Cir. 2004); *Song v. PIL, L.L.C.,* 640 F.Supp.2d 1011, 1018-19 (N.D.Ill. 2009) (plaintiff not a consumer; therefore, he had to allege conduct that implicated consumer concerns); *MacNeil Auto. Prods., Ltd. v. Cannon Auto. Ltd.,* 715 F.Supp.2d 786, 792 (N.D. Ill. 2010); *DRL Enter., Inc. v. EPartners, Inc.,* 173 F.Supp.2d 818, 819-20 (N.D.Ill. 2001); *Tile Unlimited., Inc. v. Blanke Corp.,* No. 10 C 8031, 2011 WL 1527011, at **2-3 (N.D. Ill. April 20, 2011).

It does not make any difference if the consumer nexus test is limited to disputes between corporations, as asserted by Thrasher-Lyon (Response at 18). Although there is authority

supporting Thrasher-Lyon's position (*see, e.g.,* the cases cited in the Response at 18 first full para.), the above-cited cases do not say that the consumer nexus test applies only to disputes between businesses. In *Bank One Milwaukee,* the court explicitly ruled the consumer nexus test for standing under the CFA was not limited to businesses. 336 Ill.App.3d at 323.

In *Credit Ins. Consultants, Inc. v. Gerling Global Reins. Corp. of Am.,* 210 F.Supp.2d 980, 987 (N.D. Ill. 2002) the court ruled that "a non-consumer may bring a CFA claim" if "he" can allege a consumer nexus, citing the Seventh Circuit in *Athey Prod. Corp. v. Harris Bank Rosell,* 89 F.3d 430, 437 (1996). The court also cited *Brady v. Finch Univ. of Health Sciences,* 298 Ill.App.3d 146, 160, 698 N.E.2d 257 (2d Dist. 1998), finding *Brady* required that a plaintiff claiming an implication of consumer concerns "must specifically plead that *his* actions were akin to a consumer's actions." *Credit Ins. Consultants, Inc.,* 210 F.Supp.2d at 985 (emphasis added). *See Properties Unlimited, Inc. Realtors v. Cendant Mobility Serv.,* No. 01 C 8375, 2002 WL 1147460, at *3 (N.D. Ill. May 28, 2002) (stating that *Brody* refers to an individual claiming an implication of consumer concerns); *Song,* 640 F.Supp.2d at 1018-10 (individual's CFA claim dismissed); *Gen'l Ins. Co. of Am. v. Mali,* No. 08 C 2787, 2010 WL 1286076, at *7 (N.D. Ill. Mar. 30, 2010) (*quoting Song,* explaining that because the individual Song was not a consumer, "he had to allege conduct that implicated consumer concerns"); *MacNeil,* 715 F.Supp.2d at 792 (providing that a statutory "person," which includes individuals and businesses, who is not a consumer must allege a consumer nexus).

As stated, it makes no difference whether the consumer nexus concept is restricted to corporations. Thrasher-Lyon has no claim. There is no dispute that Thrasher-Lyon is not a consumer. She also has failed to state a plausible consumer nexus. If the consumer nexus is a CFA test only for corporations, as Thrasher-Lyon maintains, then the consumer nexus test confirms Thrasher-Lyon's lack of CFA claim: she is neither a consumer nor a business alleging facts showing a consumer concern.

### 3. Lack of Standing or Damages

Thrasher-Lyon makes a confusing argument regarding her "standing." However, the cases she cites (Response at 18-19, n. 7) require that the plaintiff suffer "some injury in fact to a legally cognizable interest." *Glisson v. City of Marion,* 188 Ill.2d 211, 221, 720 N.E.2d 1034 (1999); *Greer v. Illinois Housing Devel. Authority,* 122 Ill.2d 462, 492, 524 N.E.2d 561 (1988). Here, Thrasher-Lyon does not allege any injury in fact or damages. *See I.C.S. Illinois v. Waste Mgmt. of Illinois, Inc.,* 403 Ill.App.3d 211, 234, 931 N.E.2d 318 (1st Dist. 2010) (plaintiff suffered no legally cognizable injury under the CFA and, therefore, had no standing).

Thrasher-Lyon wrongly asserts she sufficiently alleges actual damages (Response at 19-20). Alleging a factually unsupported legal conclusion in a complaint and speculating in a brief about emotional distress are not the setting forth of well-pleaded factual allegations of damages in a federal complaint. *Ashcroft,* 129 S.Ct. at 1950. That such events could have happened is not enough. *Atkins,* 631 F.3d at 831-32. Indeed, Thrasher-Lyon never alleges in her complaint that she suffered any emotional damages, financial harm or any facts giving rise to any plausible inferences of emotional or any other injury.

Further, even if she alleged facts showing plausible emotional distress, such damage alone is not enough for a plaintiff to state a CFA claim. There must be financial damage as well, which neither the complaint nor Response assert. *Cooney v. Chicago Public Sch.*, 407 Ill.App.3d 358, 365-66, 943 N.E.2d 23 (1st Dist. 2010); *Morris v. Harvey Cycle & Camper, Inc.*, 392 Ill.App.3d 399, 402, 911 N.E.2d 1049 (1st Dist. 2009) *citing Xydakis v. Target, Inc.*, 333 F.Supp. 2d 686, 688 (N.D. Ill. 2004). Thrasher-Lyon cites *Greisz v. Household Bank (Illinois)*, 8 F.Supp. 2d 1031, 1044 (N.D. Ill. 1998), which was decided before *Morris*. It did not hold that emotional damages, by themselves, are sufficient to state a CFA claim. Rather it found the plaintiff had not produced evidence of emotional damage. *Hill v. Sisters of St. Francis Health Serv.*, No. 06 C 1488, 2006 WL 3783415, at *5 (N.D. Ill. Dec. 20,

130166365v1 0925245 53544

2006) stated that in *Greisz v. Household Bank (Illinois)*, *N.A.*, 176 F.3d 1012, 1016 (7th Cir. 1999) (affirming *Greisz*, 8 F.Supp.2d 1031), the issue of whether emotional damages constitute actual damages under the CFA was not squarely presented to the court. In any event, *Hill* was decided before *Morris*, and is contrary to current established Illinois law.

## **CONCLUSION**

Under her complaint, Thrasher-Lyon paid no money, suffered no harm, and has no claims. She gave consent under the TCPA and Illinois Telephone Act. The provision in the latter statute upon which she bases her claim is inapplicable because of consent and its language, and she suffered no damages. Thrasher-Lyon was neither a consumer under the CFA, nor able to plead any consumer nexus. She does not plead any plausible deception or damages.

For the foregoing reasons, CCS Commercial LLC respectfully submits that the Court grant its motion to dismiss and dismiss the Class Action Complaint and this action with prejudice.

                                              HINSHAW & CULBERTSON LLP

                                              By: /s/ *Clifford E. Yuknis*
                                                    One of the Attorneys for Defendant CCS COMMERCIAL LLC.

David M. Schultz
Clifford E. Yuknis
Matthew Glavin
HINSHAW & CULBERTSON LLP
222 North LaSalle Street, Suite 300
Chicago, Illinois 60601
312/704-3000
dschultz@hinshawlaw.com
cyuknis@hinshawlaw.com
mglavin@hinshawlaw.com

## **CERTIFICATE OF SERVICE**

    I hereby certify that on September 30, 2011, I electronically filed Defendant CCS Commercial LLC's Reply in Support of Its Motion to Dismiss with the Clerk of the U.S. District Court, using the CM/ECF system, which will send notification of such filing(s) to the following:

                      HINSHAW & CULBERTSON LLP

                      s/ *Clifford E. Yuknis*
                      Clifford E. Yuknis

130166365v1 0925245 53544