

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MELISSA THRASHER-LYON, on behalf of herself and a class of others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 11 C 04473 |
| v. | ) ) | Judge Ruben Castillo |
| ILLINOIS FARMERS INSURANCE COMPANY and CCS COMMERCIAL LLC d/b/a CREDIT COLLECTION SERVICES COMMERCIAL, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Melissa Thrasher-Lyon ("Plaintiff"), brings this putative class action pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, the Illinois Automatic Telephone Dialers Act ("ITA"), 815 Ill. Comp. Stat. 305/1, *et seq.*, and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505, *et seq.*, against Illinois Farmers Insurance Company ("Farmers") and CCS Commercial LLC, d/b/a Credit Collection Services Commercial ("CCS"), (collectively, "Defendants"). (R. 1, Compl. at 1.) Presently before the Court are Defendants' motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (R. 21, CCS's Mot.; R. 25, Farmers' Mot.) For the reasons discussed below, CCS's motion to dismiss is denied in part and granted in part, and Farmers' motion to dismiss is granted.

## RELEVANT FACTS

On April 8, 2011, while riding her bicycle, Plaintiff was involved in an accident with a motorist at the corner of Racine Avenue and Belmont Avenue in Chicago, Illinois. (R. 1, Compl. ¶ 6.) According to Plaintiff, the motorist suffered no injuries, and there was only minor damage to the motorist's vehicle. (*Id.*) Plaintiff suffered minor physical injuries. (*Id.*) The motorist was insured by Farmers. (*Id.* ¶ 7.)

On April 11, 2011, Farmers sent Plaintiff a letter stating that Plaintiff "was responsible for the damages in the amount of $3,240.19" and characterizing $3,240.19 as the "Amount Owed." (*Id.* ¶ 8a.) The letter threatened to take "further action" against Plaintiff if she did not pay. (*Id.*) On May 2, 2011, Farmers sent Plaintiff a second letter, again characterizing $3,240.19 as the "Amount Owed," threatening to take "further action" if Plaintiff failed to pay, and stating that a failure to pay would result in the claim being forwarded to a collection agency or attorney. (*Id.* ¶ 8b.) On May 11, 2011, Farmers sent Plaintiff a third letter similar to the April 11, 2011 letter. (*Id.* ¶ 8c.) According to Plaintiff, the $3,240.19 Farmers claimed Plaintiff owed was subject to dispute. (*Id.* ¶ 9.)

A little over one month after the accident, on May 16, 2011, CCS sent Plaintiff a "WARNING NOTICE" asserting that Farmers had subrogation rights for $3,240.19. (*Id.* ¶ 10a.) The notice stated that the matter had been referred to CCS "for recovery," threatened that a failure to pay $3,240.19 "could result in a law suit [sic] being filed against [Plaintiff] and/or license suspension," and included a box stating, "PAY IMMEDIATELY, $3,240.19." (*Id.*) The notice further asserted that Farmers had paid the $3,240.19. (*Id.* ¶ 11.) According to Plaintiff, Farmers only paid $740.19 because the motorist's policy included a $2,500 deductible. (*Id.*) On June 6, 2011, CCS sent Plaintiff another "WARNING NOTICE" again asserting that Farmers

2

had subrogation rights for $3,240.19, stating that the matter had been referred to CCS for recovery, and threatening that failure to pay could result in a lawsuit or license suspension. (*Id.* ¶ 10b.) The June 6, 2011 letter also contained a box stating, "PAY IMMEDIATELY, $3,240.19." (*Id.*) Both "WARNING NOTICES" directed Plaintiff to make a payment at the following website: "www.warningnotice.com." (*Id.* ¶ 10.)

On June 27, 2011, Plaintiff alleges that she received a "SETTLEMENT NOTICE" notifying Plaintiff that if she paid a "reduced amount," CCS would treat the claim for $3,240.19 as "settled-in-full." (*Id.* ¶ 13.) This letter referenced the following website: "www.settlementnotice.com." (*Id.* ¶ 14.)

In addition to the letters, Plaintiff avers that she received a series of telephone calls on her cellular telephone from CCS. (*Id.* ¶¶ 16-17.) According to Plaintiff, CCS placed the calls from an automatic telephone dialing system, and when Plaintiff was unable to answer the calls, CCS left a voicemail message on her phone using a machine or prerecorded voice. (*Id.* ¶ 16.) When Plaintiff was able to answer her phone, "there was silence; [and] no person was waiting on the other end." (*Id.*) Finally, Plaintiff alleges that she never consented for CCS to call her at her cellular telephone number. (*Id.* ¶ 17.)

## PROCEDURAL HISTORY

Plaintiff initiated this action on July 1, 2011. (R. 1, Compl.) In her complaint, Plaintiff alleges multiple counts against CCS and Farmers. Count I is a TCPA claim asserted against CCS. (*Id.* ¶¶ 45-48.) In Count II Plaintiff alleges that CCS violated the ITA. (*Id.* ¶¶ 49-50.) Counts III and IV are ICFA claims asserted against CCS and Farmers, respectively. (*Id.* ¶¶ 51-62.)

3

On August 25, 2011, CCS filed a motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6). (R. 21, CCS's Mot.) That same day, Farmers filed a motion to dismiss Plaintiff's complaint under Rules 12(b)(1) and 12(b)(6). (R. 25, Farmers' Mot.) On August 30, 2011, CCS sought leave to supplement its memorandum in support of its motion to dismiss, (R. 30, CCS's Mot. Supp.), which the Court granted on August 31, 2011. (R. 32, Min. Entry.)

In its motion to dismiss, CCS seeks dismissal of Plaintiff's TCPA, ITA, and ICFA claims against it for failure to state a claim and because Plaintiff lacks standing to bring her ICFA claim. (R. 21, CCS's Mot. ¶ 2.) Farmers seeks dismissal of Plaintiff's ICFA claim against it for the same reasons. (R. 25, Farmers' Mot. ¶ 2.)

## LEGAL STANDARDS

A motion to dismiss pursuant to Rule 12(b)(1) asks the court to dismiss an action over which it allegedly lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party asserting jurisdiction bears the burden of proof. *See Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009). All reasonable inferences are drawn in favor of the plaintiff, and all well-pleaded allegations are accepted as true. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Additionally, when considering a motion to dismiss under Rule 12(b)(1), a court may look beyond the allegations of the complaint and may consider other submitted evidence. *Johnson v. Apna Ghar, Inc.*, 330 F.3d 990, 1001 (7th Cir. 2003); *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993).

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). When reviewing a motion to dismiss, the Court

accepts as true all factual allegations in the complaint and draws all reasonable inferences in the non-movant's favor. *Id.* Pursuant to Rule 8(a)(2), a complaint must contain "a 'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted).

Finally, affirmative defenses are generally not an appropriate grounds for dismissal at the complaint stage because plaintiffs are not required to plead facts in the complaint to anticipate and defeat affirmative defenses. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)); *see also Indep. Trust Corp. v. Stewart Info. Serv. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Nonetheless, where a plaintiff's complaint "sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate." *Indep. Trust Corp.*, 665 F.3d at 935 (citing *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009)).

## ANALYSIS

## I.     Count I: Plaintiff's TCPA claim against CCS

CCS first argues that Plaintiff's TCPA claim should be dismissed for failure to state a claim. The TCPA and its implementing rules and regulations make it unlawful "to make any call (other than a call . . . made with the prior express consent of the called party) using any automatic

telephone dialing system or an artificial or prerecorded voice–to any telephone number assigned to . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii); *see also* 47 C.F.R. § 64.1200(a)(i)(iii). The TCPA provides for a private right of action, based on violations of the TCPA or its regulations, "to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater[.]" 47 U.S.C. § 227(b)(3)(B). To state a TCPA cause of action, a plaintiff must allege: (1) that a call was made; (2) using an automatic telephone dialing system or artificial or prerecorded voice; (3) the number called was assigned to cellular telephone service; and (4) the call was not made with the prior express consent of the recipient. *See Pimental v. Google Inc.*, No. 11-2585, 2012 WL 691784, at *2 (N.D. Cal. Mar. 2, 2012).

CCS argues that Plaintiff fails to state a TCPA claim because she gave prior express consent to be called on her cellular telephone. (R. 23, CCS's Mem. at 3.) According to CCS, Plaintiff's provision of her cellular telephone number to the police, who recorded her telephone number on the accident report, constitutes express consent to call her on that number. (*Id.*) In response, Plaintiff argues that CCS never received Plaintiff's express consent; rather, CCS "skimmed her phone number" from the accident report. (R. 36, Pl.'s Resp. at 10.) According to Plaintiff, "[h]er act in giving her phone number to a police officer would at best amount to implied consent" and "has none of the hallmarks of the 'prior express consent'" contemplated by the Federal Communications Commission. (*Id.* at 10-11.)

Although neither of the parties raise the issue, the Court notes that "'express consent' is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof." *Grant v. Capital Mgmt. Servs., L.P.*, 449 Fed.

6

Appx. 598, No. 11-56200, 2011 WL 3874877, at *2 n.1 (9th Cir. Sept. 2, 2011) (unpublished); *see also D.G. v. Diversified Adjustment Serv., Inc.*, No. 11-2062, 2011 WL 5506078, at *3 (N.D. Ill. Oct. 18, 2011) (noting that the TCPA "sets forth the affirmative defense of express consent"); *Martin v. Bureau of Collection Recovery*, No. 10-7725, 2011 WL 2311869, at *1 (N.D. Ill. June 13, 2011) (classifying "prior express consent" as an affirmative defense). Granting a motion to dismiss on the basis of an affirmative defense is only appropriate where a plaintiff has alleged all elements of the affirmative defense in her complaint. *Lewis*, 411 F.3d at 842. Here, Plaintiff alleges that CCS placed telephone calls from an automatic telephone dialing system to her cellular telephone number, even though she "never consented for CCS to call her at that telephone number." (R. 1, Compl. ¶¶ 16-17.) Because the four corners of Plaintiff's complaint allege that CCS did not have her prior express consent to contact her, the Court denies CCS's motion to dismiss for failure to state a claim on this basis. *See Greene v. DirecTV, Inc.*, No. 10-117, 2010 WL 1506730, at *2 (N.D. Ill. Apr. 14, 2010) (denying motion to dismiss where the four corners of Plaintiff's complaint alleged that defendant contacted her without first obtaining express consent).

## II.     Count II: Plaintiff's ITA claim against CCS

CCS next contends that Plaintiff's ITA claim fails to state a claim. The ITA's "recorded messages provision" makes it unlawful "to play a prerecorded message placed by an autodialer without the consent of the called party." 815 Ill. Comp. Stat. 305/30(b). The ITA also allows "[a]ny customer injured by a violation of this Act [to] bring an action for the recovery of damages." 815 Ill. Comp. Stat. 305/30(c). Accordingly, to state a claim under the ITA, a plaintiff must allege that (1) she is a telephone customer; (2) the defendant placed a call using an

autodialer; (3) the defendant played a prerecorded message; (4) the call was not made with her consent; and (5) she was injured by the defendant's alleged violation. 815 Ill. Comp. Stat. 305/30(b)-(c).

CCS argues that Plaintiff fails to plead sufficient factual allegations to support her ITA claim for three reasons. First, CCS argues that Plaintiff fails to plead a claim because the ITA "enumerates four specific acts that can be the basis for a violation," but Plaintiff has failed to make "any factual allegations plausibly supporting that CCS violated the [ITA] in any of the four enumerated ways." (R. 23, CCS's Mem. at 6.) Second, CCS argues that Plaintiff fails to sufficiently allege that she suffered an injury or damages. (*Id.* at 7.) Third, CCS argues that Plaintiff fails to make factual allegations that CCS played any "recorded messages" by an "autodialer," as those terms are defined in the ITA, and furthermore, that Plaintiff provided her consent to receive the telephone calls. (R. 33, CCS's Supp. at 1-2.)

With respect to CCS's first argument, Plaintiff concedes that she "has not alleged a violation of the [ITA's] restrictions on the methods of using autodialers," but that instead "she brings her claim only under the recorded messages provision." (R. 36, Pl.'s Resp. at 15.) Accordingly, the Court focuses on the ITA's recorded messages provision.

Regarding CCS's second argument, where actual injury or damages are an element of a claim, as they are here, a plaintiff must state sufficient facts alleging that she has suffered an injury or damages. *See Yu v. Int'l Bus. Machs. Corp.*, 732 N.E.2d 1173, 1177 (Ill. App. Ct. 1st Dist. 2000) (affirming district court's dismissal of plaintiff's complaint and holding that plaintiff's claims, which required actual injury or damage, constituted mere "conjecture and speculation," because plaintiff failed to allege any actual harm). In her complaint, Plaintiff

alleges that pursuant to the ITA, she "seeks to recover statutorily set damages" from CCS, (R. 1, Compl. ¶ 1), that she "is entitled to recover treble damages," (*Id.* ¶¶ 19, 50), and that she was "damaged as a direct and proximate result" of CCS's alleged violations of the ITA. (*Id.* ¶ 50.) Based on these allegations, Plaintiff argues that she has pleaded that she was damaged and further, that Defendants have not pointed to anything to make this allegation implausible. (R. 36, Pl.'s Resp. at 15.) Nowhere in her complaint, however, does she detail the precise injury she suffered or how she was damaged or injured by CCS's alleged violations of the ITA's recorded messages provision. The Court finds that Plaintiff has only alleged injury or damages in a most conclusory manner as her complaint lacks any facts about how precisely she was damaged. Accordingly, Plaintiff's damages allegations are insufficient to state a claim for relief.

Even if Plaintiff had sufficiently alleged an injury, however, the Court finds that Plaintiff also fails to allege that CCS placed telephone calls using a "recorded message," as that term is defined in the ITA. Specifically, Plaintiff alleges that CCS placed the calls "from an automatic telephone dialing system[,]" and that "[w]hen Plaintiff was not available to answer the calls, each time a voicemail message was left on her phone using a machine or prerecorded voice." (R. 1, Compl. ¶ 16.) She also alleges that, "[w]hen Plaintiff was able to answer her cellular phone, there was silence; no person was waiting on the other end." (*Id.*) Under the ITA, "recorded messages" are "taped communications soliciting the sale of goods or services without live voice interaction." 815 Ill. Comp. Stat. 305/5(c). Nowhere in her complaint does Plaintiff allege that the messages she received were communications soliciting the sale of goods or services. Indeed, nowhere in her complaint does Plaintiff set forth any details about the contents of the messages.

CCS also complains that Plaintiff fails to allege that it used "autodialer" equipment when

placing the telephone calls. The ITA defines "autodialers" as "any telephone dialing . . . system . . . programmed to sequentially or randomly access the stored telephone numbers in order to automatically connect a telephone with a recorded message[.]" 815 Ill. Comp. Stat. 305/5(a). According to CCS, because Plaintiff failed to state that an automatic telephone dialing system was used "in order to automatically connect a telephone with a recorded message," Plaintiff has not sufficiently alleged that autodialer equipment was used. (R. 33, CCS's Supp. at 2.) While the Court is inclined to disagree with CCS's hyper-technical argument because Plaintiff's allegation that CCS used an automatic telephone dialing system places CCS on notice as to the type of equipment used, Plaintiff is advised to amend her complaint in this respect so as to avoid this type of challenge to any amended complaint she may file.

Finally, CCS argues that as with her TCPA claim, Plaintiff fails to state an ITA claim because she provided her consent. (R. 23, CCS's Mem. at 7; R. 33, CCS's Supp. at 2.) Although this Court's research has not found any case law analyzing the ITA's consent provision and whether the ITA requires express or implied consent, the Court finds that like the TCPA, consent is an affirmative defense. Plaintiff has not set forth any facts in her complaint to definitively conclude that she provided CCS consent to call her cellular telephone number, and instead alleges that she never consented for CCS to call her at her cellular telephone number. (R. 1, Compl. ¶ 17.) Because the four corners of Plaintiff's complaint allege that CCS did not have her consent to contact her, the Court declines to grant CCS's motion to dismiss her ITA claim on this basis.

Accordingly, Plaintiff's ITA claim against CCS is dismissed because Plaintiff fails to sufficiently allege that she suffered any damages or that CCS placed telephone calls using a

"recorded message" or an "autodialer" as those terms are defined in the ITA.

## III.   Counts III and IV: Plaintiff's ICFA claims against CCS and Farmers

Both CCS and Farmers move to dismiss Plaintiff's ICFA claims in Counts III and IV of her complaint. The ICFA makes it unlawful to engage in "unfair or deceptive acts or practices, including . . . fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce." 815 Ill. Comp. Stat. 505/2. The ICFA creates a private cause of action for "[a]ny person who suffers actual damage as a result of a violation of [the ICFA.]" 815 Ill. Comp. Stat. 505/10a(a).

Defendants posit several grounds for the dismissal of Plaintiff's ICFA claims. Defendants first argue that Plaintiff's claims should be dismissed because she fails to allege facts plausibly supporting any deceptive or unfair acts in trade or commerce, and that she lacks standing under the ICFA because she is not a consumer. (R. 23, CCS's Mem. at 7-9; R. 26, Farmers' Mem. at 5-7; R. 37, Farmers' Reply at 7-9.) Second, Defendants argue that Plaintiff's ICFA claims should be dismissed because she fails to allege that she has been "harmed in a concrete, tangible way,'" and therefore she lacks Article III standing and has failed to state an ICFA claim. (R. 23, CCS's Mem. at 10; R. 26, Farmers' Mem. at 8; R. 38, CCS's Reply at 12-13; R. 37, Farmers' Reply at 2-7.) Third, Defendants argue that the letters Plaintiff received were proper because Farmers and CCS were entitled to collect the full $3,240.19. (R. 23, CCS's Mem. at 10-11; R. 37, Farmers' Reply at 10-11.)

### A.   Whether Plaintiff has sufficiently alleged that she has Article III Standing

The Court first addresses Defendants' standing arguments. As an initial matter, the Court

notes that in responding to Defendants' arguments, Plaintiff conflates the concepts of statutory

standing with Article III standing, and in so doing fails to address Defendants' arguments that she

lacks Article III standing to pursue her claims. (R. 36, Pl.'s Resp. at 21-23.) Whereas "Article

III standing enforces the Constitution's case-or-controversy requirement[,]" in determining

whether a plaintiff has statutory standing, "a court considers whether Congress, via a statutory

provision, 'has accorded this *injured* plaintiff the right to sue the defendant to redress his

injury.'" *George v. Kraft Foods Global, Inc.*, 270 F.R.D. 355, 364 (N.D. Ill. 2010) (citing

*Winkler v. Gates*, 481 F.3d 977, 979 (7th Cir. 2007); quoting *Graden v. Conexant Sys. Inc.*, 496

F.3d 291, 296 (3d Cir. 2007)). "[S]atisfying Article III's requirements does not automatically

confer statutory standing[,]" nor is statutory standing "a substitute for Article III standing." *Id.*

(citing *Kohen v. Pacific Inv. Mgmt. Co.*, LLC, 571 F.3d 672, 677 (7th Cir. 2009); *Raines v. Byrd*,

521 U.S. 811, 820 N.3 (1997)).

To establish Article III standing, a plaintiff must allege (1) an injury in fact; (2) a causal

connection between the injury and the conduct complained of; and (3) a likelihood that the injury

will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-

61 (1992) (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)). The

Supreme Court has cautioned that "[a]t the pleading stage, general factual allegations of injury

resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e]

that general allegations embrace those specific facts that are necessary to support the claim.'"

*Lujan*, 504 U.S. at 561 (1992) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

Here, Plaintiff fails to allege even general factual allegations that she suffered an injury-in-fact,

that there is a causal connection between her injury and Defendants' conduct, or that there is a

likelihood that her injury will be redressed by a favorable decision. For instance, nowhere in her complaint does Plaintiff allege that she was injured or harmed. Plaintiff asserts in quite conclusory terms that she "was damaged as a direct and proximate result" of Defendants' violations of the ICFA. (R. 1, Compl. ¶¶ 55, 61.) The only factual allegations she makes to support her ICFA claims are that she received misleading letters and written notices. (*Id.* ¶¶ 8-14.) Therefore, the Court finds that Plaintiff has not sufficiently alleged that she has Article III standing to proceed on her ICFA claims.

**B.  Whether Plaintiff has statutory standing under the ICFA to pursue her claim**

Next, Defendants argue that Plaintiff's ICFA claims also fail because: (1) Plaintiff's claims against them do not involve trade or commerce, and (2) because she is not a consumer under the ICFA, she therefore lacks standing. (R. 23, CCS's Mem. at 7-9; R. 26, Farmers' Mem. at 5-7; R. 37, Farmers' Reply at 7-9.) To adequately plead a private cause of action under the ICFA, a plaintiff must allege: (1) an unfair or deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) that the deception occurred in the course of conduct involving trade or commerce; (4) actual damage to the plaintiff; and (5) that such damages were proximately caused by the defendant's deception. *Coy Chiropractic Health Ctr., Inc. v. Travelers Cas. and Sur. Co.*, 957 N.E.2d 1174, 1181 (Ill. App. Ct. 5th Dist. 2011) (quoting *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E. 2d 801, 850 (Ill. 2005)); *see also Oliveira v. Amoco Oil. Co.*, 776 N.E.2d 151, 160 (Ill. 2002). Furthermore, an ICFA action must be pled with particularity. *Global Total Office Ltd. Partnership v. Global Allies, LLC*, No. 10 - 1896, 2011 WL 3205487, at *2 (N.D. Ill. July 28, 2011); *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 593 (Ill. 1996) ("[A] complaint alleging a violation of consumer fraud must be pled

with the same particularity and specificity as that required under common law fraud."). Therefore, a plaintiff "must allege with particularity the 'who, what, when, where, and how' of the fraud or misrepresentation." *Id.* (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).

### 1. Whether Defendants' conduct falls within the purview of the ICFA

Defendants first argue that Plaintiff's ICFA claims do not involve trade or commerce. (R. 23, CCS's Mem. at 7-8; R. 26, Farmers' Mem. at 5-6.) Under the ICFA, the terms "trade" and "commerce" mean "the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of [Illinois]." 815 Ill. Comp. Stat. 505/1(f). Additionally, the ICFA provides that it "shall be liberally construed to effect the purposes thereof." 815 Ill. Comp. Stat. 505/11a. According to Defendants, their acts of pursuing Farmers' subrogation[1] rights by seeking to recover damages caused by Plaintiff are not "trade or commerce" because they did not sell, offer to sell, or advertise anything to Plaintiff nor did Plaintiff purchase anything from them. (R. 23, CCS's Mem. at 7-8; R. 26, Farmers' Mem. at 5-6.)

Contrary to Defendants' argument, the Illinois Supreme Court has found that debt collection practices are embraced by the ICFA. *People ex rel. Daley v. Datacom Sys. Corp.*, 585

---

[1] Subrogation is simply "[t]he substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor." Black's Law Dictionary (9th ed. 2009). In the insurance context, subrogation is "[t]he principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy." *Id.*

N.E.2d 51, 64 (1991). In *Daley*, the Cook County State's Attorney brought an action against the

City of Chicago and Datacom, a debt collector, hired by the City of Chicago to collect fines owed

on city parking tickets. *Id.* at 54-55. The State's Attorney alleged that Datacom's actions with

regards to the collection of parking ticket fines violated the Illinois Collection Agency Act and

the ICFA. *Id.* Datacom argued that the ICFA did not apply to its conduct "because the [ICFA]

protects only consumers, the alleged parking violators are not consumers, and therefore the

alleged parking violators do not have standing under the [ICFA]." *Id.* at 64. The Illinois

Supreme Court rejected this "restrictive construction of the ICFA" and reasoned that "the

definition of 'trade' and 'commerce' in the [ICFA] includes the 'distribution of *any* services . . .

*directly or indirectly* affecting the people of this State." *Id.* (emphasis in original). The Illinois

Supreme Court noted that Datacom sold and provided full collection services to the City of

Chicago, and as a result, Datacom "mailed several demand notices to, and collected money from,

hundreds of thousands of people in [Illinios]." *Id.* These actions, the court found, "constituted

the sale and distribution of services which directly or indirectly affected the people of Illinois,

namely the alleged parking violators, and thus amounted to conduct of trade or commerce as

defined by the [ICFA]." *Id.*[2]

_____

[2] The ICFA also provides that "[i]n construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act ['FTCA']." 815 Ill. Comp. Stat. 505/2. In *Daley*, the Illinois Supreme Court separately relied on the FTC regulation concerning the collection of debts to support its conclusion that Datacom's debt collection activities involved trade or commerce. 585 N.E.2d at 64. Although those regulations have since been rescinded, *Perperas v. United Recovery Sys., Inc.*, No. 96-7693, 1997 WL 136326, at *3 (N.D. Ill. Mar. 19, 1997), at least one circuit since the rescission has continued to recognize that the "[t]he deceptive acts or practices forbidden by the [FTCA] include those used in the collection of debts." *FTC v. Check Investors, Inc.*, 502 F.3d 159, 166-67 (3d Cir. 2007) (quoting *Trans World Accounts, Inc. v. FTC*, 594 F.2d 212, 214 (9th Cir. 1979)).

Similarly, Plaintiff alleges that CCS provided services to Farmers, specifically debt collection services. (R. 1, Compl. ¶ 5.) Plaintiff further alleges that in providing these services to Farmers, CCS "uses the mails and interstate telephony to collect disputed claims and debts[.]" (*Id.*) *Daley* suggests that Defendants' actions, like those of Datacom, constitute the sale or distribution of services that directly or indirectly affect residents of Illinois, and therefore Defendants' actions constitute trade or commerce as liberally construed under the ICFA. A subsequent case, *Norton v. City of Chicago*, 642 N.E.2d 839 (Ill. App. Ct. 1st Dist. 1994), casts doubt on whether Plaintiff may bring an action against Defendants for their debt collection practices, however, based on Defendants' second argument that Plaintiff is not a consumer under the ICFA.

### 2. Whether Plaintiff must be a consumer or satisfy the consumer nexus test to pursue her ICFA claim

In *Norton*, a case arising from the litigation in *Daley*, plaintiffs brought suit against Datacom, the City of Chicago, and Cook County, alleging, *inter alia*, violations of the ICFA. 642 N.E.2d at 840. The Illinois appellate court, relying on an earlier Illinois Supreme Court case, *Steinberg v. Chicago Medical School*, 371 N.E.2d 634, 638 (Ill. 1977), held that plaintiffs lacked standing to bring their ICFA action because unlike the plaintiff in *Daley*, the *Norton* plaintiffs were "a group of private citizens who allegedly committed parking violations" and were not consumers. 642 N.E.2d at 841. The *Norton* court distinguished *Daley* on the basis that the plaintiff in *Daley* was the State's Attorney, and accordingly, the State's Attorney status as a consumer was irrelevant. *Norton* suggests, and Defendants argue, that only consumers may bring actions pursuant to the ICFA. (R. 23, CCS's Mem. at 8; R. 26, Farmers' Mem. at 6.)

Under the ICFA, a consumer is "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 Ill. Comp. Stat. 505/1(e). Here, Plaintiff has not alleged that she purchased or contracted for the purchase of anything from Defendants. Accordingly, it is clear that she is not a consumer under section 505/1(e) of the ICFA. Section 10(a) of the ICFA, however, provides that "*[a]ny person* who suffers actual damage as a result of a violation of [the ICFA] committed by any other person may bring an action against such person." 815 Ill. Comp. Stat. 505/10a(a) (emphasis added). By its terms, therefore, the ICFA does not appear to limit the private right of action to "consumers." Nonetheless, Defendants assert that Illinois courts have consistently dismissed ICFA claims brought by non-consumers. (R. 37, Farmers' Reply at 7.)

Contrary to Defendants' assertions, Illinois courts are split on this issue. *See Bank One Milwaukee v. Sanchez*, 783 N.E.2d 217, 220 (Ill. App. Ct. 2d Dist. 2003). In *Bank One Milwaukee*, an Illinois appellate court recognized that there is "a line of cases denying standing to plaintiffs where it was determined that they were not consumers." 783 N.E.2d at 220 (citing *Norton*, 642 N.E.2d at 841; *McCarter v. State Farm Mutual Auto. Ins. Co.*, 473 N.E.2d 1015, 1018 (Ill. App. Ct. 3d Dist. 1985); *Steinberg*, 371 N.E. 2d at 638). The court noted, "however, that another line of cases exists that allows a plaintiff to maintain a cause of action under the [ICFA] despite the fact that the plaintiff is not a consumer as defined by the Act." *Id.* (citing *Sullivan's Wholesale Drug Co. v. Faryl's Pharmacy, Inc.*, 573 N.E.2d 1370, 1376 (Ill. App. Ct. 5th Dist. 1991); *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 546 N.E.2d 33, 40-41 (Ill. App. Ct. 2d Dist. 1989)). Indeed, courts in this District have also noted the split in authority and have rejected arguments that ICFA actions are limited to consumers. *Wiegel v.*

*Stork Craft Mfg., Inc.*, 780 F. Supp. 2d 691, 693-94 (N.D. Ill. 2011) ("[T]here is nothing in the [ICFA] that suggests that it applies only to 'consumers[.]'"); *P.I.A. Michigan City, Inc. v. Nat'l Porges Radiator Corp.*, 789 F. Supp. 1421, 1427 (N.D. Ill. 1992) (denying defendant's motion to dismiss plaintiff's ICFA claims on the basis that plaintiff was not a consumer and therefore lacked standing and noting that although *Steinberg* "does not expressly limit consumer fraud claims to being brought by consumers, *Steinberg* has subsequently been cited for that proposition" by some Illinois cases, none of which were cases from the Illinois Supreme Court). The Seventh Circuit has also noted that section 10(a) of the ICFA "does not protect just consumers, but any person." *Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 579 (7th Cir. 2004) (noting that the courts have "glossed this provision to require that the fraud be of sufficient magnitude to be likely to affect the market generally, . . . and thus be likely to harm consumers in the colloquial sense of the ultimate buyers of the finished product") (citing *Bank One Milwaukee*, 783 N.E.2d at 221; *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 868 (7th Cir. 1999)).

Considering the split of authority, the Illinois appellate court in *Bank One Milwaukee* held that the "consumer nexus test" test articulated in *Downers Grove Volkswagen, Inc.*, which allows a business to maintain a cause of action under the ICFA even though the business is not a consumer of the defendant's goods, should apply equally to nonbusiness plaintiffs. 783 N.E.2d at 221. The court reasoned that "[a] contrary holding, that businesses have standing to vindicate such concerns while natural persons do not, would be anomalous . . . and [there is] no basis in the [ICFA] itself or elsewhere for drawing such a distinction." *Id.* Under the consumer nexus test, "if a natural person . . . alleges 'conduct [that] involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns' that person has standing to sue

under the [ICFA]." *Id.*; *see also CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 1001 (N.D. Ill. 2011) (noting that consumer nexus test requires plaintiff to plead that the conduct complained of "'involves trade practices directed to the market generally or otherwise implicates consumer protection concerns.'") (quoting *Vulcan Gold, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 777 (N.D. Ill. 2008)). Thus, as Defendants argue, the consumer nexus test applies to determine whether a non-consumer Plaintiff has standing to pursue an ICFA claim.[3]

The Court therefore turns to whether Plaintiff, a non-consumer, has met the consumer nexus test. To establish an implication of consumer concerns, a plaintiff must plead the following: "(1) that [its] actions were akin to a consumer's actions to establish a link between [it] and consumers; (2) how defendant's representations . . . concerned consumers other than [plaintiff]; (3) how defendant's particular [action] involved consumer protection concerns; and (4) how the requested relief would serve the interests of consumers." *Global total Office Ltd. P'ship*, 2011 WL 3205487, at *2 (quoting *Brody v. Finch Univ. of Health Scis./Chi. Med. Sch.*, 698 N.E.2d 257, 269 (Ill. App. Ct. 2d Dist. 1998)). Here, Plaintiff fails to set forth any factual allegations plausibly supporting any consumer concerns to satisfy the consumer nexus test. For instance, Plaintiff fails to allege how Defendants' actions or representations concerned consumers other than Plaintiff or how their actions involved consumer protection concerns. *See Harris v. JAT Trucking of Illinois, Inc.*, No. 07-2210, 2009 WL 2222740, at *9 (C.D. Ill. July 24,

---

[3] Plaintiff relies heavily on a Washington Supreme Court case, *Panag v. Farmers Ins. Co. of Washington*, 204 P.3d 885, 895-96 (Wash. 2009), to argue that the Washington Supreme Court previously considered Farmers' "very same subrogation collections practices" to fall within the purview of Washington's Consumer Fraud Act. (R. 36, Pl.'s Resp. at 19.) Plaintiff further argues that this Court should follow the Washington Supreme Court in denouncing a consumer nexus requirement. (*Id.*) Because Illinois courts have interpreted the ICFA quite differently, the Court declines to consider *Panag*.

2009) (plaintiff failed to meet consumer nexus test where he did not allege that defendants' deceptive practices were "directed to the market generally.") Additionally, Plaintiff fails to allege that the letters and written notices she received concerned anyone other than her or that Defendants made misrepresentations to the general public. Accordingly, Plaintiff has not set forth sufficient allegations to demonstrate that she has standing to pursue her ICFA claims and the Court dismisses her ICFA claims on this basis.

### C. Whether Plaintiff sufficiently alleged that she suffered actual damages

Even if Plaintiff had sufficiently set forth factual allegations satisfying the consumer nexus test, the Court finds that Plaintiff's ICFA claims would still fail because she has failed to allege that she was damaged. To bring an action pursuant to the ICFA, a plaintiff must allege "actual damages" and the "actual damages must arise from 'purely economic injuries.'" *Cooney v. Chi. Pub. Schs.*, 943 N.E.2d 23, 31(Ill. App. Ct. 1st Dist. 2010) (quoting *Morris v. Harvey Cycle & Camper, Inc.*, 911 N.E.2d 1049, 1053 (Ill. App. Ct. 1st Dist. 2009), and affirming circuit court's dismissal of plaintiff's claims where plaintiff alleged that the harm suffered was an increased risk of harm). "Actual damages must be calculable and 'measured by the plaintiff[']s loss.'" *Morris*, 911 N.E.2d at 1053; *see also Price v. Philip Morris, Inc.*, 848 N.E.2d 1, 55(Ill. 2005) (Karmeier, J. concurring) (noting that a plaintiff must allege that she was harmed "in a concrete, ascertainable way[,]" meaning that the defendant's deception made plaintiff tangibly worse off). Additionally, emotional damages do not constitute actual damages under the ICFA. *Morris*, 911 N.E.2d at 1053 (affirming trial court's dismissal of plaintiff's claim for relief under the ICFA where plaintiff "alleged only emotional damages").

Plaintiff argues that "[u]nder *Iqbal*, [she] need only make an allegation of damages that is

factual . . . and the allegation must not be 'implausible' under the circumstances." (R. 36, Pl.'s Resp. at 23.) In her complaint, Plaintiff alleges only that she "seeks to recover statutorily set damages" from Defendants (R. 1, Compl. ¶ 1), she "is entitled to recover actual and punitive damages" (*Id.* ¶¶ 14, 56, 62), and she was "damaged as a direct and proximate result" of Defendants' alleged violations of the ICFA. (*Id.* ¶¶ 55, 61.) Contrary to Plaintiff's argument, these allegations are mere legal conclusions. Such allegations fail to provide Defendants with any notice about the amount and extent of harm Plaintiff has allegedly suffered or how exactly she was damaged or injured. Such allegations are not factual in nature and they cannot save Plaintiff's complaint.

Plaintiff also argues that she has alleged that she suffered damages as a result of Defendants' "deceptive letters" and while she may not have alleged that she acted on the letters, the case law is well-established that "actual damages may include emotional distress[.]" (R. 36, Pl.'s Resp. at 23-24) (citing *Hill v. Sisters of St. Francis Health Servs., Inc.*, No. 06-1488, 2006 WL 3783415, at *5 (N.D. Ill. Dec. 20, 2006) and *Greisz v. Household Bank (Ill.)*, 8 F. Supp. 2d 1031, 1043 (N.D. Ill. 1998).) This argument fails for two reasons. First, nowhere in her complaint does Plaintiff allege she suffered emotional damages. Second, even if she had alleged such damages, it is now well-established that where a plaintiff only alleges that she suffered emotional damages in an ICFA claim, such allegations are not sufficient to survive a motion to dismiss. As articulated in *Morris*, to state a claim under the ICFA a plaintiff must allege that she suffered specific, actual damages and an allegation of only emotional damages precludes a claim under the ICFA. 911 N.E.2d at 1053. The cases Plaintiff relies upon in support of her argument are cases interpreting the ICFA that were decided prior to, and without the benefit of, *Morris*.

21

Accordingly, the Court finds that Plaintiff has failed to state a plausible claim for relief under the ICFA.

### D.    Whether the letters and notices Defendants sent Plaintiff were deceptive

Finally, CCS and Farmers both argue that the letters they sent were not deceptive. (R. 23, CCS's Mem. at 10-11; R. 37, Farmers' Reply at 10-11.) The Illinois Supreme Court has cautioned, however, that whether a defendant's notices were deceptive and violated the ICFA "is a factual issue which must be decided by the trier of fact[.]" *Daley*, 585 N.E.2d at 66. As a matter of law and for purposes of deciding a motion to dismiss, the Court cannot say that the notices were or were not deceptive in violation of the ICFA. *See id.* Accordingly, the Court declines to dismiss Plaintiff's complaint on this basis.

### CONCLUSION

For the foregoing reasons, CCS's motion to dismiss (R. 21) is DENIED as to Count I and GRANTED as to Counts II and III. Farmers' motion to dismiss (R. 25) is GRANTED. Plaintiff is given leave to file an amended complaint that conforms to this opinion within 30 days. The parties shall appear for a status hearing on April 26, 2012 at 9:45 A.M. In the meantime, the parties are requested to exhaust all remaining settlement possibilities in light of this opinion.

Entered: _____

**Judge Ruben Castillo**
**United States District Court**

**Date:** March 20, 2012

22