IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MELISSA THRASHER-LYON, <br> on behalf of herself and a class <br> of others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CCS COMMERCIAL LLC d/b/a/ <br> CREDIT COLLECTION SERVICES <br> COMMERCIAL, <br><br> Defendant. | Case No. 11-cv-04473 <br><br> Judge Ruben Castillo <br><br><br><br> JURY TRIAL DEMANDED |

## PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF CLASS DATABASE

Plaintiff, on behalf of herself and a class of others similarly situated, by and through her attorneys, Loevy & Loevy, and having satisfied the requirements of Rule 37.2, hereby respectfully moves this Court for an order compelling Defendant CCS Commercial LLC ("Defendant" or "CCS") to immediately produce certain pertinent information in its database concerning telephone calls to putative class members, stating in support as follows:

1. After numerous emails and telephonic meet and confers to work out the details of Defendant's production of pertinent class data from the database in which Defendant stores such information, Defendant has backed out of the parties' general agreement and now seeks to delay indefinitely the production of this highly relevant information.

### I. Background Facts

2. In this suit, Plaintiff alleges that she, and a class of others similarly situated, received calls related to subrogation claims from CCS on their cellular telephones through use an automatic telephone dialing system and/or using an artificial or prerecorded voice without prior

express consent, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

3. At the parties' April 26 status hearing, the Court gave Plaintiff 45 days – to June 11, 2012 – to conduct class discovery and file an amended motion for class certification with supporting memorandum. (Dkt. No. 52.) The Court granted an extension of that deadline to June 28. (Dkt. No. 63.)

4. Plaintiff issued document requests and interrogatories on April 26, 2012, the same day as the parties' status hearing, seeking pertinent information from Defendant's database concerning calls to putative class members during the class period. (*See* Ex. A at 3, Defendant's Response to Document Request Nos. 5 and 6.). As discussed below, this data is necessary in light of Defendant's claim that the class members consented to be called on their cellular telephones using automatic dialing technology and/or using an artificial or prerecorded voice. (*Id.*) In addition, Plaintiff anticipates that the database will be important to meaningful settlement discussions, as it will allow Plaintiff to assess the adequacy of any offers in light of the attributes of the current litigation class, and may allow Plaintiff to tailor a narrower settlement class.

5. In its responses to Plaintiff's requests, served on May 24, 2012, Defendant objected to the production of the full amount of the classwide data on the basis that Plaintiff's requests were, *inter alia*, overbroad and unduly burdensome. (*See* Ex. A, Defendant's Responses to Plaintiff's Document Requests Nos. 5 and 6.) However, Defendant did not object as to relevance – nor could it – and agreed to produce a sample of data at its premises. *Id.*

2

6. Plaintiff subsequently conferred with Defendant repeatedly in writing and by telephone concerning the production of classwide data.[1] In an effort to resolve the issue promptly and without the need for Court intervention, Plaintiff agreed to the vast majority of Defendant's conditions. Specifically, Plaintiff agreed to the sample of data Defendant proposed (one year of accounts from Farmers Insurance, which is one of Defendant's subrogation clients), and agreed to come to Defendant's premises to view the data based on purported technical issues in providing the data to Plaintiff in an electronic format. (*See, e.g.* Ex. B.) The parties also discussed dates during the week of June 4-8 – in advance of the June 11 deadline for Plaintiff's class certification motion – for Plaintiff to view the data. (*Id.*)

7. As of June 1, the only remaining issue to be resolved with regard to the database production was Plaintiff's request for two reasonable caveats: 1) that Defendant make a representation that the data provided was a representative sample for the entire class, that is, that Defendant would not object to Plaintiff's reasonable extrapolations based on the sample data provided; and 2) that Defendant clarify the protocol for Plaintiff to view the records at its facility, *e.g.*, ensuring that Plaintiff could print relevant information. (*See, e.g.* Ex. B).

8. On June 1, Defendant also informed Plaintiff that due to purported technical issues on its end, it could not make the data available to Plaintiff until late this week, at the earliest. (*See also* Ex. B, June 4 Email from James Vlahakis.)

9. The parties' June 4 correspondence makes clear that the parties had an agreement and Plaintiff expected to have access to the database information shortly. Plaintiff's email stated as follows:

1) In terms of viewing the data, we are fine with moving it to the following week,

---

[1] The parties' relevant 37.2 correspondence is attached herein as Group Exhibit B.

but no later than that as we still need time to review and analyze the information in advance if the settlement conference. On that matter, I believe we have an agreement on the use of one year of Farmers data, provided CCS will represent that it will not make objections to our use of that data to extrapolate across all subrogation clients for the complete class period. I believe we are waiting to hear back from you on the specifics of the representation from CCS.

(*See* Ex. B, June 4 Email from Anand Swaminathan.) Defendant responded as follows: "1. Yes, I would anticipate it being ready sometime next week. I'm waiting to hear back on the proposed representation." (*See* Ex. B, June 4 Email from James Vlahakis.)

10. In light of the parties' general agreement and Plaintiff's expectation that Plaintiff would be granted access to the database production the following week, as well as the upcoming settlement conference scheduled for June 20, on June 1 Plaintiff filed a motion seeking an extension of the class discovery deadline to allow enough time for Plaintiff to obtain and analyze the database production in advance of the settlement conference and the deadline for class certification. (Dkt. No. 60.) The Court granted that Motion and extended the deadline for class certification to June 28. (Dkt. No. 63.)

11. Since that time, a week has passed without any progress, despite Plaintiff's repeated follow-ups. Defendant has not given Plaintiff access to the classwide data this week, and did not get back to Plaintiff about the two caveats to using a representative sample until today. (*See* Ex. B, June 8 Email from James Vlahakis.)

12. Today, Defendant backed out of its agreement, asserting that Plaintiff is not entitled to the data at all; that no information will be provided other than account notes;[2] and that the information will not be made available to Plaintiff at all without the Court's entry of a

---

[2] Account notes are the portion of the record for each call that purportedly contains information about the call itself, and is relevant because it is the only field in Defendant's database that may contain information about forms of prior express consent, which Defendant alleges as an affirmative defense. Notably, Defendant is refusing to produce names, telephone numbers or other contact information.

4

protective order containing numerous restrictions on Plaintiff's use of the data. (*See* Ex. B, June 8 Email from Defendant's Counsel.)

13. Plaintiff made further efforts to resolve this dispute without court intervention, including holding another telephonic meet and confer and exchanging multiple emails.[3] Accordingly, Plaintiff has exhausted efforts to resolve this matter in accordance with its Rule 37.2 obligations and the Court's individual practices concerning motions to compel.

*Defendant's Refusal to Database Production*

14. Defendant's refusal to produce the database information – even with Plaintiff's repeated compromises – is not warranted.

15. First, Defendant's newest demand that the Court enter a protective order before it provide any data is a red herring. As an initial matter, Plaintiff had provided Defendant with a draft protective order on May 25 (*see* Ex. C, Plaintiff's Proposed Protective Order); and Defendant did not provide a revised draft until today. In addition, the parties have also been operating under a written agreement to keep all information attorneys-eyes only pending entry of a protective order, an agreement that certainly suffices to address Defendant's concerns. (*See* Ex. D, Agreement read on record at 30(b)(6) deposition of Defendant.) Plaintiff even went one step further: she reiterated that she would keep all information attorneys-eyes only and would not contact anyone until the protective order issue was resolved. (*See* Ex. B, June 7 Email from

---

[3] Defendant has made last-minute overtures to try to resolve these issues after 5pm on Friday, but no agreement has been reached. However, we informed Defendant earlier in the week that we would need to file our motion today if we did not have an agreement, and Defendant did not get back to us until today, with an unacceptable proposal. We will continue to work with Defendant to resolve this matter, and will inform the Court if we are able to reach an agreement.

Anand Swaminathan.) Accordingly, there is no basis to delay production until after entry of a protective order.[4]

16. Second, Defendant's various arguments that it should not have to produce this information at all are groundless. (*See* Ex. B, June 7 and 8 Emails from James Vlahakis.) As discussed above, Defendant never objected on the basis of relevance. It now argues that the particular database information Plaintiff seeks is unlikely to contain information concerning consent, since that information will be in the possession of its clients.[5] That is not for Defendant to decide; Plaintiff is not expected to simply take Defendant's word for it. In addition, Defendant asserts that it should not have to provide any classwide information (a complete reversal from the parties' prior discussions about making data available to Plaintiff), because Defendant believes arguments as to Plaintiff's "standing" should be addressed first. Contrary to Defendant's position, class discovery is ongoing, and the deadline for Plaintiff to move for class certification is later this month.

17. In sum, Plaintiff has made every effort to compromise on this matter: agreeing to the use of a representative sample rather than data for the entire class; agreeing to go to

---

[4] In addition, the protective order Defendant now demands is unreasonable and inappropriate: it states that Plaintiff counsel "cannot use any contact or identifying information cannot be used to any contact putative class members until and unless a class is certified or they obtain permission of the court," and further requires that Plaintiff "expressly agree that under no circumstances will certification or court permission allow them to contact any class members identified in any account notes to solicit them or substitute them as a class representative(s) in this suit or in any other pending or future suit." (*See* Ex. B, June 8 Email from James Vlahakis.) It further includes a $10,000 liquidated damages penalty for any violation of the protective order. (*See* Ex. E, Defendant's Proposed Protective Order.) As an initial matter, Defendant is refusing to provide names and telephone numbers, so it is unclear how Plaintiff can contact anyone. In any event, Plaintiff needs to be able to contact individuals in order to identify whether they were called on a cellular telephone (Defendant has asserted that this information cannot be easily ascertained from its database) and to explore any purported consent.

[5] Defendant has stated that it assumes prior express consent for all telephone numbers obtained from its clients (insurance companies such as Illinois Farmers Insurance). In particular, Defendant is asserting prior express consent as an affirmative defense, but arguing that the evidence of prior express consent is not in its possession and it would be burdensome to obtain such information from its clients. Plaintiff intends to address, at the appropriate time, whether this position requires waiver of the affirmative defense.

6

Defendant's premises based on purported technical limitations; and agreeing to significant protections concerning the use of the data. Defendant has responded with only further demands and delays.

18.     The information Plaintiff seeks is highly relevant to the prior express consent affirmative defense Defendant has asserted, and will facilitate meaningful settlement discussions.

WHEREFORE, Plaintiff respectfully moves to compel Defendant to promptly provide a representative sample of information from its database for one year from Farmers Insurance, in accordance with the parties' general agreement during 37.2 correspondence, in response to Plaintiff's Document Request Nos. 5 and 6.

Respectfully submitted,

/s/ Anand Swaminathan

Arthur Loevy
Michael Kanovitz
Jon Loevy
Anand Swaminathan
LOEVY & LOEVY
312 N. May St., Ste. 100
Chicago, IL 60607
(312) 243-5900

## CERTIFICATE OF SERVICE

I, Anand Swaminathan, an attorney, certify that on June 8, 2012, I caused the foregoing Motion to Compel to be served on all counsel of record via CM/ECF electronic filing.

/s/ Anand Swaminathan