IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MELISSA THRASHER-LYON, on behalf of herself and a class similarly situated, | )<br>)<br>) |
| Plaintiff, | ) Case No.: 11-C-4473 |
| vs. | )<br>) Judge Ruben Castillo<br>) Magistrate Judge Michael T. Mason |
| CCS COMMERCIAL LLC d/b/a CREDIT COLLECTION SERVICES COMMERCIAL, | )<br>)<br>) |
| Defendants. | )<br>) |

**PLAINTIFF'S CONSOLIDATED MEMORANDUM IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Melissa Thrasher-Lyon ("Plaintiff") respectfully submits this memorandum as her response to the motion for summary judgment filed by Defendant CCS Commercial LLC d/b/a Credit Collection Services Commercial ("Defendant" or "CCS") and in support of her own cross motion for summary judgment.

INTRODUCTION

Given the undisputed facts in the record, the controversy in this case is now narrowed to a pure question of statutory construction that is ripe for the Court to decide; the meaning of three words in the Telephone Consumer Protection Act ("TCPA") that form the basis of Defendant's affirmative defense: "prior express consent." 47 U.S.C. § 227(b)(1)(A)(iii). At issue is whether the term "prior express consent" means a generic authorization from a telephone subscriber to call him or her at a particular number – *a la* "Is this a good number to reach you at?" and "May we call you at this number?" – or whether Congress intended to require a specific authorization to send the subscriber automated and prerecorded voice calls (sometimes termed "robocalls"), which is what

Congress specifically targeted in the TCPA. It is undisputed that CCS had only the former type of authorization, and not the latter, when it robocalled Plaintiff and the putative class members.

The basis for this motion is that a generic authorization to call another cannot constitute "prior express consent" to the automated and prerecorded calls regulated by the TCPA. At the outset, Congress did not regulate communications where one human being picks up the phone and places a call to another. Rather, Congress's express purpose was to regulate a specific type of call that it determined, through particular legislative findings, were a nuisance to telephone subscribers: automated and prerecorded voice calls. TCPA 47 U.S.C. § 227 note; 105 Stat 2394 § 2(10) (Subscribers "consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy"). A generic authorization for a company to place a call is not tied in any way to the particular type of calls Congress was targeting. Rather, it is tied only to the initiator of the call, which Congress expressly found to be irrelevant to the nuisance caused by robocalling.

Moreover, Congress imposed the "prior express consent" requirement precisely because subscribers had no way to screen out automated and prerecorded calls from the live calls that Congress was not concerned about. There was simply no technology available to subscribers to distinguish live calls from the robocalls. *Id.* § 2 (11-12) ("Technologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call . . . is the only effective means of protecting telephone consumers from this nuisance and privacy invasion."). Saying yes to a generic request for authorization to receive a call is no different than picking up the phone without being able to know in advance if the call is live or robodialed. In neither instance has the subscriber manifested consent to forgo the "protections" from the nuisance of robocalls that Congress provided in the TCPA.

Although Plaintiff believes that Defendant's take on what the TCPA requires of them in wrong and should be rejected, she does agree that the case has now been brought to a head factually. As a result, summary judgment is appropriate, and the Court should either dismiss her claims or enter judgment for liability against the Defendant based on how the Court reads "prior express consent." Damages, the calculation of which is an administrative matter using a database Defendant has yet to produce, can be assessed through an ensuing motion.

FACTS

Plaintiff incorporates the facts set forth in her Response to Defendant's Statement of Uncontested Facts ("Response to Def. SUF"), and her Statement of Additional Uncontested Facts in Response to Defendant's Statement of Uncontested Facts and in Support of her Cross Motion for Summary Judgment ("Pltf. SUF"), and summarizes them as follows:

Defendant used predictive dialers, a type of automatic telephone dialing system,[1] and artificial or prerecorded voices to call Plaintiff. (Pltf. SUF ¶¶ 1-2.) CCS obtained Plaintiff's cellular telephone number from CCS's client, Illinois Farmers Insurance Company ("Illinois Farmers"), and took no steps to determine whether the telephone number was for a cellular telephone, or whether Plaintiff had provided prior express consent. (Pltf. SUF ¶¶ 3-5.) In particular, neither Defendant nor Illinois Farmers asked for or obtained Plaintiff's specific authorization to make robocalls to her cellular telephone. (Pltf. SUF ¶¶ 5-7.) Instead, Plaintiff provided, at most, only a generic authorization to receive calls. (Response to Def. SUF ¶¶ 8, 10, 15, 17, 18.)

Defendant's followed the same practices and procedures with regard to Plaintiff and the putative class members. (Pltf. SUF ¶ 8.) Specifically, CCS assumes it has a generic authorization to call any telephone number that it receives from its clients. (Pltf. SUF ¶¶ 11-12.) Defendant never asks anyone for specific authorization to make robocalls to their cellular telephones, nor do its

---

[1] *See In re: Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559, 564 ¶ 7, n. 23; ¶¶ 12-13; (F.C.C. 2008).

3

clients. (Pltf. SUF ¶¶ 10, 13.) Indeed, Defendant cannot identify, is not aware of, and has no evidence that it or its clients ever obtained specific authorization from anyone in the putative class to make robocalls to their cellular telephones. (Pltf. SUF ¶¶ 13-15.)

## ARGUMENT

I. **THE TCPA REQUIRES THAT A CALLER OBTAIN EXPRESS CONSENT TO THE USE OF AUTOMATED AND PRERECORDED CALLS, AND A MERE AGREEMENT TO BE CONTACTED BY THE CALLER DOES NOT SUFFICE**

By its express terms, the TCPA prohibits Defendant and others from making:

> any call (**other than a call** made for emergency purposes or **made with the prior express consent of the called party**) using any automatic telephone dialing system or an artificial or prerecorded voice . . . (iii) to any telephone number assigned to a . . . cellular telephone service."

*See* 47 U.S.C. § 227(b)(1)(A)(iii). As this Court observed when ruling on the motions to dismiss, the provision sets up an affirmative defense on which CCS bears the burden. *See Thrasher-Lyon v. Illinois Farmers Ins. Co.*, No. 11 C 04473, 2012 WL 983774, at *4 (Mar. 20, 2012).

Reading this portion of the statutory language, in isolation, yields one of two possible conclusions regarding the meaning of "express consent": (1) Plaintiff's interpretation, that "express consent" means a consent specifically to receiving automated or prerecorded calls; or (2) Defendant's interpretation, that "express consent" means only an agreement or invitation to be called by the caller without any express reference to receiving automated or prerecorded voice calls. Because the statute is arguably ambiguous on this question, it is necessary to look to the intent of the TCPA as expressed elsewhere in the statute itself and appropriate legislative history. *See, e.g., Dolan v. Postal Service*, 546 U.S. 481, 486 (2006) ("Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis."); *see also Scalise v. Thornburgh*, 891 F.2d 640, 644 n.5 (7th Cir. 1989).

4

When viewed in the larger context of the whole statute, including the legislative findings, any ambiguity vanishes.

A. <u>Congress was requiring consent to a type of call it deemed to be a nuisance</u>

Congress's purpose for legislating in the TCPA was to protect telephone subscribers from a specific *type* of telephone call that subscribers considered to be annoying and invasive: robocalls. *See In re: Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559, 564 ¶ 7 (F.C.C. 2008) ("2008 FCC Order")(explaining that "Congress found that automated or prerecorded telephone calls were a greater nuisance and invasion of privacy than live solicitation calls, and that such calls can be costly and inconvenient").

Congress did not regulate who may place a call to whom (and under the First Amendment likely could not), and there is no legal requirement for a caller to obtain consent to call a particular recipient as a general matter. Thus, it would be bizarre to conclude that Congress intended for a caller to satisfy the "prior express consent" requirement by merely obtaining a generic consent to call a given recipient without any mention of the type of call regulated by the TCPA. Yet, that is Defendant's position. According to CCS, once a person gives the okay for CCS or its predecessor to call him/her at a given number, CCS has satisfied the consent requirement and can now begin harassing them with robocalls.

That cannot be correct. The TCPA is solely concerned with the annoyance of robocalls, and not at all concerned with who may call whom. Any interpretation that a generic consent to be called by a particular party is the "prior express consent" Congress intended thus must be rejected.

Moreover, CCS's argument that a consent as to *who may call* doubles as a consent for the *type of call* conflicts with express Congressional findings. In particular, Congress found that telephone subscribers consider automated calls to be a nuisance regardless of the identity of the caller. 47 U.S.C. § 227 note; 105 Stat 2394 § 2(10) (finding that subscribers consider autodialed calls annoying "regardless of the content **or the initiator** of the message") (emphasis added).

5

B.  <u>Defendant's proffered interpretation also undermines the TCPA's remedial purpose to allow telephone subscribers to choose to avoid robocalls</u>

Defendant's formulation of the consent requirement is that Congress supposedly intended "prior express consent" to include a "consent" that gives no indication about the called party's wishes regarding robocalls. In addition to the reasons discussed above, CCS's watered down interpretation cannot be right because it would serve only to recapitulate the very problem that caused Congress to ban un-consented robocalls in the first place.

When formulating the TCPA, Congress expressly considered and rejected certain alternatives to the ban on un-consented robocalls. One of these involved the use of technology to help subscribers identify robocalls and decide whether or not to answer the phone. In considering that technology, Congress concluded that the technology was insufficient because it was too burdensome and ineffective for subscribers to easily identify robocalls. And, as a result, Congress determined that the only option for protecting telephone subscribers was to ban robocalls entirely absent "prior express consent":

> Technologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. Banning **such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call** . . . is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

47 U.S.C. § 227 note; 105 Stat 2394 § 2(11-12) (emphasis added).

Defendant's vague consent request (were the Court to hold that it constitutes "prior express consent") deprives subscribers of the ability to make an informed and non-burdensome choice about whether to receive a robocall, and so it is every bit as insufficient as the technological option that Congress rejected. Therefore, to hold that CCS can barrage subscribers with robocalls by the mere expedient of a vague request to call again at the same number to which its (or its predecessor's) employee had placed a voice call, would be to eviscerate what Congress believed to be "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.*

6

Defendant's interpretation argument does not appear to have been widely litigated, which is unsurprising given that it is so clearly contrary to the statutory purpose. Nevertheless, at least one court has rejected it (and awarded summary judgment to the called party as a result) stating:

> Midland's call to Edeh's cellular phone was permissible only if it was made "with [Edeh's] prior express consent." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). **"Express" means "explicit," not, as Midland seems to think, "implicit."** Midland was not permitted to make an automated call to Edeh's cellular phone unless Edeh had previously said to Midland (or at least to Midland's predecessor in interest) something like this: **"I give you permission to use an automatic telephone dialing system to call my cellular phone."** Midland has no evidence that Edeh gave such express consent.

*Edeh v. Midland Credit Management, Inc.*, 748 F. Supp. 2d 1030, 1038 (D. Minn. 2010) (emphasis added).

C. <u>Various other cannons of statutory construction point to the same conclusion</u>

In addition to all of the foregoing, CCS's interpretation of "prior express consent" would violate the cannon that requires courts to "give effect, if possible, to every clause and word of a statute." *Duncan v. Walker,* 533 U.S. 167, 174 (2001) ("[W]ere we to adopt respondent's construction of the statute, we would render the word 'State' insignificant, if not wholly superfluous. It is our duty to give effect, if possible, to every clause and word of a statute.") (citations and internal quotation omitted).

Specifically, the phrase "using any automatic telephone dialing system or an artificial or prerecorded voice," which appears in the same sentence as "prior express consent," would be rendered meaningless if the calling party did not need consent specific to that type of call. Again, Section 227(b) places no restrictions on calls made to a cellular telephone without using automatic dialing technology and/or using an artificial or prerecorded voice. *See Soppet*, 2012 WL 1650485, at *5 (Section "227(b)(1) is limited to automated calls.").

Defendant's interpretation also ignores the word "express," which Congress included in describing the nature of the required consent. Congress' decision to use the phrase "prior *express*

7

consent" further demonstrates that it intended the called party's consent to explicitly authorize robocalls. *See Edeh*, 748 F. Supp. 2d at 1038.

Defendant also violates the canon that "'[a] word is known by the company it keeps' – a rule that 'is wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress.'" *See Dolan*, 546 US.S. at 486-87 (quoting *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961); *see also United States v. Costello*, 666 F.3d 1040, 1046 (7th Cir. 2012) (same). Here, the phrase "prior express consent" appears in the same sentence as the ban on robocalls, yet Defendant claims it includes a consent that has nothing to do with robocalls. That attempt to parse the phrase from the sentence in which it appears should be rejected. Rather, interpreting "prior express consent" along with the neighboring language about artificial dialers and prerecorded voices shows that Defendant has misinterpreted Congress's intended meaning of the phrase "prior express consent." *See Dolan*, 546 U.S. at 486-87.

\* \* \*

To summarize, everything about the wording of the statute and the legislative findings that Congress made when passing it points to one conclusion. There is no legitimate basis to believe that Congress intended for CCS to avoid the statutory ban on robocalls by simply obtaining a vague consent to call someone at a certain number. That tactic cannot yield prior *express* consent because it does not provide any means for the alleged consenter to protect herself from the *type of calls* Congress decided to prohibit. Rather, Defendant's argument would plainly frustrate Congress's purpose in passing the statute and must therefore be rejected.

## II. DEFENDANT RELIES ON AN FCC-MADE EXEMPTION THAT, BY ITS TERMS, DOES NOT APPLY TO DEFENDANT

Defendant rests its whole argument on an exemption to the robocalling prohibitions created in the 2008 FCC Order. The Order creates a narrow exception for creditors (and collection agencies acting for them) collecting actual debts under a specific set of circumstances. In particular, the FCC

8

stated that if a "consumer" gives a "creditor" his cell phone number "during the transaction that resulted in the debt owed" then "prior express consent is deemed to be granted." *Id.* ¶ 10 ("We emphasize that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owned."); *see also id.* ¶¶ 9-10 (giving as examples telephone numbers provided to a creditor "as part of a credit application," "sales slips," and "purchase agreements").

CCS is seeking to expand the 2008 FCC order to the subrogation situation, where there is no "debt" as of yet, there is no "consumer," no "creditor" and no "transaction" creating a debtor/creditor relationship. This attempt plainly violates the FCC's express caution about the limited scope of the 2008 Order, which appears in the Order itself. *Id.* ¶ 10 ("emphasiz[ing] that prior express consent is deemed to be granted only" in the credit transaction context).[2] First, a subrogation tort claim is not a debt. It is a cause of action that cannot result in a "debt" unless and until there is a judgment against the alleged tortfeasor. Nor is Plaintiff a "consumer." She is a bicyclist accused of negligence. Further, she did not engage in any "transaction that resulted in a debt" as by borrowing money or purchasing something on credit. Based on the FCC's express caveats, CCS was on notice that the 2008 Order does not apply to her.

While the express language of the exception conclusively defeats Defendant's attempt to apply it to the circumstances of this case, it is also true that there is no doctrinal basis to extend the ruling here. The FCC's 2008 Order is predicated on the circumstance where a consumer provides the telephone number as a condition of getting credit. Thus, the consumer initiated a transaction

---

[2] CCS typically collects actual debts and so most of its work is covered by the 2008 FCC Order. In branching into subrogation work (no different than what attorneys do to try to obtain pre-litigation settlements after car accidents) it failed to consider that it would no longer be acting as a debt collector shielded by the 2008 Order.

with someone whom they knew would want to have a way to contact them before being willing to extend credit. *Id.* at ¶ 10. In fact, the petition to which the 2008 Order is addressed sought "clarification that the prohibition against autodialed and prerecorded calls to wireless telephone numbers . . . does not apply to creditors and collectors **when calling wireless telephone numbers to recover goods and services received by consumers**." *Id.* ¶ 8 (emphasis added).

Here, Plaintiff and the putative class members are not giving their cellular telephone numbers to get goods or services from the caller.[3] Rather, CCS is calling them to try to induce them to enter into a transaction for the first time, a settlement. There is no debt when CCS calls and the class members did not induce CCS (or its predecessor) to give them money. Thus, CCS is in no different position *vis a vis* the 2008 Order than a telemarketer hoping to induce the called party to buy something. In both situations, there is no preexisting legal relationship between CCS (or its predecessor) and the called party, and no consideration to the called party for giving the number.

All of the cases Defendant cites fit only within the narrow consumer credit exception sought in the petition to which the 2008 Order was addressed, that is, the exception for telephone numbers provided when obtaining consumer credit. For that reason, they are of no benefit to CCS in a case, like this one, which does not fit that mold. In *Cunningham v. Credit Mgmt, L.P.*, 3:09-cv-1497-G, 2010 WL 3791104 (N.D. Tex. Aug. 30, 2010), the plaintiff incurred debt after providing his cellular telephone number to Time Warner in connection with his voluntarily seeking internet services from Time Warner. 2010 WL 3791104, at *5. Likewise, in *Mitchem v. Illinois Collection Serv., Inc.*, 09-cv-7274, 2012 WL 170968 (N.D. Ill. Jan. 20, 2012), the plaintiff incurred medical debt after providing

---

[3] As the Court noted in its Opinion concerning Defendant's Motion to Dismiss, Defendant previously argued that, for purposes of the Illinois Consumer Fraud Act, its actions "are not 'trade or commerce' because they did not sell, offer to sell, or advertise anything to Plaintiff nor did Plaintiff purchase anything from them." (Dkt. No. 46, at 14.) Defendant now contradicts itself, arguing that it is subject to a narrow exception for debtor-creditor relationships involving credit applications and other requests for service.

his cellular telephone number to a healthcare facility in connection with his voluntarily seeking health services there. 2012 WL 170968, at *1.[4]

Accordingly, Defendant's reliance on the 2008 Order only serves to reinforce the conclusion that they have violated the TCPA by acting outside of the Order's scope. *Id.* ¶ 10 ("We emphasize that prior express consent is deemed to be granted **only** if the wireless number was provided by a the **consumer** to the **creditor**, and that such number was provided during the **transaction** that resulted in the **debt owed**.") (emphasis added).

## CONCLUSION

At base, Congress enacted the TCPA specifically to protect telephone subscribers from annoying robocalls. It excepted calls for which there was express consent because such a consent demonstrates that the subscriber does not consider the calls to be annoying. Here, Defendant never obtains a consent of that type. Rather, it hopes to avoid the statutory requirements by getting a vague consent that gives no indication that the called party approves of robocalls. It cannot twist the statute in that manner. Accordingly, its motion must be denied and Plaintiff's motion must be granted.

---

[4] Defendant also cites at various points to *Greene v. DirectTV*, 10-cv-117, 2010 WL 4628734 (N.D. Ill Nov. 8, 2010). (*See* Def. Mem. at 8-9). Unlike the plaintiff in *Greene*, Ms. Thrasher-Lyon does not argue that the Court should disregard or act contrary to the 2008 FCC Order. As set forth above, that exception does not apply to Plaintiff. In any event, the facts of that case are wholly different from the facts here. In *Greene*, the plaintiff *signed up for* a credit fraud alert service – again, initiating the communications in an effort to obtain a service – and expressly told the service that her cellular telephone number was the number where she wanted to receive fraud alert checks. *Id.* She sued after later receiving an automated fraud alert message. *Id.* The court held that she had consented to be called at the very number because she had expressly told the alert service that she wanted to be called there for fraud alerts. *Id.*

11

**Dated: June 18, 2012**       **Respectfully Submitted,**

  /s  Mike Kanovitz

Arthur Loevy
Jon Loevy
Michael Kanovitz
Anand Swaminathan
Scott Rauscher
LOEVY & LOEVY
312 May Street, Suite 100
Chicago, IL 60607
(312) 243-5900

12

**CERTIFICATE OF SERVICE**

  I, Anand Swaminathan, certify that on June 18, 2012, I caused the foregoing Memorandum to be served on all counsel of record by ECF.

                   /s Anand Swaminathan

13