IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MELISSA THRASHER-LYON, on behalf of herself and a class similarly situated, </br></br>  Plaintiff, </br></br> vs. </br></br> CCS Commercial LLC d/b/a Credit Collection Services Commercial, </br></br>  Defendant. | ) </br> ) </br> ) </br> ) </br> ) Case No.: 11-cv-4473 </br> ) </br> ) Judge John J. Tharp, Jr. </br> ) </br> ) </br> ) |

**DEFENDANT CCS COMMERCIAL LLC'S CONSOLIDATED MEMORANDUM IN RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant CCS Commercial LLC d/b/a Credit Collection Services Commercial ("CCS"), respectfully submits this Consolidated Memorandum in response to plaintiff Melissa Thrasher-Lyon's ("Thrasher") motion for summary judgment (Doc. #71) and Consolidated Memorandum (Doc. #72) ("Consol. Memo.").

## INTRODUCTION

The Telephone Consumer Protection Act of 1991 ("TCPA") prohibits persons from calling cellular phone with an "automatic telephone dialing system or an artificial or prerecorded voice" absent the "prior express consent" of the person called. 47 U.S.C. §227(b)(1).

## SUMMARY OF UNDISPUTED FACTS

The facts are not in dispute. Thrasher was involved in an auto accident while riding her bicycle and admits that she provided her cell number to the driver and thereafter communicated with the driver with her cell phone. Doc #59, CCS's L.R. 56.1 Statement of Undisputed Facts ("CCS's SUF"), ¶¶ 7-9; Doc #69, Pl's L.R. 56.1(b)(3) Response ("Pl's Resp.") at ¶¶ 7-9. In a recorded conversation, Thrasher spoke with an agent of the driver's insurance company who asked Thrasher to confirm the digits of her cell number. Thrasher also informed the agent that her cell phone was her only contact number *and that the agent could call her on at that number.*

CCS's SUF, ¶¶17-18; Pl's Resp. at ¶¶17-18. Thereafter, the driver's insurer asserted subrogation rights against Thrasher for the damages to the driver's car. Amended Complaint, ¶6. Thrasher was called by CCS in an attempt to collect Illinois Farmers' subrogation claim. CCS's SUF, ¶19; Pl's Resp. at ¶19.

## SUMMARY OF ARGUMENT

According to Thrasher, "[she] provided, at most, only a generic authorization to receive calls." Doc #72, Pl's Consol. Memo., at p. 2. Thrasher's argument is without merit. By providing her number to the driver, confirming with the driver's insurer that her cell phone was her only contact number, and admitting that she consented to being called by the driver's insurance company, Thrasher provided "prior express consent" as this term has been interpreted by the Federal Communication Commission ("FCC") and the courts. On at least two occasions, the FCC has ruled that "prior express consent" may exist where a called party generally provides her cell phone number. The FCC's rulings are binding on this Court. *CE Design Ltd. v. Prism Business Media, Inc.*, 606 F.3d 443, 446-50 (7th Cir. 2010). With the exception of one case, every court that has reviewed whether "consent" existed has applied the definition set forth by the TCPA. The sole outlier relied upon by Thrasher, *Edeh v. Midland Credit Mgmt, Inc.*, 748 F. Supp. 2d 1030 (D. Minn. 2010), ignored the fact that it is prohibited from rejecting the FCC's rulings. Accordingly, it cannot be followed. Finally, Thrasher's attempt to avoid the FCC's Orders by arguing that a subrogation claim is not a "debt" is without merit.

## ARGUMENT

### I. THRASHER "CONSENTED" TO THE SUBJECT CALLS

Thrasher essentially concedes that CCS had her consent to call her purported cellular telephone. Doc #72, p. 2 ("Plaintiff provided, at most, only a generic authorization to receive calls"). However, in an effort to avoid summary judgment and create a 600,000 person plus class

action, Thrasher incorrectly argues that Congress intended the term "prior express consent" to mean something like - "I consent to you calling me using any automatic dialing system or an artificial or prerecorded voice." In doing so, she relies on a single district court case from Minnesota which *sua sponte* raised this argument. Thrasher's argument is without merit. The text of the TCPA, the FCC Orders implementing the TCPA, and case law completely refute Thrasher's argument. Accordingly, Plaintiff cannot not graft a clever and overly restrictive definition of "prior express consent" when Congress never included such words in the text of the TCPA and the FCC has never adopted her novel approach.

### A. The Text of the TCPA Does Not Support Thrasher's Version of "Consent"

The TCPA does not define the term "prior express consent." Thrasher claims that Congress intended to require a specific authorization to send the subscriber automated and prerecorded voice calls." Doc #72, p. 1 The TCPA does not require such "specific authorization." Nowhere does the Act state that a person utilizing an predicative dialer must first ask the person it intends to call: "do you consent to me calling you using any automatic dialing system or an artificial or prerecorded voice?" Rather, 47 U.S.C. §227(b)(1) simply provides:

> It shall be unlawful for any person within the United States or any person outside the United States if the recipient is in the United States–
>
> (A)     to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice –
>
> * * *
>
> (iii)     to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio services, or radio common carrier service, or any service, for which the called party is charged for the call; . . .

Thrasher cannot ask this Court to rewrite the TCPA. *Dean v. United States*, 556 U.S. 568, 572 (2009) (citation omitted). A court cannot rewrite a statute to reflect a meaning it deems more desirable. *Ali v. Federal Bureau of Prisons,* 552 U.S. 214, 228 (2008). A court will not

attribute words to Congress that it has not written. *Atlantic Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 129 S.Ct. 2561, 2575 (2009). A court may not, under the guise of interpretation, proceed to either add or eliminate words from a statute. *Water Quality Ass'n Employees' Benefit Corp. v. United States*, 795 F.2d 1303, 1309 (7th Cir. 1986).

Since this Court cannot rewrite the statute as Thrasher is asking this Court to do, this Court must deny her motion for summary judgment and grant CCS's cross-motion.

B.     **The FCC Has Defined "Prior Express Consent"**

Pursuant to 47 U.S.C. §227(b)(2), the FCC has been charged with implementing the TCPA. *See, e.g., Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 642 (7th Cir. 2012). In 1992, the FCC ruled that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, at ¶ 31, 1992 WL 690928, at **11 ("1992 TCPA Order"). As support, the FCC cited the TCPA's legislative history: "the called party has in essence requested the contact by providing the caller with their telephone number for use in normal business communications." 1992 WL 690928, at **11 fn. 57.

In 2008, the FCC reaffirmed its 1992 TCPA Order, ruling that the "provision of a cell phone number to a creditor . . . reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt":

> Because we find that autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the "prior express consent" of the called party, we clarify that such calls are permissible. We conclude that the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt.

4

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, at ¶¶9-10, 2008 WL 65485, at \*\*3 (Jan. 4, 2008) ("2008 Order") (*citing* the 1992 TCPA Order at ¶ 31, 1992 WL 690928, at \*\*11).

These FCC Orders are binding on this court pursuant to the Hobbs Act. *See* 28 U.S.C. §2342(1); 47 U.S.C. §402 and authorities cited in CCS's initial memorandum in support of its motion for summary judgment. Doc. #58, at 8-9. Simply stated, the Hobbs Act precludes this Court from reinterpreting or disregarding the FCC's orders. *CE Design Ltd. v. Prism Business Media, Inc.*, 606 F.3d 443, 446-50 (7th Cir. 2010). Thrasher ignores the fact that the FCC orders are binding and cites to a single outlier decision, *Edeh v. Midland Credit Mgmt, Inc.*, 748 F. Supp. 2d 1030 (D. Minn. 2010). The court in *Edeh* improperly disregarded the FCC's 2008 Order, in violation of the Hobbs Act, and for this reason, *Edeh* is not good law. *See* Section II.

C.  **Under Prevailing Case Law, Thrasher Provided "Consent"**

Thrasher wrongly asserts that CCS'S "interpretation argument does not appear to have been widely litigated." Doc. # 72 at p. 7. Numerous cases cited below have found that consent exists where the called party provided his or her cellular telephone number. The reason Thrasher's novel approach has not be widely litigated is because courts properly recognize that the language of the TCPA, as authoritatively implemented by the FCC, cannot be altered to adopt the type of consent advocated by Thrasher. *See, e.g., Leckler v. Cashcall, Inc*, 2008 WL 500528, \*2-\*3 (N.D. Cal. Nov. 21, 2008) (vacating an earlier ruling on the very issue in dispute here, finding it did not have jurisdiction to change the interpretation of "prior express consent" by the FCC). Thrasher does not cite to *Leckler* as opposing authority in her Cross-Motion.

Relying on the FCC's 2008 and 1992 Orders, courts have routinely found that prior express consent exists where a called party has simply provided his or her number to a creditor. These courts cannot and do not require defendants to demonstrate that the called party expressly

5

stated "you can call me with an autodialer or an artificial voice." For example, the Seventh Circuit recently provided an example of consent:

> Customer incurs a debt and does not pay. Creditor hires Bill Collector to dun Customer for the money. Bill Collector puts a machine on the job and repeatedly calls Cell Number, at which Customer had agreed to receive phone calls by giving his number to Creditor. See *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 23 FCC Rcd. 559 ¶¶ 9, 10 (Jan. 4, 2008) ( *2008 TCPA Order* ).

*Soppet*, 679 F.3d at 638-39. In doing so, the Seventh Circuit did not endorse, much less hint at Thrasher's tortured approach. While the question on appeal before the court in *Soppet* involved the meaning of the term "called party," the Seventh Circuit first discussed the meaning of "prior express consent" and observed that "the two Customers furnished the Cell Numbers to AT&T as a way to contact them." *Id*. at 639. The court found that consent existed to call the debtors at the numbers they had provided: "simply providing Creditor with a number . . . is how Customer consented here." *Id*. at 641. Of course, *Soppet* recognized that the FCC had opined in its 2008 Order that "provision of a cell phone number to a creditor . . . reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number." *Id*. at 643. Accordingly, the court interpreted "prior express consent" in a common sense manner: "[t]he FCC said that providing a number gives 'express consent by the cell phone subscriber to be contacted *at that number* regarding the debt.' (Emphasis added.)" *Id*. at 643. It is clear that the court did not believe that the term "express prior consent" required the defendant to demonstrate that the former subscribers had stated "I give you permission to call me *via an autodialer*."[1]

Numerous other courts have applied the plain language of the TCPA and found consent to exist where the called party provided his or her number to the creditor. In *Adamcik v. Credit*

*Control Servs., Inc.*, 832 F.Supp.2d 744, 748 (W.D. Tex. 2011), the court found "the evidence at trial conclusively showed Adamcik provided her cellular telephone number to Wachovia in connection with her application for a student loan." In relevant part, the court found that consent existed: "[t]he FCC has ruled this constitutes prior express consent under § 227(b) to receive autodialer calls related to debt collection." *Id*. (citing 2008 FCC Order).

*Cunningham v. Credit Mgmt., L.P.*, 2010 WL 3791104 (N.D. Tex. Aug. 30, 2010) found "that Plaintiff provided his cellular number to Time Warner and, in doing so, consented to receiving automated and prerecorded calls in relation to any debt he may incur with them." *Id*. at *5. *Cavero v. Franklin Collection Serv., Inc.*, 2012 WL 279448 (S.D. Fla. Jan. 31, 2012) held that because the plaintiff "gave AT & T his cell phone number, [he] provided the consent necessary under the TCPA to be called by Franklin with respect to his debt to AT & T." *Id*. at *4. *See also, Greene v. DirecTV*, 2010 WL 462 8734 (N.D.Ill. Nov. 8, 2010) (holding that consent existed where the plaintiff provided her cellular number to a credit bureau); *Osorio v. State Farm Bk., F.S.B.,* 2012 WL 1671780 (S.D. Fla. May 10, 2012) (holding that consent existed where the plaintiff provided a cell number on an electronic credit card application and change of address form, and in a request to update records).

All of the above cases found that providing a cellular number constituted consent to be called using an autodialer or artificial or prerecorded voice. Consistent with these cases, Thrasher gave her cell number to the driver, Illinois Farmers and the Chicago Police, and for these reasons, CCS had consent to call her purported cell phone with an autodialer.[2]

---

[1] The court could have adopted that approach as there was nothing in the record to suggest that either of the former subscribers had consented to being contacted on their cell phones via an autodialer. Rather, they simply provided their former cell phone numbers as alternative contact numbers.

[2] To the extent Thrasher has argued that she did not provide her cell phone to Illinois Farmers and simply informed it that she only had one telephone number, Thrasher ignores that her provision of her cell phone number to the driver

7

## II. THRASHER'S INTERPRETATION OF "CONSENT" IS NOT SUPPORTABLE

There is no support for Thrasher's novel approach which suggests that consent can only be obtained where a person provides their cell phone number *and* utters the magic words "you can call me on my cell phone with an autodialer." Dkt.#72, pp. 3 ("neither Defendant nor Illinois Farmers asked for or obtained Plaintiff's specific authorization to make robocalls to her cellular telephone"), 7-8. First, courts have rejected efforts to graft or infer language limiting consent. Second, Thrasher's sole authority, *Edeh v. Midland Credit Mgmt, Inc.*, 748 F. Supp. 2d 1030 (D. Minn. 2010), was incorrectly decided and has never been adopted by another court. Third, Thrasher's policy arguments do not support her bizarre reading of the TCPA.

### A. Courts Have Rejected Efforts to Narrow the TCPA's Element of Consent

The courts have rejected efforts to alter or narrow the TCPA's element of consent. For example, as noted above, in *Leckler v. Cashcall, Inc.*, 2008 WL 500528, at *2-*3 (N.D. Cal. Nov. 21, 2008), the court vacated its ruling on the very issue in dispute here, finding it did not have jurisdiction to change the interpretation of "prior express consent" by the FCC. Similarly, in *Moore v. Firstsource Advantage, LLC*, 2011 WL 4345703, at *10 (W.D. N.Y. Sept. 15, 2011) the district court rejected the plaintiff's argument that consent did not exist because the subject number was *not* "given at the time of the application for services." According to the court: "Nowhere in the FCC's ruling did it state that a phone number must be given at the time the account is opened to constitute 'prior express consent.'" *Id*. "Although the FCC did not define the exact parameters of the phrase 'during the transaction that resulted in the debt owed,' a commonsense reading of that phrase does not lead to the conclusion that a phone number must be given at the precise time the account is activated." *Id*. The court then concluded:

---

inured to the benefit of the driver's insurer (Illinois Farmers), which in turn inured to the benefit of CCS. (Dkt. # 58, pp. 7-8).

> given that the FCC emphasized that the relevant issue in evaluating "prior express consent" is whether a phone number has voluntarily been provided to the creditor, *it would strain logic* to conclude that a debtor's voluntary provision of a contact number at the time an account is opened would constitute "prior express consent" to be called at that number, but that the equally voluntary provision of a contact number sometime after the account is opened would not.

*Id*. (emphasis supplied). Here, it also would strain logic to ignore or re-write the FCC's 2008 Order, to adopt Thrasher's novel approach.

Two Northern District cases also have rejected efforts to restrict circumstances where called parties have provided consent. In *Frausto v. IC Sys., Inc.,* 2011 WL 3704249 (N.D. Ill. Aug. 22, 2011) the plaintiff had provided his mobile phone number to PayPal. Trying to limit the TCPA's and FCC's consent provisions, the plaintiff argued that the terms of the PayPal Agreement only authorized PayPal itself to use his number to contact him regarding his debt. The court rejected the plaintiff's argument, observing that the FCC made clear that the defendant debt collector was, for purposes of the TCPA, PayPal when it called plaintiff. *Id.* at *2 (*citing* 2008 Order). The provision of plaintiff's cell phone number was enough for consent.

In *Mitchem v. Illinois Collecting Serv., Inc.,* 2012 WL 170968 (N.D. Ill. Jan. 20, 2012) the plaintiff gave his cellular telephone number to a medical provider. When the plaintiff did not pay his debt, the hospital gave the number to a debt collector. The plaintiff argued that the Health Insurance Portability Act vitiated any consent. The court rejected this attempted modification of the TCPA consent provision, holding that "the record establishes that plaintiff consented to receiving calls about the medical debt on his cell phone by giving the cell phone number to a medical provider." *Id.* at *2.

The cases discussed in this Section support CCS's argument that Thrasher cannot graft phantom language into the plain text of the TCPA to vitiate the consent (in her words, "generic

9

authorization to receive calls" (Doc #72, p. 2)), which she provided to three persons: the driver, the police and Illinois Farmers.

### B. No Court Has Followed *Edeh v. Midland* and It Was Wrongly Decided

Thrasher's sole authority in support of her bizarre reading of the TCPA is *Edeh v. Midland Credit Mgmt, Inc.*, 748 F. Supp. 2d 1030 (D. Minn. 2010). Thrasher cannot even call *Edeh* a "minority" approach because no other court has adopted *Edeh*. The reason no other court has followed *Edeh* is because the opinion is fatally flawed as it runs against the Hobbs Act and totally ignores the FCC's 1992 and 2008 Orders.

The procedural position of *Edeh* is somewhat unique. The subject opinion involved the district court's order upholding the magistrate judge's report and recommendation ("report") (dkt.81) which granted in part and denied in part each of the parties' summary-judgment motions. A copy of the report is attached as Exhibit 1 hereto. The magistrate judge's report did not interpret the phrase "prior express consent" and did not discuss any of the FCC's orders interpreting this term. *Id*. The defendant did not cite to the Hobbs Act in the brief submitted to the magistrate or district judge. *See* dkt. Nos. 45 and 94 (def's memorandum of law in support of summary judgment and def's objections to magistrate judge's rec.) attached as Exhibits 2 and 3 hereto.[3] The district court's order adopting the magistrate judge's recommendation went beyond the magistrate's ruling, finding that the TCPA required a defendant to demonstrate that the plaintiff had expressly agreed to be called via an autodialer. *Edeh*, 748 F. Supp. 2d at 1038. Thereafter, the defendant never moved to reconsider the district court's order by arguing to the district court that its narrow interpretation of prior express consent court was contrary to the FCC's orders and otherwise prohibited under the Hobbs Act.

---

[3] In a single sentence, the plaintiff told the magistrate that it was bound to follow the FCC's order under the Hobbs Act. Dkt. 41-1, pl's memo of law in support of motion for summary judgment, p. 24 (attached as Exhibit 4 hereto).

Had the defendant in *Edeh* moved to reconsider the district court's order, the district court would have vacated its opinion just as the court did in *Leckler v. Cashcall, Inc*, 2008 WL 500528 (N.D. Cal. Nov. 21, 2008). The *Leckler* court originally found that the plaintiff did not consent to receiving prerecorded messages about a loan despite the fact that she had provided her cell number on a loan application. *Leckler v. Cashcall, Inc*, 554 F. Supp. 2d 1025, 1033 (N.D. Cal. 2008). It was then brought to the *Leckler* court's attention that its interpretation of "prior express consent" was at odds with the FCC's interpretation. The *Leckler* court vacated its ruling on the very issue in dispute here, finding it did not have jurisdiction to change the interpretation of "prior express consent" by the FCC. *Leckler*, 2008 WL 500528, at *2-*3. Just as the TCPA and the FCC Orders, the case law makes no mention of the consent having to include the autodialer/prerecorded message language that Thrasher suggests.

C.   **Thrasher's Policy Arguments Do Not Support Her Theory**

Thrasher wrongly concludes that the FCC's and the courts' interpretations of consent somehow fly in the face of Congress' concerns. Doc. # 72 at 1-7. She also argues that CCS's interpretation would render "meaningless" the phrase "using any automatic telephone dialing system or an artifical or prerecorded voice." Doc. #72 at 7. Thrasher also asserts that CCS "ignore[d] the word "express' in the statute. Doc. #72 at 7-8. None of these arguments requires this Court to rewrite the TCPA or ignore the FCC's rulings.

Of course Congress was concerned with telemarketing robocalls being a nuisance. However, this fact does not mean that the TCPA requires the elaborate form of consent advocated by Thrasher, especially where the call in question is not a telemarketing call. If Congress had intended to allow a person to utilize an autodialer to contact another person only after the called person said "I agree to allow you to call me with an autodialer," Congress would have written that requirement into the TCPA. It did not. Moreover, after thoughtful

consideration, the FCC has twice ruled that the simple "provision" of a cell number by a called party constitutes express prior consent. The FCC's interpretation is consistent with Congress' desire to protect persons from unwanted autodialed calls. Moreover, unlike in an unsolicited telemarketing call, Thrasher cannot argue that CCS had no business in contacting her to repay the amount that CCS's client paid to cover the damage that she caused to the subject vehicle.

The FCC first ruled on this issue in its 1992 TCPA Order. 7 FCC Rcd. 8752 at ¶ 31, 1992 WL 690928, at **11. Given changes in technology, cell phone ownership and call volume that have taken place in the last twenty years, Congress certainly could have amended the statute if it had desired undo the FCC's 1992 and 2008 Orders. Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change. *Forest Grove School Dist v. T.A.,* 557 U.S. 230, 239-40 (2009) (citation omitted); *Abuelhawa v. United States,* 556 U.S. 816, 821 (2009). As *Soppet* noted:

> Section 227 was enacted in 1934. The provision covering automated calls to cell phones was added in 1991, and the statute has been amended several times since, most recently in December 2010. If Congress has failed to appreciate changes in the telecommunications business, Enhanced Recovery and the bill collectors' trade association (ACA International, which filed an *amicus* brief) should alert their lobbyists.

679 F.3d at 642. This Court is bound to follow the FCC's position under the Hobbs Act. If Thrasher believes that the FCC has overstepped its authority, and she should contact a lobbyist.

### D. Thrasher Cannot Avoid the 1992 and 2008 FCC Orders Simply By Arguing that She Incurred a Subrogation Obligation as a Result of a Car Accident

Thrasher concedes that CCS would have no liability if it was collecting a consumer debt. Doc. #72, p. 9, fn. 2. Thrasher admits that CCS's so-called collection of "actual debts" is covered by the FCC 2008 Order but argues that its efforts to collect subrogation claims falls outside of the scope of the 2008 Order. *Id*. Thrasher desperately tries to distinguish the collections of "subrogation tort claims" from the scope of the FCC's 2008 Order by arguing that

12

the 2008 Order is limited to "collecting actual debts" and that it does not apply to the collection of a subrogation account. Dkt. #72 p. 8 ("The [2008] Order creates a narrow exception for creditors (and collection agencies acting for them) collecting actual debts under a specific set of circumstances"). Highlighting the types examples of consent that the FCC Order identified ("credit appliction[s], "sales slips," and "purchase agreements,"), Thrasher concludes: "there is no 'debt' as of yet, there is no 'consumer,' no 'creditor' and no 'transaction' creating a debtor/creditor relationship." *Id*. at p. 9. Because the 2008 Order did not provide an exhaustive list of examples of types how a called party can consent to a collection call, Thrasher wrongly concludes that the FCC sought to exempt the collection of subrogation claims.

Nothing in the text of the TCPA or the Congressional record suggests such a narrow reading of the TCPA. Thrasher's narrow reading of the 2008 Order is misplaced. The 2008 Order did not in any way exclude subrogation claims. The Order provides at the outset: "In this ruling, we clarify that autodialed and prerecorded calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible calls made with the 'prior express consent' of the called party." 2008 WL 65485, at **1.

More importantly, Thrasher has essentially pled (or admitted) all of the necessary facts to demonstrate the existence of a debt owed to the driver based upon the damage that his vehicle suffered. First, Thrasher has admitted that she was "involved in an accident with a motorist insured by Illinois Farmers" and that "there minor damages to his vehicle." Amended Complaint Doc. # 48 at ¶¶3, 5. Second, she claims that "[t]he motorist involved in the accident was insured by Farmers" and admits that Farmers asserted that it has subrogation rights against Thrasher." *Id*. at ¶6. Third, Thrasher claims that CCS "is a collection company" that "collect[s] disputed claims and debts on behalf of . . . Farmers." *Id*. at ¶4. Fourth, Thrasher claims that CCS sent her

130385203v6 0925245

letters and called her in an attempt to collect Farmer's subrogation rights. *Id*. at ¶¶7-12. *See also*, Doc. # 69, Pl's Resp. to CCS's SUF at ¶¶ 19-20 and 13[4].

The above allegations and admissions demonstrate that CCS was attempting to collect a debt allegedly owed by Thrasher. Thrasher is trying to make a distinction without a difference between subrogation, debt, claim and a credit transaction. Contrary to her assertion, Thrasher did indeed "engage in a transaction that resulted in a debt…" Doc. #72 at 9. She was in an accident where there was damage to an insured driver and the insurance company engaged CCS to collect the claim. Thrasher provided her cell phone to the driver at the scene of the accident. The accident was the "transaction" which resulted in the debt owed. Thereafter, she informed Illinois Farmers that her cell phone was the only number to reach her. In the recorded conversation, she admits to attempting to race through an intersection to catch a green light – and admitted "I could not stop in time." In summary, she participated in an event that resulted in damage (a debt) and was arguably obligated to reimburse the driver. Against these facts, she clearly provided consent to be called by the driver and CCS consistent with the FCC's Orders. The fact that CCS attempted to collect a subrogation claim is beside the point. Put another way, if driver had hired CCS to contact Thrasher to recover the costs of the damage to his vehicle and CCS had used an autodialer, CSS would have had consent to do so because of Thrasher's provision of her cell phone number to the driver.

---

[4] Thrasher attempts to brush aside the fact that Illinois Farmers paid its insured (Ferguson) for the costs of the damage Thrasher inflicted on his car by claiming that these facts are "immaterial to the TCPA claim before the court" and that Illinois Farmers' letters are hearsay. Pl's Resp. at ¶ 12. This is an odd argument to make considering the fact that the Amended Complaint alleges "Trasher was involved in an accident with a motorist . . . [t]he motorist involved in the accident was insured by Farmers. Farmers asserted that it had subrogation rights against Thrasher." Dkt.#48 ¶¶5-6. The fact that Illinois Farmers claims that Thrasher caused the motorist and Farmers to suffer a loss is absolutely material to the TCPA claim – her actions in causing the loss is the very reason why CCS called Thrasher. The facts are so material that Thrasher spends several pages arguing that the nature of this subrogation claim somehow negates the consent that she provided to Illinois Farmers. It is clear that the letters are business records.

14

In summary, the FCC's 2008 Order does not limit consent only "to credit transactions contexts." 2008 Order at ¶¶9-10, 2008 WL 65484, at **3. One can look in vain for such a limitation. Neither Congress nor the FCC has made a distinction between credit and non-credit transactions or subrogation claims. Notably, Thrasher's Consolidated Response does not even discuss the 1992 Order which provides that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." 7 FCC Rcd. 8752, at ¶ 31, 1992 WL 690928, at **11. Nowhere does the 1992 Order limit state that subrogation claims are excluded from the Order's finding that the "knowingly release" of a phone numbers constitutes consent.

## CONCLUSION

Thrasher provided her cell phone number to the driver, the Chicago Police and Illinois Farmers. Providing her number to the driver inured to the benefit of Illinois Farmers and CCS. The text of the TCPA and the FCC's 1992 and 2008 Orders confirm that Thrasher consented to being called with an autodialer. The FCC's Orders are binding on this Court pursuant to the Hobbs Act. There is no merit to Thrasher's argument that "subrogation tort claims" are exempted from the FCC's Order.

For the foregoing reasons, Defendant CCS Commercial LLC d/b/a Credit Collection Commercial Services respectfully submits that this Court grant its motion for summary judgment and deny plaintiff Melissa Thrasher-Lyons' motion for summary judgment.

David M. Schultz
Clifford E. Yuknis
James C. Vlahakis
HINSHAW & CULBERTSON LLP
222 North LaSalle Street, Suite 300
Chicago, Illinois 60601
312/704-3000
dschultz@hinshawlaw.com
cyuknis@hinshawlaw.com
jvlahakis@hinshawlaw.com

By: /s/ *James C. Vlahakis*
One of the Attorneys for Defendant
CCS COMMERCIAL LLC d/b/a CREDIT
COLLECTION SERVICES

## **CERTIFICATE OF FILING**

I hereby certify that on July 13, 2012, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.

Respectfully submitted,

By: /s/ James Vlahakis

James C. Vlahakis
HINSHAW & CULBERTSON LLP
222 North LaSalle Street, Suite 300
Chicago, IL 60601
312-704-3000
jvlahakis@hinshalaw.com

130385203v6 0925245