**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MELISSA THRASHER-LYON, on behalf of herself and a class similarly situated, | ) | |
| Plaintiff, | ) | Case No.: 11-C-4473 |
| vs. | ) | Judge John J. Tharp, Jr. |
| CCS COMMERCIAL LLC d/b/a CREDIT COLLECTION SERVICES COMMERCIAL, | ) | |
| Defendants. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO RECONSIDER SEPTEMBER 4, 2012 SUMMARY JUDGMENT ORDER**

Defendant, CCS COMMERCIAL LLC d/b/a CREDIT COLLECTION SERVICES COMMERCIAL ("CCS") by and through its undersigned counsel, submits the following as its Memorandum of Law in Support of its Motion to Reconsider this Court's September 4, 2012 Summary Judgment Order:

## I. Introduction

As the Court recognized, the facts relevant to the issue of consent are not in dispute. While riding her bicycle, Plaintiff struck a car whose driver was insured by Illinois Farmers Insurance ("Farmers"). Plaintiff provided her cell phone number to the driver of the car and to a police officer who had responded to the scene of the accident. Thereafter, she exchanged calls and texts about the accident with the driver. The driver provided her cell phone number to Farmers, and an employee of Farmers called Plaintiff on her cell phone (not a autodialed call) and discussed the accident with her. Plaintiff admitted that she had caused the accident, and confirmed that the cell phone number was the only number on which to reach her. Farmers then submitted a damage claim to Plaintiff. Thereafter, Illinois Farmers retained CCS to attempt to collect on its subrogation claim. CCS received plaintiff's cellular phone number from Illinois

Farmers. *See* Dkt. #58 pp. 2-3 (CCS's Memorandum of Law); #59 (CCS's Statement of Uncontested Facts) #69 (Plaintiff's Local Rule 56.1(b)(3) Response to Defendant's Statement of Uncontested Facts); #70 (Plaintiff's Statement of Additional Uncontested Facts); #82(CCS's Reply to Plaintiff's Statement of Additional Uncontested Facts); #86 (Order, pp. 1-2).

Plaintiff filed suit under the Telephone Consumer Protection Act ("TCPA"), claiming that CCS violated the TCPA because she never expressly consented to being called with an "automatic telephone dialing system" ("autodialer").[1] CCS asked the Court to enter summary judgment on its behalf, arguing that the TCPA and the 1992 and 2008 FCC Orders interpreting the TCPA do not require it to demonstrate it had her permission to be called *with an autodialer*. CCS argued that providing her number to the driver and confirming it with Farmers as her contact number for calls about the accident allowed it to call her with an autodialer. The Court framed the issue as follows:

> Here, § 227(b)(1)(A) carves out an exception to its broad prohibition on robocalls to cellular phones for those calls made with the recipient's "prior express consent." The question requiring interpretation is: "consent *to what?*" CCS argues that the recipient need only give "general unrestricted permission and consent to be called at the subject number," which Thrasher-Lyon concedes she gave. Thrasher-Lyon, on the other hand, contends that the exception is triggered only by explicit consent to receive robocalls, which CCS agrees that she did not give. CCS argues that the weight of case law as well as binding rulings of the FCC favor its interpretation. Thrasher-Lyon relies on the language and purpose of the TCPA, and she maintains that the FCC opinions do not foreclose her interpretation because they expand the definition of consent only in the context of creditor-debtor relationships.

---

[1] CCS disagrees with Plaintiff's use of the term "robocall" as that term is more closely associated with random telemarketing calls used to promote goods and services. A well known example is a pre-recorded message stating that a person has won a free cruise. Here, like dialing devices used by the collection industry, CCS placed a series of calls *to Plaintiff* in an effort to collect the costs of the damages caused by her collision with Farmer's insured. Accordingly, these were no random telemarketing calls to the general public. For example, earlier this year, the Washington State Office of the Attorney General issued at Consumer alert entitled "Don't be carried away by 'the Love Boat scam.'" *http://www.atg.wa.gov/BlogPost.aspx?id=29592*

Opinion, p. 4.

The Court denied Defendant's Motion for Summary Judgment and granted Plaintiff's Motion for Summary Judgment, holding that the TCPA requires that a person expressly consent to being called *by an autodialer*. Order at pp. 4-5. The Court then held that the FCC's 2008 Order did not apply because Farmers was not a "creditor" and CCS was not collecting a "debt." *Id*. at p. 6 ("Plaintiff's claim does not involve a debtor-creditor or other relationship where providing a phone number "reasonably evidences" express consent to be called, even with automated equipment, *about a debt*.").

Respectfully, this holding was in error because the Court did not address whether the FCC's 1992 Order authorized CCS to call Plaintiff. The 1992 Order broadly states that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at that number which they have given, absent instructions to the contrary." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 F.C.C.R. 8752, at *8769, 7 FCC Rcd. 8752, 1992 WL 690928, at **11 (Oct. 16, 1992) ("1992 Order"). According to the 1992 Order:

> Many commentators express the view that any telephone subscriber that provides his or her telephone number to a business does so with the expectation that the party to whom the number was given will return the call. Hence, any telephone subscriber who releases his or her telephone number has, in effect, given prior express consent to be called by the entity to which the number was released.

1992 Order, ¶ 30, 1992 WL 690928 at **11. The 1992 Order conforms the TCPA's restrictions to a called party's expectations. It is indisputable that a called party expects to be called at a

cellular phone number that he or she provides to a business in response to a request for contact information.[2] The scope of the 1992 is broad and it does not exclude subrogation claims.

While the 1992 and 1998 Orders may differ from this Court's reading of the text of the TCPA (where the Court concluded that the TCPA should be read to require a called to consent to being called with an autodialer, Opinion, pp. 4-5) the Court is compelled under the Hobbs Act to follow the FCC's 1992 Order which lawfully addressed how consent can be provided.

In providing that debt collectors were covered by the TCPA, the FCC cited to its 1992 Order, and consistent with the 1992 Order, found that that consent to call debtors could be found through the provision of a cell phone on a credit application. As discussed below, Defendant argued that it was entitled to summary judgment under both the 1992 and 2008 Orders. Plaintiff's cross-motion was limited to arguing that 2008 Order was limited to debt collectors. Defendant's responded to Plaintiff's cross-motion by arguing that her narrow reading of the 2008 Order was incorrect. Because Plaintiff's argument focused solely on the 2008 Order, it appears that the Court failed to recognize the fact that consent to call Plaintiff's cell phone existed under the wording of the 1992 Order, irrespective of how the Court interpreted the 2008 Order. Even if this Court still holds that the examples of consent identified in the 2008 Order apply only to calls placed to collect consumer debts, it should still award summary judgment in Defendant's favor on the basis that the 1992 Order broadly applies to authorize the calls in question. As discussed

---

[2] The TCPA's legislative history shows that prior express consent should be interpreted to exist when an individual provides a phone number:

> The restriction on calls to emergency lines, pagers, and the like *does not apply when the called party has provided the telephone number of such a line to the caller for use in normal business communications*. The Committee does not intend for this restriction to be a barrier to the normal, expected or desired communications between businesses and their customers.

H.R. Rep. No. 102-317, at 17 (1991) (emphasis added).

below, the FCC's 2008 Order does not expressly or implicitly limit or rescind the FCC's 1992 Order. Rather, the 2008 Order simply responded to whether debt collectors are subject to the TCPA and the 2008 cited to and adopted the examples of consent discussed in the 1992 Order.

**A. Standard of Review**

Fed. R. Civ. P. 54(b) provides that interlocutory orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12 (1983) ("[E]very order short of a final decree is subject to reopening at the discretion of the district judge"); *Duffin v. Exelon Corp.*, No. 06-C-1382, 2007 WL 1385369, at *2 (N.D. Ill. May 4, 2007) ("The court also has inherent authority to reconsider interlocutory orders before entering final judgment.") (citations omitted).

A motion for reconsideration serves the limited function of allowing a court to correct manifest errors of law or fact. *Caisse Nationale de Credit Agricole v. CBI Indus. Inc.*, 90 F.3d 1264, 1269 (7th Cir.1996). "A motion for reconsideration performs a valuable function where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*., 906 F.2d 1185, 1191 (7th Cir.1990). CCS is mindful that court orders are not "mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.,* 123 F.R.D. 282, 288 (N.D. Ill. 1985). CCS, however, believes that this Court should reconsider its order and enter summary judgment in CCS's favor because the language of the TCPA does not support the Court's ruling and because FCC's 1992 Order is controlling. *Bank of Waunakee,* 906 F.2d at 1192 ("A grievous wrong may be committed by some misapprehension or inadvertence

by the judge for which there would be no redress, if this power [of reconsideration] did not exist.") Alternatively, CCS argues that the FCC's 2008 Order applies to the facts of this case where CCS was attempting to collect an obligation that Plaintiff admittedly owed to Farmers.

### 1. The Court Should Award CCS Summary Judgment Under the FCC's 1992 Order Interpreting "Consent"

In its summary judgment briefs CCS argued that consent to call Plaintiff existed under the terms of both the FCC's 1992 and 2008 Orders. The Court's Order granting summary judgment in favor of Plaintiff and against CCS did not address the 1992 Order. Although the Court appears to have recognized that the 1992 Order relaxed the manner in which "prior express consent" must be determined, the Court only cited to the 1992 Order in passing when it was addressing whether to apply the 2008 Order. Order at p. 6. According to the Court:

> The Court acknowledges, and does not attempt to review or alter, the FCC's ruling that "prior express consent" is provided when a debtor gives contact information to a creditor in the course of the transaction giving rise to the debt. *See In Re Rules and Regulations Implementing the TCPA of 1991*, 23 FCCR 559, 2008 WL 65485, at *3 (Jan. 4, 2008). In that context, the FCC concluded that providing "a cell phone number to a creditor, *e.g.*, as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt."

Order at p. 6. While the Court correctly noted that the 2008 Order "builds from the FCC's earlier determination that 'persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at that number which they have given, absent instructions to the contrary,'" no further analysis was given to the 1992 Order. Order at p. 6 (quoting FCC's 1992 Order).

In summary, despite recognizing the 1992 Order led to the 2008 Order, the Court did not address whether Defendant was entitled to summary judgment under the terms of the 1992 Order. Instead, the Court focused on the 2008 Order and stated that it "does not quibble with the

FCC's carve-out for the creditor-debtor relationship" in relation to the 2008 Order. Order at p. 6. The Court then concluded that CCS could not avail itself of the 2008 Order because it was not collecting a debt. While CCS believes the Court should not have read the 2008 Order as narrowly as it did (see Section 3 below), it was an manifest error for this Court to neglect to address whether the 1992 Order applied and it was manifest error to neglect to hold that consent existed by virtue of Plaintiff *knowingly releasing her phone number* to the driver and farmers. Under the terms of the 1992 Order, Plaintiff, "in effect [gave] invitation or permission to be called at that number which [she had] given." Notably, in providing her number to the driver and Farmers, Plaintiff provided *no* "instructions to the contrary." *Id*. 1992 Order, 1992 WL 690928, at **11. Instead, she told Farmers that was her only telephone number.

Whether by design or neglect, Plaintiff did not discuss the 1992 Order when she moved for summary judgment. ECF # 72. By contrast, CCS cited to both the 1992 and 2008 Orders throughout its summary judgment filings. For example, CCS's Cross-Response (Dkt. 83) states:

> In 1992, the FCC ruled that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, at ¶ 31, 1992 WL 690928, at **11 ("1992 TCPA Order"). As support, the FCC cited the TCPA's legislative history: "the called party has in essence requested the contact by providing the caller with their telephone number for use in normal business communications." 1992 WL 690928, at **11 fn. 57.

ECF Doc. #. 83, p. 4; *see als*o ECF Doc. # 58, pp. 4, 6. (CCS's initial memorandum in support of its motion for summary judgment). Referencing both the 1992 and the 2008 Orders, CCS argued: "These FCC Orders are binding on this court pursuant to the Hobbs Act. *See* 28 U.S.C. §2342(1); 47 U.S.C. §402 and authorities cited in CCS's initial memorandum in support of its motion for summary judgment. ECF Doc. #58, at 8-9. Simply stated, the Hobbs Act precludes

this Court from reinterpreting or disregarding the FCC's orders." ECF Doc. #83 at p. 5. CSS went on to argue that courts have routinely applied *both* orders in determining consent. *Id* at pp. 5-7. ("Relying on the FCC's 2008 and 1992 Orders, courts have routinely found that prior express consent exists where a called party has simply provided his or her number to a creditor.").

In distinguishing the only case to follow Plaintiff's approach, CCS again referenced *both* Orders: "The reason no other court has followed *Edeh* is because the opinion is fatally flawed as it runs against the Hobbs Act and totally ignores the FCC's 1992 and 2008 Orders." *Id*. at p. 10. CCS also cited to the 1992 Order in distinguishing Plaintiff's public policy arguments: "The FCC first ruled on this issue in its 1992 TCPA Order", and concludes that "Congress certainly could have amended the statute if it had desired undo the FCC's 1992 and 2008 Orders." *Id*. at p. 12. Notably, the 1992 Order cites to "commentators" who voiced their opinions when the TCPA was originally proposed.

CCS's citations to the 1992 Order in the record clearly demonstrate that CCS was moving for summary judgment based upon the broader interpretation of the concept of "consent" in both the FCC's 1992 and 2008 Orders. Setting aside whether the 2008 Order applies to subrogation claims, it is clear that the 1992 Order does not exclude subrogation claims. At the same time, there is nothing in the 2008 Order that suggests that the FCC intended narrow either the 1992 order's applicability or the breadth of its ruling. Rather, as discussed below in Section 3, the 2008 Order simply responded to the ACA International's Petition for Expedited Clarification and Declaratory Ruling which sought to clarify whether debt collection practices were covered by the TCPA. The FCC answered by stating that debt collectors were covered and cited to the 1992 Order when it provided examples of how consent could be established.

In holding only that the 2008 Order only applies to traditional debtor-creditor relationships, the Court also failed to acknowledge that the 1992 order is not so limited. To the extent that the Court was persuaded by the fact that the 2008 Order did not mention subrogation claims, the Court cannot find (nor can Plaintiff argue) that the 2008 Order either broadened or narrowed the FCC's policies with respect to such claims. Because the 2008 Order did not rescind or otherwise limit the 1992 Order, the 1992 Order is still in effect as written and still applies to the facts of this case. And because the 1992 Order provides that consent exists when *any person* provides their number to another, this Court should find that Plaintiff's provision of her number to the driver and her confirmation of the number as her only contact number with Farmers constitutes consent under the facts of this case.

In conclusion, given the clear language of the 1992 Order, which broadly provides, without any exception or limitation, that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at that number which they have given, absent instructions to the contrary," this Court should apply the 1992 Order, reverse its ruling in Plaintiff's favor and enter judgment in Defendant's favor.

**2. The Hobbs Act Requires That The Court Adhere To The 1992 Order**

The Hobbs Act provides that any proceeding to "set aside, annul or suspend" an FCC Order must be brought in the Court of Appeals, which has exclusive jurisdiction to determine the validity of such an order. 28 U.S.C. §2342(1); 47 U.S.C. § 402(a); *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 448 (7th Cir. 2010). A court's role is to *apply* and not ignore the FCC's orders to the facts of this case. *Id.* at 440 n.3.

The Hobbs Act applies with equal force to both the FCC's 2008 and 1992 Orders. Here, the Court ignored the 1992 Order, which provides, without exception or limitation, that "persons

who knowingly release their phone numbers have in effect given their invitation or permission to be called at that number which they have given, absent instructions to the contrary." Even if this Court concludes that the 2008 does not apply to debt collectors who collect subrogation claims, because the 2008 Order did not limit or supersede the 1992 Order, either in whole or in part, this Court was bound to follow the 1992 Order under the Hobbs Act.

### 3. The Court's Narrow Reading of the 2008 FCC Order to Exclude Subrogation Claims Was In Error

The Court declined to apply the FCC's 2008 Order, holding that the subrogation claim at issue in this case did not give rise to a "debt" or "creditor-debtor relationship." Order, p. 6. The Court's analysis is inconsistent with the FCC's rulings on consent. The FCC has never made a distinction between debt/debtor-creditor relationships and subrogation claims or liabilities.

The context of the 2008 Order illustrates that the FCC's ruling that providing one's cell phone number demonstrates consent applies to communications regarding any sort of amount owed, and is not limited to consumer debts or debt collectors. The FCC explained that ACA International ("ACA") had filed a Petition for Expedited Clarification and Declaratory Ruling. 2008 Order, at **1. ACA is an industry trade organization of more than 4,000 credit and collection companies that provide a wide variety of accounts receivable management services. *Id.* at **5, n.1; *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 642 (7th Cir. 2012).

In the 2008 Order, the FCC explained that the ACC's petition sought clarification that the prohibition against autodialed or prerecorded calls to wireless telephone numbers "does not apply to creditors or *collectors.*" FCC's 2008 Order at *2 (emphasis added). The ACA maintained that the use of autodialers "to attempt to recover payments" (and not just debts) was not telemarketing. *Id.* The FCC 2008 order ruled that debt collectors were governed by the

TCPA, and consistent with the 1992 Order, the 2008 provided examples of consent. For example, it found that the provision of a number on a credit application evidenced consent.

Although using a creditor-debtor relationship example, the FCC, in its reasoning and analysis, made no distinction in regard to "creditors" and collectors of other payments. Accordingly, the 2008 Order was not intended to provide, and did not provide, an exhaustive list of contexts in which it might apply. This reading is confirmed by the FCC's citation—without any limiting language—of its 1992 Order. 2008 FCC Order, at **3, 5 and n.34. The 1992 Order, at *11, n. 57, in turn, cited the TCPA's legislative history, which recited that "the *called party* [as opposed to the "debtor"] has in essence requested the contact by providing the *caller* [as opposed to "creditor"] with their telephone number for use in *normal business communications*." (emphasis supplied). While the 2008 addressed a petition filed by the creditor/debt collection industry, the 2008 Order did not operate to restrict the manner in which consent could be found as originally contemplated by the 1992 Order. In summary, the 2008 Order simply said that creditors and debt collectors were covered by the TCPA and that the same types of consent identified in the 1992 Order would apply.

CCS's reading of the FCC Orders is sensible. The FCC did not exclude subrogation claims in its 1992 or 2008 Orders. Moreover, it would be difficult to logically explain that prior consent means one thing for creditors, and another for other collectors of accounts receivable. For example, the ACA membership includes debt collectors and collectors of other accounts. CCS itself collects amounts based on claims related to: (1) commercial insurance accounts, *i.e.*, collecting on earned insurance premium balances, and (2) uninsured motorist accounts wherein a CCS client has determined that it is entitled to seek recoveries on their payments. Bruce Shapiro dep. at pp. 7-8, Ex. 3 to Plaintiff's Statement of Additional Uncontested Facts (ECF Doc. # 59).

About 20 people work on the commercial insurance accounts, and 180 people work on subrogation accounts. *Id.* at 16. CCS also has first and third party, banking and student loan collection functions. Elizabeth E. Mott deposition at pp. 12-17, Exhibit A.

It does not make sense to read the 2008 Order to hold that a debtor providing her cell phone number to in relation to a student would authorize CCS to call that number, but consent will not exist if the same person provides her cell phone to a driver and his insurance company relation to an auto accident which gives rise to a subrogation claim. The FCC understandably did not interpret the statute to produce an absurd result. Neither should this court. *See Zbaraz v. Madigan,* 572 F.3d 370, 387 (7th Cir. 2009) (court will not construe a statute that leads to absurd results); *United States v. Valley,* 432 F.3d 626, 630 (7th Cir. 2006) (same). Nor should courts make "substantive changes to make the law 'better.'" *Soppet*, 679 F.3d at 642. The 2008 Order is not limited to the provision of a number to a creditor. *See, e.g., Greene v. DirecTV*, 2010 WL 4628734 (N.D.Ill. Nov. 8, 2010) (consent found when plaintiff provided her number not to a creditor but to a credit bureau; the plaintiff certainly did not owe a debt to the credit bureau).

Finally, the distinction that the Court drew between a debt and a subrogation claim is not supported by recognized definitions of the subject terms. Courts frequently look to dictionaries to determine the plain meaning of words. *See, e.g., Cler v. Illinois Educ. Ass'n,* 423 F.3d 726, 731 (7th Cir. 2005). A "claim" has been defined as:

> 1. The aggregate of operating facts giving rise to a right enforceable by a court . . . 2. The assertion of an existing right; the right to any payment or to an equitable remedy, even if contingent or provisional.

*Black's Law Dictionary* at pp. 281-82 (9th ed. 2009). The term "debt" has been defined as:

> 1. Liability on a claim; a specific sum of money due by agreement *or otherwise* . . . 2. The aggregate of all existing claims against a person, entity or state.

*Id.* at p. 462. Notably, a debt does not need to be reduced to a judgment. A "transaction" is broadly defined as the "the act or an instance of conducting business or other dealings; . . . [s]omething performed or carried out; . . .[a]ny activity involving two or more person . . . ." *Black's Law Dictionary* at p. 1635 (9th ed. 2009). Here the Plaintiff admitted her responsibility for the accident in question, confirming the existence of a subrogation claim based upon her conduct.

Under well-established subrogation principles, Farmers stepped into its insured's (the driver's) shoes and obtained his rights. Dkt. #58, pp. 7-8. Plaintiff gave her cell number to the driver to call. Farmers confirmed the cell number was the best number to call her. The transaction at issue was the accident involving Plaintiff's bicycle and the insured's automobile, had resulted in Farmers paying to repair the driver's car. No judgment or written agreement was required to formalize a claim for damages that Farmers or CCS was entitled to collect. *Id.*

In summary, the Court erred by reading exceptions into the FCC's 2008 Order by holding that the Order is limited to cases involving consumer debt collection. There is nothing in the FCC's 2008 Order that limits its scope in this manner. The Hobbs Act's jurisdictional limitations are "equally applicable whether [a party] wants to challenge the rule directly ... or indirectly, by suing someone who can be expected to set up the rule as a defense in the suit." *City of Peoria v. Gen. Elec. Cablevision Corp. (GECCO),* 690 F.2d 116, 120 (7th Cir.1982); *see CE Design, Ltd.*,606 F.3d at 448 (private party's request that the court ignore an FCC rule is the same as asking the court to not enforce the rule). Here, Plaintiff sued CCS and then sought to strip CCS of its defenses by focusing solely on the FCC's 2008 Order. Again, even if this Court stands by its prior holding regarding the 2008 Order, CCS is entitled to summary judgment under the 1992 Order.

**4. The Court Should Refer The Scope of the 2008 Order to the FCC**

Alternatively, rather than interpret the scope of the 2008 Order in one party's favor as against another, this Court may compel the parties to ask the FCC to clarify the 2008 Order. *See also, CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 448 (7th Cir. 2010) (citing *Cahnmann v. Sprint Corp.*, 133 F.3d 484, 487-88 (7th Cir.1998) (noting that where issue arises in federal suit regarding validity of FCC order court "would have to interrupt the litigation and ... compel the parties to resort to the FCC for a determination of that validity"). Even if this Court declines to refer the 2008 to the FCC, CSS is entitled to summary judgment under the terms of the 1992 Order.

WHEREFORE, for the reasons set forth above, CCS requests that the Court reconsider its summary judgment ruling, enter summary judgment in CCS's favor and dismiss this case. Alternatively, this Court should issue an order compelling the parties to ask the FCC to clarify the 2008 Order.

Respectfully submitted,

By:/s/ *James C. Vlahakis*
One of the Attorneys for Defendant CCS COMMERCIAL LLC.

David M. Schultz
James C. Vlahakis
Clifford E. Yuknis
HINSHAW & CULBERTSON LLP
222 North LaSalle Street, Suite 300
Chicago, Illinois 60601
312/704-3000
dschultz@hinshawlaw.com
jvlahakis@hinshawlaw.com
cyuknis@hinshawlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on **September 14, 2012**, I electronically filed the above document with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to all counsel of record.

/s/ *David M. Schultz*
David M. Schultz
Hinshaw & Culbertson LLP
Attorney for Defendant
222 North LaSalle, Suite 300
Chicago, IL 60601
tel 312-704-3715