```
                                    VOLUME:   I
                                    PAGES:    1-201
                                    EXHIBITS: 1


          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION
              CASE NO.:  11-cv-04473


MELISSA THRASHER-LYON, on      )
behalf of herself and a        )
class of other similarly       )
situated,                      )
                               )
              Plaintiffs,      )
                               )
vs.                            )
                               )
                               )
CCS COMMERCIAL LLC, d/b/a,     )
CREDIT COLLECTION SERVICES     )
COMMERCIAL,                    )
                               )
              Defendant.       )
```

DEPOSITION OF ELIZABETH E. MOTT, a witness called on behalf of the Plaintiffs in the above-entitled cause, taken before Dawn Mack-Boaden, Notary Public in and for the Commonwealth of Massachusetts, pursuant to the Massachusetts Rules of Civil Procedure, at the Hotel Indigo Riverside, 399 Grove Street, Newton, Massachusetts, on Monday, May 21, 2012, commencing at 9:00 a.m.

Page 2

```
 1    APPEARANCES
 2
      Anand Swaminathan, Esquire
 3    LOEVY & LOEVY
      312 North May Street, Suite 100
 4    Chicago, Illinois 60607
      (312) 243-5900
 5    Counsel on behalf of the Plaintiffs
 6
      Ranen S. Schechner, Esquire
 7    HINSHAW & CULBERTSON, LLP
      28 State Street, 24th Floor
 8    Boston, Massachusetts 02109
      (617) 213-7000
 9    Counsel on behalf of the Defendant
10
      Cliff Yuknis, Esquire    (via speakerphone)
11    HINSHAW & CULBERTSON LLP
      222 North LaSalle Street, Suite 300
12    Chicago, Illinois 60601
      (312) 704-3000
13    Counsel on behalf of the Defendant
14
      Michael S. Kraft, Esquire
15    THE CCS COMPANIES
      Two Wells Avenue
16    Newton, Massachusetts 02459
      (617) 965-2000
17    General Counsel
18
19    ALSO PRESENT: Jeffrey Stoddard, The CCS Companies
20
21            .
22
23
24
```

Page 3

```
 1              INDEX
 2
      WITNESS      DIRECT  CROSS  REDIRECT  RECROSS
 3
      By Mr. Swaminathan  4
 4
 5
 6
 7
 8
 9
10            EXHIBITS
11    No.  Description              Page
12    1   Notice of Rule 30(b)(6) Deposition    17
13
14
15
      ** Original exhibit was retained by the court
16    reporter and delivered with the transcript.
17
18
19
20
21
22
23
24
```

Page 4

```
 1            P-R-O-C-E-E-D-I-N-G-S
 2
 3        ELIZABETH E. MOTT, a witness first
 4    having been satisfactorily identified by the
 5    production of her driver's license, was
 6    sworn and testified as follows:
 7
 8           DIRECT EXAMINATION
 9    BY MR. SWAMINATHAN:
10      Q.  Good morning.  Please state your name for
11    the record.
12      A.  Elizabeth Mott.
13      Q.  And what is your title or position at CCS?
14      A.  The dialing manager.
15         MR. YUKNIS:  If I may call you Anand,
16    first all of, if Ms. Mott and you, Anand,
17    could speak up, I'd appreciate it; not
18    screaming or hurting your voices, but if you
19    get closer to the speaker, that would be
20    great.
21         As we've discussed, Counsel, we will
22    stipulate that all objections and motions to
23    strike are preserved; is that -- is that
24    correct?
```

Page 5

```
 1         MR. SWAMINATHAN:  That's right.  You
 2    said you were going to read Mike's e-mail.
 3    Do you want to just read that?  Mike did not
 4    CC me; so just read it so I know exactly
 5    what you --
 6         MR. YUKNIS:  Okay.  On the
 7    confidentiality?
 8         MR. SWAMINATHAN:  Yes.
 9         MR. YUKNIS:  Absolutely.  We have also
10    -- and this is for everyone, especially the
11    court reporter, to read an e-mail that
12    Anand's colleague and I have worked on; and
13    Anand's firm has written me the following
14    e-mail in confidentiality.
15         We will treat the case as if a
16    protective order were already in place and
17    treat it as confidential.  All materials and
18    testimony is designated at a deposition
19    pending entry of a protective order or a
20    court ruling that the materials are not
21    usually protected.  We need -- we may need
22    to show database materials to an expert,
23    such as a statistician, in which case we
24    will have the expert sign a confidentiality
```

Page 10

1  said.
2       So you've done a good job of it so far and
3  I'm sure it's going to keep going. Let me finish
4  asking my question, make sure I've completed my
5  question before you answer, and I will try to do the
6  same thing. That will help the court reporter.
7       I do tend to talk fast. In addition to
8  talking fast, some of my questions may not make
9  sense even if -- or because I'm saying them too
10 fast. So if you do not understand what I'm saying,
11 please let me know. If you don't understand the
12 nature of what I'm saying -- what I'm intending to
13 ask you, please let me know. If you answer the
14 question, I'm going to assume you understand it. Is
15 that okay?
16    A. Yes.
17    Q. All right. Is there any --
18       MR. SCHECHNER: Cliff, can you hear?
19       MR. YUKNIS: Yes, I can. Ms. Mott could
20    maybe get a little closer, but I heard Anand
21    very clearly just now.
22       MR. SWAMINATHAN: And I'm tucking in a
23    little closer to the table as well, Cliff.
24       MR. YUKNIS: I hear you very loud and

Page 11

1  clear.
2  BY MR. SWAMINATHAN:
3     Q. Okay. Any reason why you will not be able
4  to give truthful testimony today?
5     A. No.
6     Q. Okay. You said you are a dialing manager
7  at CCS; is that correct?
8     A. Yes.
9     Q. Okay. And let me just -- let me just ask
10 you. Who is your employer, as you understand it?
11    A. CCS Company.
12    Q. And what is your role with regard to CCS
13 Commercial LLC?
14    A. I'm a dialer manager; so I work with all
15 business segments. So I don't have any particular
16 role in one segment of business.
17    Q. So you have a role with regard to all
18 segments of the business; is that correct?
19    A. Yes, sir.
20    Q. And what are some of the other -- what are
21 the other divisions with which you have involvement?
22 Let me ask you this.
23       Do you have involvement with CCS Commercial
24 LLC?

Page 12

1     A. Yes.
2     Q. Okay. And what is CCS Commercial LLC, as
3  you understand it?
4     A. That is our subrogation department,
5  uninsured motorist claims.
6     Q. And what are the other departments that you
7  have involvement in within CCS?
8     A. I deal with the first- or third-party
9  collections, banking and student loans division.
10    Q. Any others?
11    A. No, sir.
12       MR. SWAMINATHAN: I take it there's not
13    much we can do about the static?
14
15    (Whereupon, a break was taken in the
16    proceedings.)
17
18 BY MR. SWAMINATHAN:
19    Q. So you mentioned subrogation division,
20 first- and third-party collections, and banking and
21 student loan division.
22       Any other divisions or areas of CCS with
23 which you have involvement?
24    A. No.

Page 13

1     Q. Are there any other areas of CCS in terms
2  of divisions in which they engage in collection
3  activity other than the ones you just mentioned?
4     A. We have a third-party carrier division.
5     Q. And what does the third-party carrier
6  division do?
7        MR. YUKNIS: Anand, I'm going to object.
8     I'm going to object to the question.
9        You're entitled to some corporate
10    information, but I think you're going --
11    starting to get far afield from the topic of
12    your deposition notice, which is all
13    automated telephone dialing equipment used
14    by CCS, the Defendant, doing business as
15    Credit Commercial Services Commercial during
16    the class period.
17       So, you know, I'll let you -- Ms. Mott
18    answer this last question, but I think -- I
19    think you're going a little afield and
20    beyond the scope of the topic. So I object
21    on those grounds.
22       MR. SWAMINATHAN: Okay. And, Cliff,
23    just to note, I appreciate that. Obviously,
24    I'm trying to get some basic background

Page 14

1   information so that -- part of it is to
2   understand exactly what to -- you know, what
3   qualifies within the scope of what we're
4   dealing with here.
5       So I don't intend to spend a lot of time
6   going in to these other issues at this
7   point, but I just want to get a basic sense
8   of, you know, what are these categories and
9   how do they relate to the CCS Commercial LLC
10  that is -- that -- the subject of this
11  lawsuit.
12      MR. YUKNIS: Well, maybe that's the
13  question you ought to ask. But, you know,
14  we're here on a short period of time, as you
15  all well know, so go ahead, ask the
16  question.
17      MR. SWAMINATHAN: I understand. Can you
18  just repeat the question.
19
20      (The question was read back as follows:
21      "And what does the third-party carrier
22      division do?")
23
24      THE WITNESS: It's -- I'm not in -- I

Page 15

1   don't work for that particular division.
2   But, in my opinion, it's two insurance
3   companies will work together to determine
4   who's at fault for an incident.
5   BY MR. SWAMINATHAN:
6   Q. Okay. And is there a specific company or
7   entity that is associated with the third-party
8   carrier division?
9   A. There's multiple different companies.
10  Q. Do you know the names of those companies?
11  The names -- the names of those companies for the
12  third-party carrier division.
13  A. I can give you -- there's a lot. I can
14  give you a few of them. Allstate Insurance,
15  Progressive, Comcast Cable.
16  Q. Is there a specific CCS related entity name
17  that handles that type of work involving the
18  third-party carriers?
19  A. I'm sorry. I don't really understand your
20  question.
21  Q. So within the CCS Companies, is CCS -- is
22  CCS Commercial LLC a company or entity within CCS
23  Credit Companies?
24  A. Is CCS Commercial part of CCS Companies?

Page 16

1   Q. Sure. So let me ask it again. What is
2   your understanding of what CCS Commercial LLC is in
3   relation to the CCS Companies?
4   A. As far as I'm concerned, I work for CCS
5   Companies. So the different names that they have
6   really have no bearing on me personally. I know
7   that CCS Commercial is part of our subrogation
8   department.
9   Q. Okay. And what are -- what other
10  activities is CCS Commercial LLC involved with other
11  than subrogation activities, if any?
12      MR. YUKNIS: Objection. That's been
13      asked and answered.
14  BY MR. SWAMINATHAN:
15  Q. Go ahead.
16  A. Again, my goal in my job is to run the
17  dialer for our subrogation department. Any other
18  business that they do has really nothing to do with
19  me.
20  Q. Understood. So you operate the dialer for
21  the subrogation department; is that right?
22  A. Yes.
23  Q. Okay. Do you have any other role with
24  regard to the subrogation department other than

Page 17

1   operating the dialers?
2   A. No, sir.
3   Q. Okay. Do you operate the dialers for the
4   first- and third-party collection divisions?
5   A. Yes.
6   Q. And do you operate the dialers for the
7   banking and student loan divisions?
8   A. Yes.
9   Q. Do you have any other role with regard to
10  any of those divisions other than -- other than
11  operating the dialers?
12  A. No, sir.
13  Q. Okay.
14      MR. SWAMINATHAN: Just mark this as
15      Exhibit 1.
16
17      (Exhibit Number 1 was marked for
18      identification.)
19
20  BY MR. SWAMINATHAN:
21  Q. What I'm handing you is a document marked
22  Exhibit 1. It is a copy of the Notice of Rule
23  30(b)(6) Deposition in the case of Melissa
24  Thrasher-Lyon versus CCS Commercial LLC. Have you