IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MELISSA THRASHER-LYON, on behalf of herself and a class of others similarly situated, ) ) ) Plaintiffs, ) ) v. ) ) CCS COMMERCIAL LLC, d.b.a. Credit Collection Services Commercial, ) ) ) Defendant. ) | No. 11 C 04473<br><br>Judge John J. Tharp, Jr. |

## MEMORANDUM OPINION AND ORDER

Defendant CCS Commercial LLC ("CCS") moves the Court to reconsider its ruling of September 4, 2012, denying CCS's motion for partial summary judgment and granting the named plaintiff's.[1] CCS alternatively requests that the Court certify its decision for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Named plaintiff Melissa Thrasher-Lyon opposes both motions. For the reasons that follow, the Court denies the motion to reconsider and grants the motion to certify.

**A. Motion to Reconsider**

The September 4 decision did not terminate the action and therefore is "subject to revision at any time." Fed. R. Civ. P. 54(b); *see Galvan v. Norberg*, 678 F.3d 581, 586-87 (7th Cir. 2012). The Court has broad discretion—"sweeping authority"—to revisit its interlocutory decisions, subject to the caveat that issues already decided should not be revised without good reason. *Galvan*, 678 F.3d at 587 & n.3. Here, CCS argues that the Court should reconsider

---

[1] This opinion assumes the reader's familiarity with the September 4, 2012, decision in which the Court held that, as a matter of law, Thrasher-Lyon did not give "prior express consent" to receive automatically dialed telephone calls or prerecorded messages on her cellular phone when she disseminated the number to certain individuals after a bicycle-car collision. *See* Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii).

because its decision was based upon errors of law and perhaps a misapprehension of CCS's arguments. The Court addresses the arguments in turn.

First, CCS contends that the Court failed to address a 1992 FCC Order that held that giving out a telephone number is consent to be contacted. *In Re Rules & Regulations Implementing the TCPA of 1991*, 7 FCCR 8752, 1992 WL 690928, at \*\*11 (Oct. 16, 1992) (explaining that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary"). This argument fails for at least two reasons. First, the Court cited, and recited the holding of, the 1992 Order in its September 4 ruling. Memorandum Opinion and Order, Dkt. 86 at 6. The decision assumes, consistent with the 1992 Order, that disseminating one's contact information to others is agreement to be contacted by those individuals. Indeed, the Court made it clear Thrasher-Lyon consented to receive telephone calls from the individuals to whom she gave her contact information. *Id.* at 9 ("Agreeing to be contacted by telephone, *which Thrasher-Lyon effectively did when she gave out her number*, is much different than expressly consenting to be robo-called") (emphasis added). CCS is really just taking issue with the Court's distinction between consent to be contacted and consent to be contacted through the use equipment regulated by the TCPA. However, as the opinion explains, that distinction is required by the plain language of the TCPA, unless the FCC's creditor-debtor rule applies. Here, it does not. Another problem with CCS's reliance on the 1992 Order as independent grounds for a favorable decision is that Thrasher-Lyon never gave her telephone number (and thus, her consent) *to Farmers*, in whose shoes CCS now stands. She gave the number at the scene of the crash to the driver and a police officer; Farmers obtained the phone number from one of them, not from Thrasher-Lyon. She merely confirmed the contact information when Farmers called her with

contact information it obtained *from a third party*. CCS is therefore off-base both in suggesting that the Court failed to acknowledge the 1992 Order and that it clearly requires judgment for CCS.

CCS's second argument, that the Court violated the Hobbs Act, also relies on the demonstrably incorrect statement that the Court somehow "ignored" or failed to heed the 1992 Order. As explained above, the summary-judgment decision in fact relies upon the 1992 Order's statement that giving out contact information is consent to be contacted. The Court simply declined to equate consent to be contacted generally with consent to the use of the equipment expressly prohibited by the TCPA, unless there is a creditor-debtor relationship established at the time the equipment is used. Again, a more careful reading of the Court's opinion would have shown CCS that the Court acknowledged the binding nature of *both* the 2008 and 1992 FCC Orders. *See* Mem. Op. & Order, Dkt. 86, at 6 ("[T]he Court rejects CCS's contention that this case is squarely addressed by FCC _rulings_ that this Court cannot revisit pursuant to the Hobbs Act") (emphasis added). The Court agreed that it lacks jurisdiction to modify or reject those rulings, but disagreed with CCS that the rulings required judgment in its favor.

CCS's third argument, that the Court erroneously determined that Farmers (and therefore CCS) was not a creditor within the meaning of the 2008 FCC Order, does not point to any error of law or fact. CCS simply expresses disagreement with the Court's application of the creditor-debtor rule. CCS presents nothing new that it didn't argue already in its summary-judgment briefs, and the Court declines to revisit those arguments again.

Finally, CCS advises that the Court "may compel the parties to ask the FCC to clarify the 2008 Order." The Court is not inclined to do so. In the Court's view, the 2008 Order requires no clarification: it applies to communications between creditors and debtors. Here, there was no

3

"debt" or "transaction" as those terms are used in the 2008 Order or the many cases that the Court cited. *See* Mem. Op. & Order, Dkt. 86 at 7-8. As the Court explained, Thrasher-Lyon's conduct in giving her number to third parties in connection with the accident did not reasonably evidence consent to be contacted by Farmers or its successor, CCS, through the use of auto-dialers and prerecorded messages.

For these reasons, the Court will not reverse its ruling on the parties' cross-motions for partial summary judgment. The motion to reconsider is denied.

### B. Motion to Certify for Interlocutory Appeal

Turning now to CCS's alternative request, an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) can be taken when the district court and the appellate court agree that "the ruling decides a controlling issue of law and immediate resolution of the issue would expedite the litigation." *In re High Fructose Corn Syrup Antitrust Litig.*, 361 F.3d 439, 440 (7th Cir. 2004). CCS's somewhat cursory motion argues that these criteria are met, while Thrasher-Lyon insists that they are not.

On the first question, the Court concludes that its ruling decided two issues of law that are controlling: the interpretation of "prior express consent" and the scope of the creditor-debtor rule. These surely are pure "questions of law." *See Ahrenholz v. Board of Trustees of University of Illinois*, 219 F.3d 674, 676 (7th Cir. 2000) ("'question of law' in section 1292(b) refers "to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine rather than to whether the party opposing summary judgment had raised a genuine issue of material fact"). A harder question is whether they are "controlling." "A question of law may be deemed 'controlling' if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so." *Sokaogon Gaming Enterprise Corp. v. Tushie-*

*Montgomery Associates, Inc.*, 86 F.3d 656, 659 (7th Cir. 1996). As to Thrasher-Lyon's individual claim the issues were decisive (unless there is another defense of which neither the Court nor, apparently, the parties, are aware). Thus, reversal of the Court's ruling would end the case, as far as she is concerned. And if the Court's ruling stands, it certainly will color how the remainder of the case will proceed as it now enters the class-certification stage. The scope of the class, if there is to be one, will likely be circumscribed by the Court's interpretation of "prior express consent" and the creditor-debtor rule. By the same token, CCS might argue that the Court's ruling requires denial of class certification, for example because of individualized issues that might be raised. Certainly the Court's own view of class certification is affected by whether it correctly interpreted the TCPA exception and the FCC's 2008 Order.

Next, the Court recognizes that its interpretation of "prior express consent" presents "substantial ground for difference of opinion," *see* 28 U.S.C. § 1292(b). A "'substantial ground for a difference of opinion' must arise out of a genuine doubt as to whether the district court applied the correct legal standard in its order." *Consub Delaware LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007). This could mean that there is conflicting authority on the issue, or that the issue is particularly difficult and of first impression. *Id.*; *see Brown v. Mesirow Stein Real Estate, Inc.*, 7 F. Supp. 2d 1004, 1008 (N.D. Ill. 1998) (considering whether "controlling court of appeals has decided the issue").

Here, there is not abundant authority for either side's position on this issue. The Court has identified two decisions consistent with its own holding: *Leckler v. CashCall, Inc.*, 554 F. Supp. 2d 1025 (N.D. Cal. 2008) and *Edeh v. Midland Credit Mgmt, Inc.*, 748 F. Supp. 2d 1030 (D. Minn. 2010). The Court agrees with both of these decisions insofar as they require "express consent" to be explicit and not implied. Yet the Court finds no strength in numbers. The *Leffler*

court retreated from its holding, later finding it to be barred by the Hobbs Act because the case clearly involved a consumer loan (and so fell within the debtor-creditor context of the FCC's Orders). *See Leckler v. Cashcall, Inc.*, 2008 WL 5000528 (N.D. Cal. Nov. 21, 2008). And in *Edeh*, there is no indication that the creditor-debtor rule was ever invoked (although it appears it could have been), so the district court did not confront the issue before this Court.

On the other hand, many a TCPA class action has been quashed by application of the "creditor-debtor" gloss on "prior express consent." In its September 4 decision, the Court found those cases to be distinguishable, but the primary question on appeal would be whether the distinction is based on sound interpretation of the TCPA and the 1992 and 2008 FCC Orders. CCS's arguments against the Court's ruling are "substantial." They are based upon statutory interpretations that the Court views as somewhat tortured—however, so are the FCC rulings concluding that "express consent" can sometimes be implied. And this Court, unlike the Court of Appeals, is not empowered to question those rulings. Because CCS's statutory interpretation is plausible (particularly in light of the FCC's infidelity to the plain language of the statute), and the Seventh Circuit has not addressed the question, the Court finds that there are substantial grounds for difference of opinion.

Finally, the Court turns to the closest question—whether this litigation is likely to be expedited by an immediate appeal of the summary-judgment ruling before the class certification stage proceeds. "[A]ll that section 1292(b) requires as a precondition to an interlocutory appeal, once it is determined that the appeal presents a controlling question of law on which there is a substantial ground for a difference of opinion, is that an immediate appeal *may* materially advance the ultimate termination of the litigation." *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012) (emphasis in original). The Court asked for and now has the

benefit of the parties' oral arguments on this subject, and it concludes that an immediate appeal might materially expedite this case.

The parties both admit (plaintiff more reluctantly) that additional discovery will be needed for class certification. Plaintiff foresees a straightforward inquiry into whether CCS's insurance subrogation clients—either two dozen or about six, depending on which party is correct—obtain express permission to contact individuals using automated equipment. But this question begets many others: whether such consent is always, sometimes, or rarely sought; how the consent is requested; whether there is a system for keeping track of consent given or denied. All of these questions and more will be relevant to the makeup of any class. And even if the scope of the discovery is as limited as plaintiffs suggest, it involves a number of non-parties and is therefore certain to require some time—more than plaintiff acknowledges—to complete. The Court is also reluctant to needlessly impose costs on non-parties, which is distinctly possible if ultimately it is wrong that obtaining consent *to automated calls* is required to satisfy the statutory exception. (On the other hand, the Court is not swayed by CCS's concerns about its client relationships or business prospects—these issues are unrelated to any potential efficiency gains.)

It is not just pre-certification discovery that would be averted if the Court's interpretation of the statute were reversed. The whole case would evaporate. Obviously Thrasher-Lyon's individual claim would be extinguished, because the defendants will have shown that they had her consent. And if Thrasher-Lyon gave "prior express consent," it is difficult to imagine a plaintiff who did not, given that she did not even provide her telephone number to Farmers in the first instance and did not have a conventional consumer "debt" to Farmers. Thus, reversal could effectively terminate this entire case without any need to complete briefing on class certification.

7

For that reason, an appeal of a class certification ruling pursuant to Rule 23(f) is not an efficient alternative to an interlocutory appeal now.

If the Court's summary-judgment ruling is upheld, on the other hand, there will be other efficiency gains. The remaining class discovery will be smoother with a clearly defined universe of what evidence is required and relevant. The scope of any Rule 23(f) appeal from a class certification decision would be narrowed if the applicable substantive law has been clarified already. And if the defendant's appeal (if accepted) is unsuccessful, settlement might enter the equation, which is an unlikely prospect until the statute's meaning has been resolved definitively.

*  *  *

For all of these reasons, the Court denies CCS's motion to reconsider and grants its motion to certify the summary-judgment decision for appeal under § 1292(b). CCS has 10 days from the entry of these findings to request the Seventh Circuit's interlocutory review of the decision. The Court will stay the case pending interlocutory review, if granted.

Entered: November 2, 2012

John J. Tharp, Jr.
United States District Judge